**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN**

INVENERGY RENEWABLES LLC,
                              Plaintiff,

SOLAR ENERGY INDUSTRIES
ASSOCIATION, EDF RENEWABLES,
INC., CLEARWAY ENERGY GROUP
LLC, and AES DISTRIBUTED ENERGY
INC.,
                    Plaintiff-Intervenors,

- *against* -

UNITED STATES, OFFICE OF THE
UNITED STATES TRADE
REPRESENTATIVE, UNITED STATES
TRADE REPRESENTATIVE ROBERT E.
LIGHTHIZER, U.S. CUSTOMS AND
BORDER PROTECTION, and ACTING
COMMISSIONER MARK A. MORGAN,
                              Defendants,

HANWHA Q CELLS USA, INC.,
                    Defendant-Intervenor.

Case No.: 19-00192
**NON-CONFIDENTIAL VERSION**

**PLAINTIFF-INTERVENOR EDF RENEWABLES, INC.'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE
PRELIMINARY INJUNCTION**

Kevin M. O'Brien
Christine M. Streatfeild
**Baker & McKenzie LLP**
815 Connecticut Ave, NW
Washington DC 20006
(202) 452-7000

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD........................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

    I.      Defendants' Improperly Read the Court's PI As Limited to APA Notice-and-Comment Requirements, When the Court Made Clear That Lack of Notice Was Merely the First APA Violation.................................................................................... 6

    II.     The Court Must Maintain the PI Until There is a Final Judgment on All Claims, Including EDF-R's Claim that USTR's Actions are Arbitrary and Capricious....... 7

          A.     USTR Failed to Address - Or Even Mention - EDF-R's Comments that USTR Lacks the Authority to Withdraw the Exclusion. ............................ 8

          B.     USTR Did Not Address - Or Even Mention - EDF-R's Comments on the Domestic Workforce Implications of a Withdrawal. ................................... 9

    III.    Defendants' Have Failed to Establish or Even Allege that EDF-R is Now Unlikely to Suffer Irreparable Injury or that the Equities and Public Interest Now Weigh Against Enjoining the Withdrawal....................................................................... 10

CONCLUSION................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burlington Truck Lines v. United States*
    371 U.S. 156 (1962)..................................................................................................10

*L.J. v. Wilbon*
    633 F.3d 297 (4th Cir. 2011) ....................................................................................5

*Motor Veh. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins Co.*
    463 U.S. 29 (1983)..................................................................................................10

*Rufo v. Inmates of Suffolk Cty. Jail*
    502 U.S. 367 (1992)..................................................................................................5

*Thompson v. HUD*
    404 F.3d 821 (4th Cir. 2005) ....................................................................................5

*Tobin v. Alma Mills*
    192 F.2d 133 (4th Cir. 1951) ....................................................................................5

*United States v. Welsh*
    No. 5:11-HC-2209-D, 2017 WL 7805581 (E.D.N.C. Mar. 16, 2017)......................5

*Voge v. United States*
    844 F.2d 776 (Fed. Cir. 1988)..................................................................................8

**Constitution and Statutes**

5 U.S.C. § 706(2)(a)..........................................................................................................5

Administrative Procedure Act, 5 U.S.C. § 702............................................................ *passim*

Section 201 of Trade Act of 1974, 19 U.S.C. §§ 2251-54..................................2, 3, 6, 8

U.S. Const. amend. V........................................................................................................3

**Other Authorities**

*Determination on the Exclusion of Bifacial Solar Panels From the Safeguard*
    *Measure on Solar Products*, 85 Fed. Reg. 21,497 (Apr. 17, 2020) ................................. *passim*

*Exclusion of Particular Products From the Solar Products Safeguard Measure,*
    84 Fed. Reg. 27,648 (June 13, 2019) .............................................................. *passim*

Fed. R. Civ. P. 60(b)(5) ................................................................................................5, 6

*Procedures to Consider Additional Requests for Exclusion of Particular Products*
     *From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6,670 (Feb. 14,
     2018) .........................................................................................................................2, 8, 9

*Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial*
     *Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg.
     4,756 (Jan. 27, 2020) .................................................................................................3, 4, 9

*Proclamation 9693 of January 23, 2018: To Facilitate Positive Adjustment to*
     *Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells*
     *(Whether or Not Partially or Fully Assembled Into Other Products) and for*
     *Other Purposes,* 83 Fed. Reg. 3,541 (Jan. 25, 2018) ................................................2

*Withdrawal of Bifacial Solar Panels Exclusion to Solar Products Safeguard*
     *Measure*, 84 Fed. Reg. 54,244 (Oct. 9, 2019) ................................................ *passim*

**INTRODUCTION**

In December, the Court enjoined Defendants from withdrawing a previously-granted tariff exclusion, noting that the case "raises fundamental questions of adherence by the Government to procedures for decision making required by statute."  Preliminary Injunction Op. and Order, ECF No. 113 at 2.  That continues to be true following Defendants' recent actions to again attempt to repeal the exclusion.  Contrary to their claim, Defendants have not "cured the sole reason" for which the Court granted injunctive relief.  Rather, the parties have made clear - and the Court agreed - that the complaints raised legal issues beyond the lack of notice and comment required by the Administrative Procedure Act ("APA").  Fundamental questions remain about whether and how the Government can lawfully withdraw an exclusion that it granted under a narrow and specific grant of statutory authority from the President.   Because the Court has not yet ruled on outstanding claims raised by Plaintiff-Intervenor EDF Renewables, Inc. ("EDF-R"), the preliminary injunction is not ripe for dissolution, and the parties should proceed to a full merits briefing on the legal issues before the Court -- while maintaining the relief necessary to avoid the irreparable harm identified by this Court in December.

EDF-R joins in the briefs filed by Plaintiff Invenergy Renewables LLC and Plaintiff-Intervenor Solar Energy Industries Association ("SEIA"), and opposes Defendants' motion to dissolve the preliminary injunction.  As a U.S. importer of products subject to the exclusion and a party that participated and submitted comments in the recent proceedings - that went ignored by the Agency - EDF-R respectfully requests that the Court not permit an end-run around EDF's remaining claims but rather proceed to briefing and a final judgment on the Agency's authority and decision making.

## BACKGROUND

The parties and the Court have summarized the factual background of this dispute multiple times (*see, e.g.*, EDF-R's Complaint, ECF No. 79; EDF-R's Suppl. Complaint, ECF No. 160; PI Op. ECF No. 113).   In brief, Invenergy initiated this case to challenge the United States Trade Representative's ("USTR's") attempt to implement, or give effect to, a withdrawal of the exclusion that had been granted for bifacial modules that would otherwise be subject to safeguard measures under Section 201 of the Trade Act of 1974, 19 U.S.C. §§ 2251-54.   The President imposed the safeguard measures through *Presidential Proclamation 9693* on January 23, 2018.   83 Fed. Reg. 3,541.   At the same time, the President delegated his authority to Defendant to exclude products from the duties.   *Id.*   USTR issued procedures for parties to follow in seeking exclusions from the safeguard measure.   *Procedures to Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6,670-72 (Feb. 14, 2018) ("Exclusion Procedures").   Following the Exclusion Procedures, USTR granted an exclusion that covers bifacial modules.   *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,648-85 (June 13, 2019) (the "Exclusion").   Then abruptly and without advance notice, opportunity for comment, or a publicly-available record, USTR announced the first withdrawal of the Exclusion.   *Withdrawal of Bifacial Solar Panels Exclusion to Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (Oct. 9, 2019) (the "October Notice").

EDF-R, a U.S. importer of bifacial modules covered by the Exclusion, moved to intervene in this dispute and filed its own complaint, in which it raised several challenges to Defendants' determination and implementation of the withdrawal of the exclusion granted from Section 201 safeguard duties for bifacial modules.   The parties sought immediate relief preventing Defendants from taking action to implement a withdrawal of the Exclusion.

2

On December 5, 2019, this Court entered a preliminary injunction preventing Defendants from implementing or giving effect to the withdrawal until the Court enters a final judgment as to the claims against Defendants ("PI Order," ECF No. 114).  Defendants subsequently initiated a proceeding on January 27, 2020 to again seek to withdraw the exclusion and, on April 17, 2020, published a notice announcing the withdrawal.

EDF-R's original complaint challenged the October Notice announcing the withdrawal of the exclusion on multiple legal grounds, including USTR's failure to comply with the APA for lack of notice-and-comment and on the basis that the determination was arbitrary and capricious, USTR's failure to comply Section 201 of the Trade Act of 1974, 19 U.S.C. §§ 2251-54, and USTR's failure to comply with constitutional due process under the Fifth Amendment.  Separate and apart from notice-and-comment, EDF-R raised other statutory and constitutional arguments, including that USTR lacked the authority to withdraw a granted exclusion.   This Court granted the preliminary injunction and found that Plaintiff had demonstrated a likelihood of success on the merits - particularly regarding the APA violations - and did not yet reach the merits of the remaining claims.   Following the PI Order, USTR published a notice on January 27, 2020, announcing that it would accept comments to consider retention or withdrawal of the exclusion. *Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4,756, 4,756 (Jan. 27, 2020) ("January Procedures").

USTR solicited comment on the following topics:

• Global and United States production and production capacity for bifacial solar panels prior to and following the exclusion of these products in the June 2019 notice, along with any information on expected changes in production and production capacity for the remaining term of the safeguard measure (i.e., until February 6, 2022).

• Projections for the production and importation into the United States of bifacial solar panels for the remaining term of the safeguard measure.

• Import data and entry documentation to establish the level of bifacial solar panels imported into the United States prior to and following the exclusion of these products in the June 2019 notice.

• Projections of demand for bifacial solar panels by companies building or planning to build solar facilities or otherwise to install bifacial solar panels.

• Contracts, purchase orders, or other agreements that establish sales or other transactions, including those between suppliers and customers, regarding bifacial solar panels that have been or will be imported into the United States and such agreements regarding bifacial solar panels that have been or will be produced in the United States.

• Production cost and price differential between the manufacture and distribution of monofacial and bifacial solar panels.

• Substitutability or competitiveness between monofacial and bifacial solar panels in the United States.

• Domestic production and production capacity of bifacial solar cells or bifacial solar panels in the United States.

• Whether the U.S. Trade Representative should modify the exclusion to implement a tariff-rate quota (TRQ) on the importation of bifacial solar panels that enter with no additional duty and, if so, the level (e.g., in megawatts) of that TRQ.

• The potential impact, if any, on the domestic workforce and economy in general should the exclusion be withdrawn.

• Any other information or data that interested persons consider relevant to the U.S. Trade Representative's evaluation.

*Id*. at 4,757.

USTR allowed only 21 days for the initial submission of comments, and only 10 days for responses to those comments. *Id*. Interested parties submitted more than 64 separate sets of comments, EDF-R among them. On April 17, 2020, USTR published a notice announcing again that it intended to withdraw the exclusion. *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (Apr. 17, 2020) ("April Notice"). Defendants then filed a motion seeking the dissolution of the PI Order. ECF No. 156.

**LEGAL STANDARD**

Defendants bear the burden of demonstrating that the preliminary injunction is "no longer equitable" and that "a significant change in circumstances" warrants dissolution. *L.J. v. Wilbon*, 633 F.3d 297, 304-05 (4th Cir. 2011) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992)).  To satisfy this burden, the party must establish that "conditions have so changed that {the injunctive order} is no longer needed or as to render it inequitable." *Tobin v. Alma Mills*, 192 F.2d 133, 136 (4th Cir. 1951).  There must have been "a significant change either in factual conditions or in law" that makes "enforcement of the [preliminary injunction]. . . detrimental to the public interest." *Id*. at 305 (quoting *Rufo*, 502 U.S. at 384). The Court's analysis under Rule 60(b)(5) is a "flexible" one and it "focuses on the particular facts of the case." *United States v. Welsh*, No. 5:11-HC-2209-D, 2017 WL 7805581, at *5 (E.D.N.C. Mar. 16, 2017) (citing *Thompson v. HUD*, 404 F.3d 821, 830 (4th Cir. 2005)), aff'd, 879 F.3d 530 (4th Cir. 2018), cert. denied, 139 S.Ct. 1168 (2019).

The APA provides broad judicial review of agency actions brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(a).

**ARGUMENT**

USTR attempted to correct its unlawful repeal of the Exclusion through the April Notice but again failed to meet the requirements of the APA.  The April Notice manifests the same defects as USTR's October version.  While the April Notice is purports to include an evidentiary basis to justify a preordained conclusion, there  is no evidence that USTR considered the 12 factors that it

5

included in its Notice of January 27, 2020.  In fact, two of the factors, demonstrably support a different result.  Further, Defendants have no basis under Rule 60(b)(5) for dissolving the PI while there are live claims pending that raise fundamental concerns about USTR's ability to withdraw the Exclusion and the manner in which it carried out the April Notice.

## I.   Defendants' Improperly Read the Court's PI As Limited to APA Notice-and-Comment Requirements, When the Court Made Clear That Lack of Notice Was Merely the First APA Violation.

The April Notice is not a "change in circumstances" that would justify dissolving the injunction, but instead a second attempt at carrying out the withdrawal in which USTR nominally addressed one aspect of Plaintiffs' challenge through a limited notice-and-comment period.  The Court's PI Opinion is clear: it granted Plaintiff's motion for a preliminary injunction, concluding that Plaintiff had established a likelihood of success on the merits that the October Notice violated APA rulemaking requirements.  ECF No. 113 at 42-44.  The Court went on to conclude that Plaintiff has a fair likelihood of success on the merits that the October Notice was arbitrary and capricious because USTR had not, among other things, explained the facts on which it relied or the reasoning behind its decision.  *Id.* at 45.  Because the Court found that Plaintiff had established "a fair likelihood of success that USTR violated notice-and-comment rulemaking requirements under the APA," the Court declined to reach the remaining challenges under Section 201 and the constitutional claims.  The finding of a clear APA violation sufficient to warrant a PI is not equivalent to a "sole" basis.

The April Notice is another attempt to repeal the Exclusion, triggering the requirement of APA compliance.  As the Court concluded in the PI Opinion, the Exclusion constituted agency rulemaking (ECF No. 113 at 39).  EDF-R alleged in its complaint that Defendants' October Notice violated the APA's notice and comment requirements and that it was arbitrary and capricious

because it lacked reasoned analysis and evidentiary support for its conclusions.  The same is true of the April Notice, as EDF-R confirmed in its Supplemental Complaint (ECF No. 162).

The PI order is equally clear that it is effective "from the date of issuance of this order until entry of final judgment as to Plaintiffs' claims against Defendants."  ECF No. 114 at 2.  The PI exists to preserve the parties' rights pending resolution of the claims, which in this case includes all claims as yet unresolved.

## II.   The Court Must Maintain the PI Until There is a Final Judgment on All Claims, Including EDF-R's Claim that USTR's Actions are Arbitrary and Capricious.

Defendants improperly claim the parties have fully briefed and argued all legal issues raised in the complaint.  Defs. Mot. at 8.  That is demonstrably wrong.  Defendants appear to believe that USTR has satisfied APA notice-and-comment requirements and therefore Plaintiffs' claims are mooted.  However, Plaintiffs' APA claims raise issues not yet briefed, such as whether USTR has complied with APA rules that, for example, require reasoned decisions based on the evidence presented in the proceeding and whether USTR has the authority to withdraw a granted exclusion at all.  EDF-R submits that those issues should be heard in full and completely with respect to its statutory and constitutional challenges to USTR's actions.

In its April Notice, USTR did not explain the reasoning behind its "findings" or its conclusion that the Exclusion is "hindering" the domestic industry.  USTR did not discuss, summarize, or cite to any of the comments filed, including those in opposition to a withdrawal.  By way of example, EDF-R raised significant issues in the comment process (as described below), and other than including EDF-R's comments in the total count of filed comments, there is no evidence that USTR considered them.

**A.     USTR Failed to Address - Or Even Mention - EDF-R's Comments that USTR Lacks the Authority to Withdraw the Exclusion.**

EDF-R participated in the comment period that resulted in the April Notice and submitted comments on its import volume, anticipated future use, and other data regarding bifacial modules. *See* Exhibit A for EDF-R's Confidential Comments to USTR (Feb. 17, 2020).  EDF-R first stated that USTR did not have the authority to withdraw the Exclusion under either the statute (Section 201), the Exclusion Procedures, or under the *Presidential Proclamation* under which authority it acted.  EDF-R stated:

**USTR Does Not Have the Authority to Withdraw the Exclusion**

The Presidential Proclamation that authorized safeguard measures under section 201 required USTR to adopt "procedures for requests for exclusion of a particular product" from the safeguard measures. Proclamation 9695, ¶15(4). The Presidential Proclamation did not authorize, describe, or even contemplate the withdrawal of granted exclusions. In particular, the Proclamation directed USTR to take specified actions "to exclude such particular product from the safeguard measure." *Id*. Pursuant to this authority, USTR issued a Federal Register notice adopting written procedures governing the process to "grant" such "exclusions" for specific products. *See* 83 Fed. Reg. 6,670, 6,671 (Feb. 14, 2018). USTR explained that its notice "establishes the procedures to *request the exclusion* of a particular product from the safeguard measure." *Id*. at 6,670 (emphasis added). USTR stated that it will "grant" such "exclusions" that do not undermine the safeguards, and that such exclusions are "effective" upon publication in the Federal Register. *Id.* at 6,671. This language aligns with the directive from the Presidential Proclamation.

Neither the Presidential Proclamation 9693 nor USTR's Exclusion Procedure authorized USTR to withdraw, limit, or otherwise reinstate an exclusion once granted. In fact, the plain language of both only authorized USTR to "*exclude*" products from the safeguard tariffs. Nor does anything in the plain language of USTR's written procedures and of Presidential Proclamation 9693 authorize or contemplate the *reinstatement* of the tariffs once removed. An agency must adhere to its written regulations, and may not act contrary to or outside the scope of those regulations. *See Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("It has long been established that government officials must follow their own regulations…").

*Id*. at 2.

8

USTR carried out the April Notice pursuant to the same authority delegated to it by the *Presidential Proclamation* under which it issued the Exclusion and the October Notice.  Both the *Presidential Proclamation* and the Exclusion Procedures are silent as to the revision, reconsideration, or withdrawal of exclusions once issued.  The April Notice does not address EDF-R's comments or clarify the authority under which USTR purports to act or otherwise respond to these fundamental gaps in authority.  This is particularly noteworthy because Defendants represented at the hearing on Plaintiffs' motion to show cause that USTR had the right to rule on the issue of its grant of authority in the first instance.  Defendants advanced this argument as a reason to allow the proceedings to continue pursuant to the January Notice; yet USTR did not dedicate a sentence assessing its authority under the *Presidential Proclamation*, the Exclusion Procedures, or the statute.

Moreover, the Court confirmed in the PI Opinion that it "offers no view as to whether, ultimately, with appropriate notice and comment, USTR could implement the Withdrawal through 'reasoned decision making." ECF No. 113 at fn. 12.  The issue is not yet resolved.

**B.      USTR Did Not Address - Or Even Mention - EDF-R's Comments on the Domestic Workforce Implications of a Withdrawal.**

USTR requested comments on "[t]he potential impact, if any, on the domestic workforce and economy in general should the exclusion be withdrawal." January Procedures at 4,757.  EDF-R responded as follows:

> Given the uncertainty surrounding the state of the duties on bifacial panels, it has been extremely difficult for EDF-R to plan beyond 2020 and commit to the job creation that it would otherwise. If EDF-R can import bifacial panels for its pending projects, it would positively impact [ ███████████ ] of construction employment in [ ███████████ ] alone. In addition, EDF-R has other projects where EDF-R anticipates that it would add meaningful additional construction jobs for solar projects (or purchases from key suppliers) in states such as [ ████████████████████████████

9

██████████████████████████████████████████████████████

████████ ] if the bifacial panel exclusion continued. These additional jobs would approximate [ ████████████████ ] of construction in 2021 in addition to related jobs in development, engineering and manufacturing.

*See* Exhibit A, Conf. EDF-R Comments at 3.

The Supreme Court has explained that, to survive review under the APA's arbitrary and capricious standard, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Veh. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)).

## III.   Defendants' Have Failed to Establish or Even Allege that EDF-R is Now Unlikely to Suffer Irreparable Injury or that the Equities and Public Interest Now Weigh Against Enjoining the Withdrawal.

Defendants' motion is legally defective in that it fails to make the requisite showing that EDF-R now faces no harm or to address the public interest factors in view of the April Notice.  In the PI Opinion, this Court ruled that Plaintiffs established a likelihood of success on their claim that USTR's elimination of the Exclusion violates the APA, that Plaintiffs would be irreparably harmed absent preliminary injunctive relief, and that the public interest and balance of hardships weighed in favor of granting injunctive relief.  ECF No. 113 at 53-55.  Defendants' motion discusses only the likelihood of success factor that was the subject of the Court's PI Opinion. Having failed to address the comments of EDF-R and other interested parties, Defendants can offer no evidence that, on balance, the public interest is further by dissolution of the PI.

Defendants state that the "new action" has not yet been challenged, but all Plaintiffs moved to supplement their complaints, confirming how the April Notice raises the same legal issues as the October Notice.  Defendants cite no authority for the proposition that the April Notice cannot

10

be evaluated on the merits before dissolving the injunction.  Defs. Mot. at 8.  Plaintiffs in this case

remain at risk, particularly EDF-R as the U.S. importer of record who bears the direct cost of the

tariffs that USTR seeks to impose on bifacial modules.  All factors that support the original

injunction continue to exist and no bona fide change in circumstance supports dissolving that

injunction.

## CONCLUSION

For the reasons above, EDF-R requests that the Court deny Defendants' Motion to

Dissolve the PI and requests that the case proceed to briefing on its remaining and outstanding

legal claims.

Respectfully submitted,

*/s/ Kevin M. O'Brien*
Kevin M. O'Brien
Christine M. Streatfeild

**Baker & McKenzie LLP**
815 Connecticut Avenue, NW
Washington, DC 20006
(202) 452-7000

*Counsel to EDF-R*

Dated: May 7, 2020

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitations of the Court of

International Trade Standard Chambers Procedure § 2(B)(1), and contains 3,328 words,

excluding the parts of the brief exempted from the word limitation. In preparing this certificate

of compliance, I have relied on the word count function of Microsoft Word.


*/s/ Kevin O'Brien*
Kevin M. O'Brien
Christine M. Streatfeild

*Counsel to EDF-R*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 7th day of May, 2020, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>*/s/ Kevin O'Brien*</u>
Kevin M. O'Brien
Christine M. Streatfeild

*Counsel to EDF-R*

13