Slip Op. 20-73

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INVENERGY RENEWABLES LLC,<br><br>       Plaintiff,<br><br>   and<br><br>SOLAR ENERGY INDUSTRIES ASSOCIATION, CLEARWAY ENERGY GROUP LLC, EDF RENEWABLES, INC. and AES DISTRIBUTED ENERGY, INC.,<br><br>       Plaintiff-Intervenors,<br>   v.<br><br>UNITED STATES OF AMERICA, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, UNITED STATES TRADE REPRESENTATIVE ROBERT E. LIGHTHIZER, U.S. CUSTOMS AND BORDER PROTECTION, and ACTING COMMISSIONER OF U.S. CUSTOMS and BORDER PROTECTION MARK A. MORGAN,<br><br>       Defendants,<br><br>   and<br><br>HANWHA Q CELLS USA, INC. and AUXIN SOLAR, INC.,<br><br>       Defendant-Intervenors. | Before: Judge Gary S. Katzmann<br>Court No. 19-00192 |

## <u>OPINION</u>

[The court denies Defendants' motion to dismiss for failure to join an indispensable party, grants Plaintiffs' motions to supplement their complaints, denies Defendants' motion to vacate and dismiss for mootness, and denies Defendants' motion for leave from judgment.]

Dated: May 27, 2020

Amanda Shafer Berman, John Brew, Kathryn L. Clune, Amanda Shafer Berman, and Larry Eisenstat, Crowell & Moring LLP, of Washington, DC and New York, NY, argued for plaintiff, *Invenergy Renewables LLC* and plaintiff-intervenors, *Clearway Energy Group LLC* and *AES Distributed Energy, Inc*. With them on the briefs was Frances Hadfield.

Matthew R. Nicely and Daniel M. Witkowski, Hughes Hubbard & Reed LLP, of Washington, DC, argued for plaintiff-intervenor, *Solar Energy Industries Association.* With them on the briefs were Dean A. Pinkert and Julia K. Eppard.

Kevin M. O'Brien and Christine M. Streatfeild, Baker & McKenzie LLP, of Washington, DC, argued for plaintiff-intervenor, *EDF Renewables, Inc.*

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendants. With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director.

John M. Gurley, Dianna Dimitriuc-Quaia, and Friederike S. Görgens, Arent Fox LLP, of Washington, DC, argued for defendant-intervenors, *Hanwha Q CELLS USA, Inc*. and *Auxin Solar Inc*.

      Katzmann, Judge:  In this hotly contested litigation arising from the solar industry, the court returns to its order preliminarily enjoining the United States and the Office of the United States Trade Representative ("USTR") from withdrawing its previously granted exclusion from safeguard duties on imported bifacial solar modules, duties which the President imposed by proclamation to protect domestic industry.[1]  Prelim. Inj. Ord. and Op., Invenergy Renewables LLC v. United States, 43 CIT __, 422 F. Supp. 3d 1255 (2019), ECF No. 113 ("Invenergy I"); Ord. and Op. Denying Mot. to Show Cause, Invenergy Renewables LLC v. United States, 44 CIT __, 427 F. Supp. 3d 1402 (2020), ECF No. 149 ("Invenergy II").  Plaintiff Invenergy Renewables LLC ("Invenergy"), a renewable energy company,[2] joined by Plaintiff-Intervenors Solar Energy

---

[1] For the purposes of this opinion, the terms "solar modules" and "solar panels" are used interchangeably.

[2] Invenergy describes itself as "the world's leading independent and privately-held renewable energy company."  Invenergy's Compl. ¶ 14, Oct. 21, 2019, ECF No. 13.

Industries Association ("SEIA"), Clearway Energy Group LLP ("Clearway"), EDF Renewables, Inc. ("EDF-R"), and AES Distributed Energy, Inc. ("AES DE") (collectively, "Plaintiffs"), filed a motion for a preliminary injunction ("PI") to enjoin the United States, USTR, U.S. Trade Representative Robert E. Lighthizer, U.S. Customs and Border Protection ("CBP"), and CBP Acting Commissioner Mark A. Morgan (collectively, "the Government") from implementing the Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure, 84 Fed. Reg. 54,244–45 (USTR Oct. 9, 2019) ("October Withdrawal").  Invenergy's Mot. for Prelim. Inj., Nov. 1, 2019, ECF No. 49.  Defendant-Intervenors Hanwha Q Cells USA, Inc. ("Hanwha Q Cells") and Auxin Solar Inc. ("Auxin Solar") (collectively, "Defendant-Intervenors") join the Government in this case.  Hanwha Q Cells' Mot. to Intervene as Def.-Inter., Nov. 4, 2019, ECF No. 50; Ord. Granting Mot., Nov. 4, 2019, ECF No. 54; Auxin Solar's Mot. to Intervene as Def.-Inter., Feb. 7, 2020, ECF No. 136; Ord. Granting Mot., Feb. 10, 2020, ECF No. 141.  The court granted Plaintiffs' motion for a PI on December 5, 2019, observing that "[t]he Government must follow its own laws and procedures when it acts."  Invenergy I, 422 F. Supp. 3d at 1265.

Before the court now are four motions, two of which were filed in response to USTR's issuance of a new April 2020 determination to withdraw an exclusion for bifacial solar modules from safeguard duties.  Determination on the Exclusion of Bifacial Solar Panels from the Safeguard Measure on Solar Products, 85 Fed. Reg. 21,497–99 (USTR Apr. 17, 2020) ("April Withdrawal").  First, the Government moved for the court to dismiss the case on the grounds that Plaintiffs lacked standing and failed to join an indispensable party.  Def.'s Mot. to Dismiss and Resp. to Invenergy's Mot. for a Prelim. Inj., Nov. 8, 2019, ECF No. 74 ("Def.'s Mot. to Dismiss").  The Government later moved for the court to vacate the October Withdrawal and dismiss the case as moot.  Def.'s Resp. to Pls.' Mot. to Show Cause and Def.'s Mot. to Vacate Withdrawal and

Dismiss Case as Moot, Feb. 7, 2020, ECF No. 139 ("Def.'s Resp. to Pls.' Mot. to Show Cause and

Mot. to Vacate and Dismiss").   Next, the Government moved for the court to dissolve the PI

because USTR "cured the sole reason for which the injunctive relief was granted."  Def.'s Mot. to

Dissolve Prelim. Inj. at 1, Apr. 16, 2020, ECF No. 156 ("Def.'s Mot. to Dissolve").   Shortly

thereafter, Plaintiffs moved to supplement their complaints to include USTR's new decision, the

April Withdrawal.  Pls.' Mots. for Leave to File Suppl. Compls., May 4, 2020, ECF Nos. 160–162

("Pls.' Mots. to Suppl.").   The court now (1) denies the Government's Motion to Dismiss; (2)

grants Plaintiffs' Motions to Supplement; (3) denies the Government's Motion to Vacate and

Dismiss; and (4) denies the Motion to Dissolve the PI.  The court denies the Government's motions

without prejudice.

## BACKGROUND

The court presumes familiarity with its previous opinions -- (1) Invenergy I, supra, and (2)

Invenergy II, supra, -- both of which provide additional information on the factual and legal

background of this case.  Information pertinent to this decision follows.

As the court has noted:

> This case emerges from a debate within the American solar industry between
> entities that rely on the importation of bifacial solar panels and entities that produce
> predominately monofacial solar panels in the United States.  Plaintiffs here, who
> include consumers, purchasers, and importers of utility-grade bifacial solar panels,
> argue that the importation of bifacial solar panels does not harm domestic producers
> because domestic producers do not produce utility-scale bifacial solar panels; they
> thus oppose safeguard duties that they contend increase the cost of these bifacial
> solar panels.  Domestic producers, however, contend that solar project developers
> can use either monofacial or bifacial solar panels, and thus safeguard duties are
> necessary to protect domestic production of solar panels.  Both sides contend that
> their position better supports expanding solar as a source of renewable energy in
> the United States.

Invenergy I, 422 F. Supp. 3d at 1264.

The statutory scheme for imposition of safeguard duties has been summarized by the court

as follows:

> Through Section 201, Congress provided a process by which the executive branch
> could implement temporary safeguard measures to protect a domestic industry from
> the harm associated with an increase in imports from foreign competitors.  Trade
> Act of 1974 §§ 201–04, 19 U.S.C. §§ 2251–54 (2012).  Section 201 dictates that,
> upon petitions from domestic entities or industries, the International Trade
> Commission ("ITC") may make an affirmative determination that serious injury or
> a threat of serious injury to that industry exists.  19 U.S.C. § 2252.  The President
> may then authorize discretionary measures, known as "safeguards," to provide a
> domestic industry temporary relief from serious injury. 19 U.S.C. § 2253.  The
> statute vests the President with decision making authority based on consideration
> of ten factors. 19 U.S.C. § 2253(a)(2).  Safeguard measures have a maximum
> duration of four years, unless extended for another maximum of four years based
> upon a new determination by the ITC.  19 U.S.C. § 2253(e)(1).  The statute also
> outlines certain limits on the President's ability to act under this statute, including
> to limit new actions after the termination of safeguard measures regarding certain
> articles.  See 19 U.S.C. § 2253(e).  Further, the safeguard statute mandates that the
> President "shall by regulation provide for the efficient and fair administration of all
> actions taken for the purpose of providing import relief." 19 U.S.C. § 2253(g)(1).

Invenergy I, 422 F. Supp. 3d at 1265–66 (footnote omitted).

Through Presidential Proclamation 9693 issued on January 23, 2018, the President

imposed safeguard duties, designed to protect the domestic industry, on imported monofacial and

bifacial solar panels, but delegated authority to USTR to exclude products from the duties. 83 Fed.

Reg. 3,541–51 ("Presidential Proclamation").  After a sixteen-month notice-and-comment process

through which USTR considered requests for exclusions, USTR decided to exclude bifacial solar

panels from safeguard duties.  Exclusion of Particular Products From the Solar Products Safeguard

Measure, 84 Fed. Reg. 27,684–85 (USTR June 13, 2019) ("Exclusion").  Four months later,

however, USTR published the October Withdrawal.  The October Withdrawal explained that,

"[s]ince publication of [the Exclusion] notice, the U.S. Trade Representative has evaluated this

exclusion further and, after consultation with the Secretaries of Commerce and Energy, determined

it will undermine the objectives of the safeguard measure." October Withdrawal at 54,244.  Absent

court action, therefore, the October Withdrawal would have reinstituted safeguard duties on certain bifacial solar panels.

Plaintiff Invenergy initiated this case in response to the October Withdrawal. Summons, Oct. 21, 2019, ECF No. 1; Invenergy's Compl., Oct. 21, 2019, ECF No. 13. The Government subsequently moved for, and the court allowed, USTR to delay the effective date of the October Withdrawal to November 8, 2019. Def.'s Mot. to Stay Effective Date of Withdrawal, Oct. 25, 2019, ECF No. 23; Ord. Granting Mot., Oct. 25, 2019, ECF No. 29. The court then issued a temporary restraining order, Nov. 7, 2019, ECF No. 68, and later a PI, to enjoin USTR from reinstituting safeguard duties on certain bifacial solar panels through implementation of the October Withdrawal. Invenergy I, 422 F. Supp. 3d 1255. The PI found that USTR made the decision with only nineteen days' notice to the public, without an opportunity for affected or interested parties to comment, and without a developed public record. Id. at 1286–88. The PI included enjoining USTR from amending the Harmonized Tariff Schedule of the United States ("HTSUS") to reflect withdrawal of the Exclusion, "until entry of final judgment as to Plaintiffs' claims against Defendants in this case." Id. at 1295. In so ruling, the court held that the October Withdrawal of the Exclusion by the Government likely violated the Administrative Procedure Act ("APA") on two grounds: (1) the rulemaking occurred without notice and comment, id. at 1286–87; and (2) it was likely done in an arbitrary and capricious manner, id. at 1287–88.

In responding to Plaintiffs' motion for a PI, the Government moved to dismiss the case for Plaintiffs' alleged lack of standing and failure to join an indispensable party. Def.'s Mot. to Dismiss. In issuing the PI, the court ordered the parties to confer and submit a proposed briefing

schedule on this issue. [3]  <u>Invenergy I</u>, 422 F. Supp. 3d at 1295.  Throughout late December 2019

and early January 2020, Plaintiffs filed four consent motions for an extension of time to file the

proposed briefing schedule and indicated to the court that the parties were close to reaching an

agreement to resolve this case.  <u>See</u> Pls.' Mot. for an Ext. of Time, Dec. 19, 2019, ECF No. 118;

Ord. Granting Mot., Dec. 20, 2019, ECF No. 119; Pls.' Mot. for Ext. of Time, Dec. 27, 2019, ECF

No. 121; Ord. Granting Mot., Dec. 27, 2019, ECF No. 122; Pls.' Mot. for Ext. of Time, Jan. 3,

2020, ECF No. 123; Ord. Granting Mot., Jan. 3, 2020, ECF No. 124; Pls.' Mot. for Ext. of Time,

Jan. 17, 2020, ECF No. 125; Ord. Granting Mot., Jan. 17, 2020, ECF No. 126.

However, on January 24, 2020, the Government filed its Motion for Leave to File a Status

Report and Status Report ("January Status Report"), notifying the court and the other parties of

USTR's publication of "a notice in the Federal Register, requesting interested party comment

regarding whether to withdraw the [Exclusion] from the safeguard measure pursuant to section

201 of the Trade Act of 1974, 19 U.S.C. § 2251, <u>et seq.</u>, for bifacial solar panels contained in

[Exclusion]."  ECF No. 129.  The court granted the Government's motion that same day, thus

deeming the January Status Report filed.  Ord. Granting Mot., Jan. 24, 2020, ECF Nos. 130, 131.

USTR published the notice in the Federal Register three days later, thereby initiating the comment

period.  <u>Procedures to Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels</u>

<u>From the Safeguard Measure on Solar Products</u>, 85 Fed. Reg. 4,756–58 (USTR Jan. 27, 2020)

("<u>January Notice</u>").  The <u>January Notice</u> acknowledged the court's PI "enjoining the U.S. Trade

Representative from withdrawing the exclusion on bifacial solar panels from the safeguard

---

[3] Plaintiffs Invenergy, Clearway, AES DE, and SEIA responded to the Government's Motion to
Dismiss on December 13, 2019.  Invenergy, Clearway, and AES DE's Resp. in Opp'n to Def.'s
Mot. to Dismiss, ECF No. 115; Resp. of Pl.-Inter. SEIA in Opp'n to Def.'s Mot. to Dismiss, ECF
No. 116.  The Government and Defendant-Intervenors never replied to the responses to the motion
and have not pursued this motion before the court.

measure," and noted that "[i]f the U.S. Trade Representative determines after receipt of comments

pursuant to this notice that it would be appropriate to withdraw the bifacial exclusion or take some

other action with respect to the exclusion, the U.S. Trade Representative will request that the

[c]ourt lift the injunction." Id. at 4,756.  The January Notice provided a deadline for comments of

February 17, 2020 and for responses to those comments of February 27, 2020.  Id. at 4,757.

In response, Plaintiffs Invenergy, Clearway, and AES DE filed their Motion to Show Cause

as to Why the Court Should Not Enforce the Preliminary Injunction, Jan. 30, 2020, ECF No. 132,

alleging that the Government's publication of the January Notice violated the PI.  Plaintiffs asked

the court to "order Defendants to show cause as to why it should not enforce the PI by ordering

USTR to cease proceedings under the [January Notice], and instead proceed to briefing on

Plaintiffs' substantive and procedural claims."  Mem. in Supp. of Mot. to Show Cause as to Why

the Ct. Should Not Enforce the PI at 12, Jan. 30, 2020, ECF No. 132.  The court ordered the

Government and Hanwha Q Cells to respond, Jan. 31, 2020, ECF No. 133, which they did on

February 7, 2020, Def.'s Resp. to Pls.' Mot. to Show Cause and Def.'s Mot. to Vacate and Dismiss;

Hanwha Q Cells' Resp. to Pls.' Mot. to Show Cause, ECF No. 140.  The Government included

with its response a motion to vacate the October Withdrawal and to dismiss the case as moot.

Def.'s Mot. to Vacate and Dismiss.  The court held oral argument on Plaintiffs' Motion to Show

Cause on February 12, 2020.  ECF No. 145.  The court then denied Plaintiffs' motion stating, "the

Government's [January Notice] did not violate the text of [the PI] because the [January Notice]

does not (1) implement the [October Withdrawal]; (2) modify the HTSUS; or (3) enforce or make

effective the [October Withdrawal] or modifications to the HTSUS related to the [October

Withdrawal]."  Invenergy II, 427 F. Supp. 3d at 1407.  The court further held that the January

Notice alone did "not constitute a final decision to implement the previous or any new withdrawal

of the Exclusion of bifacial solar panels." Id.  The court, moreover, made clear that "[it] retains exclusive jurisdiction over the implementation, enforcement, or modification of the [October Withdrawal] until such date as a final judgment is entered in this case." Id.

Following the court's decision to deny the Plaintiffs' Motion to Show Cause, the parties continued to brief the Government's Motion to Vacate and Dismiss.  Plaintiffs filed responses to the motion on March 16, 2020.  Pls.' Resp. in Opp'n to Mot. to Vacate and Dismiss, ECF No. 152 ("Pls.' Resp. to Def.'s Mot. to Vacate and Dismiss").  The Government and Defendant-Intervenor Hanwha Q Cells replied on April 6, 2020.  Def.'s Reply to Pls.' Resp. to Def.'s Mot. to Vacate and Dismiss, ECF No. 153; Def.-Inter. Hanwha Q Cells' Reply to Pls.' Resp. to Def.'s Mot. to Vacate and Dismiss, ECF No. 154 ("Hanwha Q Cells' Reply to Def.'s Mot. to Vacate and Dismiss").  Thus, the Government's Motion to Vacate and Dismiss has been fully briefed by all parties.

On April 14, 2020, the Government filed another status report to inform the court of the issuance of USTR's April Withdrawal.  Def.'s Status Report, ECF No. 155 ("April Status Report"). The April Withdrawal constitutes a withdrawal of the Exclusion of bifacial solar panels from safeguard duties -- the same ultimate conclusion as the October Withdrawal.  In its April Status Report, the Government explained that "[i]n response to the [c]ourt's preliminary conclusion that repealing the withdrawal of the exclusion 'requires rulemaking subject to . . . APA notice and comment,' USTR 'opened a public docket,' and received 15 comments regarding the bifacial exclusion and 49 subsequent comments responding to the initial comments." April Status Report at 2 (internal citations omitted).  Further, the Government explained that USTR "based the [April Withdrawal] on the comments and evidence received." Id.

Two days later, the Government filed its Motion to Dissolve the Preliminary Injunction, pursuant to USCIT Rule 60(b)(5). Def.'s Mot. to Dissolve. The Government argued that the April Withdrawal "cured the sole reason for which the injunctive relief was granted." Id. at 1. Plaintiffs filed responses in opposition to the motion on May 7, 2020. Invenergy, Clearway, and AES DE's Resp. in Opp'n to Def.'s Mot. to Dissolve Prelim. Inj., ECF No. 163 ("Invenergy's Resp. to Def.'s Mot. to Dissolve"); Pl.-Inter. SEIA's Resp. to Def.'s Mot. to Dissolve PI, ECF No. 164 ("SEIA's Resp. to Def.'s Mot. to Dissolve"); Pl.-Inter. EDF-R's Resp. in Opp'n to Def.'s Mot. to Dissolve, ECF No. 166 ("EDF-R's Resp. to Def.'s Mot. to Dissolve"). Plaintiffs argued that the April Withdrawal was an arbitrary and capricious decision and thus did not cure the likely APA violation previously identified by the court. Id. Shortly thereafter, Plaintiffs filed motions to supplement their complaints to include the April Withdrawal. Pls.' Mots. to Suppl. The Government and Defendant-Intervenors subsequently responded. Def.'s Resp. to Pls.' Mots. for Leave to File Suppl. Compls., May 11, 2020, ECF No. 171 ("Def.'s Resp. to Pls.' Mots. to Suppl."); Def.-Inters.' Resp. to Pls.' Mots. for Leave to File Suppl. Compls., May 12, 2020, ECF No. 173 ("Def.-Inters.' Resp. to Pls.' Mots. to Suppl.").

The court issued questions regarding the Government's Motion to Dissolve to the parties on May 8, 2020, ECF No. 169, to which the parties responded on May 12, 2020, Def.'s Resps. to the Ct.'s Questions of May 8, 2020, ECF No. 172 ("Def.'s Resps. to Ct.'s Questions"); Def.-Inters.' Resps. to Ct.'s Questions Issued May 8, 2020, ECF No. 174 ("Def.-Inters.' Resps. to Ct.'s Questions"); Pls.' Resps. to Ct.'s Questions Regarding Mot. to Dissolve PI, ECF No. 175 ("Pls.' Resps. to Ct.'s Questions"). The Government attached two memoranda to its responses to the court's questions. Mem. from DUSTR Jeffrey D. Gerrish and General Counsel Joseph Barloon to USTR Robert Lighthizer, Apr. 13, 2020, Attach. 1 to Def.'s Resp. to Ct.'s Questions, ECF No.

172-1 ("Lighthizer Decision Memorandum"); Mem. from DUSTR Jeffrey D. Gerrish and General

Counsel Joseph Barloon to USTR Robert Lighthizer, Apr. 10, 2020, Attach. 2 to Def.'s Resp. to

Ct.'s Questions, ECF No. 172-2 ("Gerrish Memorandum"), (collectively, "USTR Memoranda").

The USTR Memoranda consist of Deputy U.S. Trade Representative Jeffrey D. Gerrish's and U.S.

Trade Representative General Counsel Joseph Barloon's analysis of USTR's authority to withdraw

an exclusion, their analysis of comments received pursuant to the <u>January Notice</u>, and a

recommended decision, initialed by U.S. Trade Representative Robert Lighthizer.  <u>Id.</u>

 The court held oral argument via teleconference on May 13, 2020.  ECF No. 177 ("Oral

Arg.").  Following the teleconference, at the court's direction, the parties filed supplemental briefs

on May 15, 2020.  Invenergy, Clearway, AES DE's Post-Arg. Submission in Opp'n to Def.'s Mot.

to Dissolve PI, ECF No. 182 ("Invenergy's Post-OA Filing"); Pl.-Inter. SEIA's Post-Arg. Br. in

Opp'n to Def.'s Mot. to Dissolve PI, ECF No. 181 ("SEIA's Post-OA Filing"); Pl.-Inter. EDF-R's

Suppl. Resp. After Oral Arg. to Def.'s Mot. to Dissolve PI, ECF No. 180 ("EDF-R's Post-OA

Filing"); Def.'s Post-Hearing Br., ECF No. 179 ("Def.'s Post-OA Filing"); Suppl. Br. of Def.-

Inters. Hanwha Q Cells and Auxin Solar, ECF No. 183 ("Def.-Inters.' Post-OA Filing").

## JURISDICTION

 The court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(i) (2018), which

provides that the court "shall have exclusive jurisdiction of any civil action commenced against

the United States, its agencies, or its officers, that arises out of any law of the United States

providing for . . . [the] administration and enforcement" of tariffs and duties.

## DISCUSSION

 The court takes this opportunity to address all outstanding motions in this case because of

the implications of each motion on the others.  The court first denies the Government's Motion to

Dismiss filed in November 2019 in response to Plaintiffs' Motion for a PI. Next, the court grants

Plaintiffs' Motions to Supplement. The court then denies the Government's Motion to Vacate and

Dismiss. Finally, the court denies the Government's Motion to Dissolve the PI. The court

addresses each of these motions in turn and sets forth its reasoning.

## I.       *The Court Denies the Government's November Motion to Dismiss.*

As a preliminary matter, the court first addresses the Government's outstanding Motion to

Dismiss, filed with the court on November 8, 2019, before the court issued the PI. The

Government argued that the court should dismiss the case because (1) Invenergy lacks Article III

standing; (2) Invenergy lacks prudential standing;[4] and (3) Invenergy has not joined an

indispensable party. Def.'s Mot. to Dismiss at 11–21. Later that same day, the court granted the

Motion to Intervene of EDF-R, a self-described "importer, purchaser, and user of bifacial solar

modules." EDF-R's Unopposed Mot. to Intervene as Pl.-Inter. at 2, Nov. 7, 2019, ECF No. 69;

Ord. Granting EDF-R's Mot. to Intervene, Nov. 8, 2019, ECF No. 78. On December 5, 2019, the

court issued the PI, in which it squarely addressed the Government's objections to standing,

concluding that Invenergy, both independently and as joined by Plaintiff-Intervenors, had Article

III and statutory standing necessary for the court to exercise jurisdiction. Invenergy I, 422 F. Supp.

3d at 1275–80. Plaintiffs Invenergy, Clearway, AES DE, and SEIA then responded to the

Government's Motion to Dismiss on December 13, 2019, discussing and incorporating the court's

standing analysis in Invenergy I. Invenergy, Clearway, and AES DE's Resp. in Opp'n to Def.'s

Mot. to Dismiss, ECF No. 115; Resp. of Pl.-Inter. SEIA in Opp'n to Def.'s Mot. to Dismiss, ECF

---

[4] As the court noted in Invenergy I, "prudential standing" is "a misnomer" and should be referred
to as "statutory standing." 422 F. Supp. 3d at 1275 (quoting Lexmark Int'l Inc. v. Static Central
Components, Inc., 572 U.S. 118, 126, 128 n.4 (2014)).

No. 116.  The Government and Defendant-Intervenors, however, never filed a reply.  See USCIT

R. 7(d) (setting deadline for reply to a response filed to dispositive motion).

The reply would have provided the Government and Defendant-Intervenors an opportunity

to respond to both the intervention in the case of an importer of bifacial solar panels, EDF-R, and

the issuance of the PI, including the court's standing analysis in its opinion.  It appears instead,

however, that the Government has abandoned this initial Motion to Dismiss.  Neither the

Government nor Defendant-Intervenors have made any subsequent motions or mentions of this

Motion to Dismiss since issuance of the PI.  Furthermore, when directly asked about this motion

by the court in its written questions to the parties and at the most recent oral argument, the

Government declined to acknowledge that motion or answer the question as to that motion.  See

Oral Arg.; Def.'s Resps. to Ct.'s Questions at 4.

The court concludes that the Motion to Dismiss must be denied because the Government

has failed to pursue this motion, despite ample opportunity to do so and direct questioning by the

court.  See Silicon Graphics, Inc. v. ATI Techs., Inc., 607 F.3d 784, 801 (Fed. Cir. 2010)

(upholding district court's entry of judgment based on abandoned and unargued claims and stating

that "[i]t is a claimant's burden to keep the district court clearly apprised of what parts of its claim

it wishes to pursue and which parts, if any, it wishes to reserve for another day"); Coal. for the

Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The

appellants' failure to brief and argue this issue during the proceedings before the district court is

grounds for finding that the issue has been abandoned.").

## II.   The Court Grants Plaintiffs' Motions to Supplement Their Complaints.

The court next exercises its discretion to grant Plaintiffs' Motions to Supplement their

complaints pursuant to USCIT Rule 15(d).  After the Government filed the April Status Report

alerting the parties to USTR's new final determination to withdraw the <u>Exclusion</u>, the <u>April</u> <u>Withdrawal</u>, Plaintiffs moved to supplement their complaints to "add facts and claims regarding" the <u>April Withdrawal</u>.  <u>See, e.g.</u>, Mem. of Points and Authorities in Supp. of the Pl. and Pl.-Inters.' Mot. for Leave to File Suppl. Compls. at 1, May 4, 2020, ECF No. 161 ("Invenergy's Mem. re: Suppl. Compl.").  Plaintiffs argue that supplementing their complaints "will avoid piecemeal litigation, allow a prompt and efficient resolution of the entire controversy among the parties, and impose no prejudice on the United States."  <u>Id.</u> at 3–4.  The Government and Defendant-Intervenors, for their part, do not object to supplementation of the complaints, but rather defer to the court's judgment as to whether supplementation here meets the requirements of USCIT Rule 15(d).  <u>See</u> Def.'s Resp. to Pls.' Mots. to Suppl. at 1; Def.-Inters.' Resp. to Pls.' Mots. to Suppl. at 1.

   USCIT Rule 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Thus, it is within the court's discretion to grant such a motion.  The court has described the USCIT Rule 15 standard as "equitable and lenient."  <u>Arlanxeo USA LLC v. United States</u>, 42 CIT __, __, 337 F. Supp. 3d 1350, 1356 (2018).  Further, the Federal Circuit has adopted the Supreme Court's view of Rule 15 under the corresponding Federal Rules of Civil Procedure as a mandate "which declares that leave to amend 'shall be freely given when justice so requires' [that] 'is to be heeded.'"  <u>Intrepid v.</u> <u>Pollock</u>, 907 F.2d 1125, 1128 (Fed. Cir. 1990) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  The Federal Circuit in <u>Intrepid</u> also noted that "Rule 15(d) unequivocally allows supplementing a complaint with a count based on later events."  <u>Id.</u> at 1129 ("Where the supplemental pleading with respect to such later events relates to the same cause of action

originally pleaded, the Supreme Court held, in <u>Griffin v. School Board</u>, 377 U.S. 218, 227 (1964),

that it would be an abuse of discretion to deny the amendment.").  Factors that may weigh against

permitting amendment or supplementation of a complaint include: "[u]ndue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of the amendment."  <u>Foman</u>, 371 U.S. at 182.  Further, this court's rules

"should be construed, administered, and employed by the court and the parties to secure the just,

speedy, and inexpensive determination of every action and proceeding."  USCIT R. 1.

       The court concludes that equity and judicial efficiency dictate that it grant Plaintiffs'

Motions to Supplement.   The <u>April Withdrawal</u> is a later-in-time event that is sufficiently

connected to the original pleading because of its impact on the <u>Exclusion</u>, and Plaintiffs' claims

regarding the legality of the <u>April Withdrawal</u> are substantially similar to those in their original

complaints.  Furthermore, the court has already established its jurisdiction to hear these claims,

including by ruling on Plaintiffs' standing to challenge the USTR's decision regarding safeguard

tariffs on bifacial solar panels.  <u>Invenergy I</u>, 422 F. Supp. 3d at 1271–80.  The court agrees that to

require Plaintiffs "to file a brand new suit to challenge the [<u>April Withdrawal</u>]" would "waste the

parties' and the [c]ourt's resources given that this [c]ourt is already familiar with both the

jurisdictional and merits issues in this case that were raised by Plaintiffs' challenge to the [<u>October

Withdrawal</u>]."  <u>See</u> Invenergy's Mem. re: Suppl. Compl. at 3.

       Further, because the Government and Defendant-Intervenors do not oppose the motion, <u>see</u>

Def.'s Resp. to Pls.' Mots. to Suppl. at 1; Def.-Inters.' Resp. to Pls.' Mots. to Suppl. at 1, the court

finds that allowing Plaintiffs to supplement their complaints will not prejudice the Government or

Defendant-Intervenors.  There being no indication of undue delay, lack of notice, or bad faith on

the part of Plaintiffs, the court concludes that none of the factors that weigh against supplementation is present here. Therefore, the court grants Plaintiffs' Motions to Supplement, and deems their supplemental complaints filed.

### III.    The Court Denies the Government's Motion to Vacate the <u>October Withdrawal</u> and Dismiss the Case as Moot.

After the publication of the <u>January Notice</u> and the initiation of a new notice-and-comment period to consider withdrawal of the <u>Exclusion</u> by USTR, the Government moved to vacate the <u>October Withdrawal</u> and to dismiss the case as moot in order to clear the way for implementation of a new determination by USTR.  Def.'s Mot. to Vacate and Dismiss at 10.  The Government explained that, while it was not confessing error in USTR's issuance of the <u>October Withdrawal</u>, USTR wished to "address interested party comments in the first instance," which would "provide certainty to interested parties during the remaining term of the safeguard measure."  <u>Id.</u>  The Government further argued that both USTR's initiation of a notice-and-comment period and the requested vacatur would moot Plaintiffs' claims.  <u>Id.</u> at 11.  Defendant-Intervenor Hanwha Q Cells supported this motion by arguing that the court should vacate the <u>October Withdrawal</u> and noting that, at least at the time, USTR's <u>January Notice</u> had not produced a final agency action that was ripe for review.  Hanwha Q Cells' Reply to Def.'s Mot. to Vacate and Dismiss at 10.

Plaintiffs opposed vacatur of the <u>October Withdrawal</u> and dismissal of the case as moot because they argued that the court could not vacate an agency decision without a final judgment and that the case should not be dismissed due to the ongoing process initiated by the <u>January Notice</u>.  Pls.' Resp. to Def.'s Mot. to Vacate and Dismiss at 6–19.  Specifically, Plaintiffs opposed vacatur of the <u>October Withdrawal</u> because the Government neither confessed error nor requested a voluntary remand, and the court had made no final decision on the merits.  <u>Id.</u> at 7–8 (citing <u>SKF USA v. United States</u>, 254 F.3d 1022, 1028–29 (Fed. Cir. 2001); <u>Nat'l Parks Conservation Ass'n</u>

v. Salazar, 660 F. Supp. 2d 3, 4–5 (D.D.C. 2009)).  In light of the court's decision, discussed supra,

Discussion, Section II, to allow Plaintiffs to supplement their complaints, thus establishing the

court's jurisdiction over claims related to the April Withdrawal, the court addresses the

Government's mootness argument before separately addressing its request for vacatur of the

October Withdrawal.

        The court first denies the Government's Motion to Vacate and Dismiss for mootness

because, particularly in light of the supplemental complaints, a live dispute no doubt exists.  In

order to maintain jurisdiction to adjudicate a dispute, a case must present a live dispute between

the parties for which the court can provide relief.  Chafin v. Chafin, 568 U.S. 165, 171–72 (2013).

"There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no

longer live or the parties lack a legally cognizable interest in the outcome.'"  Id. at 172 (quoting

Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)) (other quotations omitted).   Unlike the

Government's Motion to Dismiss filed in November, the Government has fully briefed and

pursued its Motion to Vacate and Dismiss for mootness.  However, the Government filed, and the

parties briefed, the motion before USTR issued the April Withdrawal and before Plaintiffs moved

to supplement their complaints to reflect the April Withdrawal.  Indeed, one of the Government's

arguments in support of its motion was that "any complaint regarding the outcome of USTR's

proceeding is necessarily speculative."  Def.'s Mot. to Vacate and Dismiss at 11.  Because the

court today grants Plaintiffs' Motions to Supplement their complaints, the court must deny the

Government's Motion to Vacate and Dismiss the case as moot because, as the parties do not

dispute, a live controversy regarding the legality of the April Withdrawal is now before the court.

See Pls.' Resps. to Ct.'s Questions at 8 ("[I]f this [c]ourt grants Plaintiffs' Motions to Supplement

the Complaints, then plainly the Court has jurisdiction over the [April Withdrawal] under 28

U.S.C. § 158l(i)(2)–(4) and the APA."); Def.'s Resps. to Ct.'s Questions at 8 ("If the [c]ourt were

to allow the filing of supplemental complaints after dissolving the injunction, then, subject to any

other jurisdictional defects that may be identified, [P]laintiffs could challenge the merits of the

April Withdrawal, including filing motions for preliminary injunction and dispositive briefing.").

    Separate and apart from the April Withdrawal, the court also denies the Government's

request for vacatur of the October Withdrawal because the Government has not met its burden of

establishing a legal basis on which the court can grant such a motion.  The court may vacate an

agency decision through a final disposition of a case or via remand of the case to the agency.  See

Limnia, Inc. v. United States Dep't of Energy, 857 F.3d 379, 381 (D.C. Cir. 2017) (reversing a

district court grant of a voluntary remand where the agency did not intend to revisit the challenged

agency decision on review); Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo, 551 F.3d

10, 16–17 (1st Cir. 2008) (reversing a district court's dissolution of a PI based on sufficient

compliance with the court's order because the district court did not resolve outstanding legal

issues, which would impact compliance before dissolving the PI); Nat'l Parks Conservation Ass'n,

660 F. Supp. 2d at 5 (denying a motion to vacate an agency rule and remand where it would

"wrongfully permit the Federal defendants to bypass established statutory procedures for repealing

an agency rule").[5]  The Government, however, has provided no legal authority in support of the

---

[5] Defendant-Intervenor Hanwha Q Cells points the court to a decision by the United States District Court of Colorado, in which the court vacated an agency decision without first adjudicating the merits of the case.  Hanwha Q Cells' Reply to Def.'s Mot. to Vacate and Dismiss at 4 (citing Center for Native Ecosystems v. Salazar, 795 F. Supp. 2d 1236, 1240–42).  However, vacatur in that case was in the context of Plaintiffs' request for remand after the basis for the agency's decision, a separate legal opinion by an executive branch official, had been withdrawn.  Center for Native Ecosystems, 795 F. Supp. 2d at 1239, 1242 (D. Colo. 2013).  That case is not persuasive here because USTR has not requested a remand from the court, which would have guaranteed ongoing jurisdiction over any decision by USTR to withdraw the Exclusion.  Instead, the Government has argued that the court did not have jurisdiction over the April Withdrawal until challenged in this or another case.  Def.'s Resps. to Ct.'s Questions at 6 ("Unless and until the [c]ourt grants

proposition that a court can vacate an agency decision before final disposition of the case or without a voluntary remand request from the agency.

In response to the court's question on this point, the Government argued that the <u>April Withdrawal</u> was designed to supersede the <u>October Withdrawal</u>.  Def.'s Resps. to Ct.'s Questions at 2–3 (answering "Yes" to the court's question about whether it was the Government's position that the <u>April Withdrawal</u> legally superseded the <u>October Withdrawal</u> and noting the <u>April Withdrawal</u>'s prospective application).  At this stage in the litigation, however, the Government has not yet demonstrated a legal basis on which the court can vacate the <u>October Withdrawal</u>.  The Government has not confessed error, requested remand, or indicated that its position regarding the <u>October Withdrawal</u> has changed in any way.  <u>See</u> Def.'s Mot. to Vacate and Dismiss at 10–11 (noting that the USTR issued the <u>January Notice</u> "without confessing error," but that it nonetheless mooted Plaintiffs' alleged procedural violation); Def.'s Resps. to Ct.'s Questions at 9 ("USTR's proceeding leading to the <u>April Withdrawal</u> was not a remand proceeding.").  Moreover, the Government's introduction of the USTR Memoranda two days before oral argument on the Government's Motion to Dissolve the PI raises considerable questions -- ones which have not yet been briefed -- as to whether the publication of the <u>April Withdrawal</u> in the Federal Register marked the completion of a new determination.  <u>See</u> Def.'s Resps. to Ct.'s Questions.  Thus, to the extent the Government argues the <u>April Withdrawal</u> legally supersedes the <u>October Withdrawal</u>, it must also demonstrate that the new determination is complete.  The Government has neither provided a legal basis on which the court can grant vacatur, as both final disposition on the merits

---

[P]laintiffs' motions to supplement their complaints, the [c]ourt will not have assumed jurisdiction to entertain any challenge to the <u>April Withdrawal</u>").  In any event, with today's opinion and order granting Plaintiffs' Motions to Supplement their complaints to include the <u>April Withdrawal</u>, the court establishes jurisdiction over this new decision by USTR.

or voluntary remand do not apply here, nor proven that the <u>April Withdrawal</u> legally supersedes

or rescinds the <u>October Withdrawal</u>; thus, the court must deny the motion for vacatur at this stage.

The court denies the Government's Motion to Vacate and Dismiss without prejudice and takes no

position as to the outcome of any subsequent requests to vacate the <u>October Withdrawal</u> in the

context o*f new developments*.

### IV.    The Court Denies the Government's Motion to Dissolve the PI.

Finally, the court denies the Government's Motion to Dissolve the PI pursuant to USCIT

Rule 60(b)(5).  The Government filed this motion shortly after notifying the court of publication

of USTR's <u>April Withdrawal</u>.  Def.'s Mot. to Dissolve; April Status Report.  Plaintiffs responded

that they opposed the motion before filing their own Motions to Supplement.  <u>See</u> Invenergy's

Resp. to Def.'s Mot. to Dissolve; SEIA's Resp. to Def.'s Mot. to Dissolve; EDF-R's Resp. to

Def.'s Mot. to Dissolve.  The most recent oral argument also focused on the parties' arguments

regarding dissolution of the PI.  Oral Arg.

USCIT Rule 60(b)(5) states that "the court may relieve a party or its legal representative

from a final judgment, order, or proceeding . . . [when] the judgment has been satisfied, released,

or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

prospectively is no longer equitable."  As the court noted in its opinion denying Plaintiffs' Motion

to Show Cause, the court has continuing jurisdiction over the injunction on the <u>October</u>

<u>Withdrawal</u>.  <u>Invenergy II</u>, 427 F. Supp. 3d at 1407 (citing <u>In re Shenango Group</u>, 501 F.3d 338

(3d Cir. 2007); <u>In re Tomlin</u>, 105 F.3d 933 (4th Cir. 1997)).  The court has significant discretion

in determining whether it is appropriate to continue to enforce a preliminary injunction.  <u>See Sys.</u>

<u>Fed'n No. 91 v. Wright</u>, 364 U.S. 642, 647 (1961) (noting that "an injunction often requires

continuing supervision by the issuing court and always a continuing willingness to apply its powers

and processes on behalf of the party who obtained that equitable relief"); Morita v. Application

Art Labs. Co., Nos. 89–1270, 89–1293, 1989 WL 83256, at *1 (Fed. Cir. July 28, 1989) (noting

that appellate review of denial of motion to dissolve preliminary injunction is "limited to

determining . . . whether the district court abused its discretion"); Kreepy Krauly U.S.A. Inc., v.

Sta-Rite Indus., Inc., Nos. 97-1091, 97-1368, 1998 WL 196750, at *9–10 (Fed. Cir. Apr. 24, 1998)

(same).

USCIT Rule 60(b)(5) allows the court to relieve a party from a judgment where factual or

legal circumstances have sufficiently changed such that continued enforcement of the injunctive

relief would be inequitable.  See AIMCOR Ala. Silicon, Inc. v. United States, 23 CIT 932, 939,

83 F. Supp. 2d 1293, 1299 (1999).  "A change in operative fact may serve as a basis for vacating

a preliminary injunction."  Concilio de Salud Integral de Loiza, 551 F.3d at 16 (1st Cir. 2008)

(citing Agostini v. Felton, 521 U.S. 203, 215 (1997)).  In dissolving an injunction, the court

requires the moving party to show both changed circumstances and that continuation of the

injunction would be inequitable.  See Morita, 1989 WL 83256, at *1–2 (noting that court must

inquire as to "whether the movant has shown that changed circumstances warrant discontinuation

of the preliminary relief," and declining to dissolve injunction because the defense's new

allegations did not "compel the district court to disturb its earlier finding as to likelihood of

success"); AIMCOR Ala. Silicon, 83 F. Supp. 2d at 1299 (noting that the moving party "bears the

burden of showing that changed circumstances . . . make the continuation of the injunction

inequitable"); Ad Hoc Shrimp Trade Action Comm. v. United States, 32 CIT 666, 670, 562 F.

Supp. 2d 1383, 1388 (2008) (same).  The burden is on the defendant to demonstrate to the court

that the PI "is unnecessary and should be reconsidered or dissolved."  SKF USA Inc. v. United

States, 28 CIT 170, 182, 316 F. Supp. 2d 1322, 1334 (2004).  The requirement that the moving

party meet this dual burden of showing changed circumstances and inequity "prevents an enjoined party from constantly challenging the imposition of a preliminary injunction and relitigating arguments on motions to dissolve that have already been considered by the district court in its initial decision." See Sprint Commc'ns Co. v. CAT Commc'ns Int'l Inc., 335 F.3d 235, 242 (3d Cir. 2003).

The Government argues that the April Withdrawal "cured the sole basis -- failure to comply with the notice and comment provisions of the APA --" for Plaintiffs' likelihood of success on the merits, justifying injunctive relief. Def.'s Mot. to Dissolve at 7. Thus, the Government maintains that "[t]here has been a significant change in 'factual conditions' that warrants dissolution of the preliminary injunction." Id. The Government further contends that "there is no basis to assume that the [April Withdrawal] is unlawful and to maintain the extraordinary remedy of injunctive relief" because, the Government claims, it was a new and separate determination entitled to a presumption of regularity. Id. at 8. Defendant-Intervenors indicate that they support the Government's Motion to Dissolve on a different basis -- that the Government has abandoned the October Withdrawal. See Def.-Inters.' Resps. to Ct.'s Questions at 1–4.

Plaintiffs oppose this motion, arguing that the Government has not met its burden of proving that circumstances have sufficiently changed or that it would be inequitable to continue the injunction. First, Plaintiffs dispute the Government's claim that the April Withdrawal cured the procedural deficiencies of the October Withdrawal. See Invenergy's Resp. to Def.'s Mot. to Dissolve at 1; SEIA's Resp. to Def.'s Mot. to Dissolve at 2; EDF-R's Resp. to Def.'s Mot. to Dissolve at 1. Specifically, Invenergy contends that the April Withdrawal provided only conclusory statements to justify USTR's determination. Invenergy's Resp. to Def.'s Mot. to Dissolve at 17. Moreover, Plaintiffs point to USTR's failure to address certain of their comments

in the April Withdrawal as published in the Federal Register to argue that the April Withdrawal, like the October Withdrawal, was arbitrary and capricious.  Id. at 19.  Therefore, they contend, the April Withdrawal suffers from at least one of the same procedural deficiencies that warranted injunctive relief as the October Withdrawal.  Id.; SEIA's Resp. to Def.'s Mot. to Dissolve at 4; EDF-R's Resp. to Def.'s Mot. to Dissolve at 7.  Plaintiffs further assert that, in the Motion to Dissolve, the Government "chose to argue only that the injunction should be dissolved, and the Withdrawal permitted to go into effect, because they had 'cured' the procedural error that the [c]ourt found in its PI Opinion by issuing notice and permitting the submission of comments." Pls.' Resps. to Ct.'s Questions at 11.  They contend that the Government "entirely failed to address the other basis for the PI: the [c]ourt's finding that Withdrawal of the Exclusion was likely arbitrary and capricious."  Id.  Second, Plaintiffs claim that the Government failed to argue that continued enforcement of the PI would be inequitable.  Invenergy's Resp. to Def.'s Mot. to Dissolve at 11; SEIA's Resp. to Def.'s Mot. to Dissolve at 2 (adopting the arguments set forth in Invenergy's and EDF-R's responses); EDF-R's Resp. to Def.'s Mot. to Dissolve at 10.

Later, in response to the court's questions, the Government provided the court with the USTR Memoranda, which it relies on as providing the reasoned explanation for the April Withdrawal and even characterizes as a part of USTR's new determination.  See Def.'s Resps. to Ct. Questions at 12 ("The [Gerrish Memorandum] provides the detailed findings of fact and analysis underlying the determination . . . The 'contested determination' here consists of the [Lighthizer Decision Memorandum] and the 'findings or report' would include the April Withdrawal published in the Federal Register and the [Gerrish Memorandum] approved by the Trade Representative" (quoting USCIT R. 73.3(a)(1))); USTR Mems.  The Government and Defendant-Intervenors rely on these memoranda at oral argument and in their post-argument briefs

to support the Governments' Motion to Dissolve the PI. <u>See</u> Oral Arg.; Def.'s Post-OA Filing at

8–9; Def.-Inters.' Post-OA Filing at 8. Plaintiffs do not address these memoranda in their

responses to the court's questions. <u>See</u> Pls.' Resp. to Ct.'s Questions. At oral argument and in

their post-argument filings, however, Plaintiffs make clear that they, like the court, lacked access

to these documents until the day before oral argument.[6] They argue that (1) the Government

cannot use the USTR Memoranda to meet its burden of showing that the <u>April Withdrawal</u> cured

the arbitrary and capricious harm identified in the PI because the Government did not publish,

provide to the parties, or reference those memoranda in its Motion to Dissolve; and (2) the court

should not rely on the USTR Memoranda because Plaintiffs have had no opportunity to review

and respond to those memoranda in the course of briefing on the Motion to Dissolve. <u>See</u> Oral

Arg.; Invenergy's Post-OA Filing at 5; SEIA's Post-OA Filing at 10; EDF-R's Post-OA Filing at

6–7.

   The court concludes that the Government has not met its burden of showing changed

circumstances and resulting inequity in order to justify dissolution of the PI. <u>See, e.g.</u>, <u>SKF USA</u>,

316 F. Supp. 2d at 1334. Thus, the court denies the Government's Motion to Dissolve. The court

reaches this conclusion for two reasons: (1) the Government did not make a showing that the <u>April</u>

<u>Withdrawal</u> constitutes sufficient changed circumstances regarding its previous arbitrary and

capricious finding in issuing the PI; and (2) the <u>October Withdrawal</u> is not yet moot because the

---

[6] At oral argument on May 13, 2020, the Government responded to Plaintiffs' concerns regarding
the alleged last-minute provision of the USTR Memoranda by explaining that such documents are
typically provided as part of the Administrative Record, pursuant to USCIT Rule 73.3. Oral
Arg. As this litigation has not proceeded to the merits of Plaintiffs' claims and had not, prior to
today's opinion, included claims related to the <u>April Withdrawal</u>, the Government has not yet
compiled the Administrative Record. <u>See</u> <u>id.</u>

USTR has not yet rescinded the October Withdrawal, and the Government has not yet met the

legal requirements for vacatur, addressed in further detail above.

First, the court finds that the Government's Motion to Dissolve does not address the court's

previous preliminary finding that the October Withdrawal was arbitrary and capricious. See Def.'s

Mot. to Dissolve. Instead, the Government argues that it addressed the "sole basis" of the PI -- the

lack of notice-and-comment proceedings. Def.'s Mot. to Dissolve at 7. See also April Status

Report at 2 (discussing only the court's preliminary finding regarding APA notice-and-comment

requirements, but not the arbitrary and capricious finding); Def.'s Mot. to Vacate and Dismiss at

11 (arguing that USTR's publication of the January Notice initiating a notice-and-comment period

"offers all of the relief that the [c]ourt preliminarily found to be lacking"). Further, only after the

Plaintiffs noted this absence in the Government's motion does the Government address this basis

and then provide the court and the parties with the USTR Memoranda that the Government then

argues provides the reasoned explanation for the April Withdrawal. See Def.'s Resps. to Ct.'s

Questions at 5, 12–16. While the Government does address the arbitrary and capricious claim in

response to the court's questions, the Government's late attempts to remedy its oversight in its

original motion is insufficient to meet its burden and to justify disturbing the court's previous

findings.[7] See, e.g., Tarpley v. Greene, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982) ("Clearly, oral

---

[7] The Government also contends at oral argument and in its post-oral argument brief that it had implicitly argued that the April Withdrawal cured the court's arbitrary and capricious basis for issuing the PI. See Oral Arg.; Def.'s Post-OA Filing at 2–3. However, if that was the Government's position, then it should have explicitly stated so rather than asking the court to divine that reading of its April Status Report and Motion to Dissolve ex-post, especially where the Government bears the burden here of proving changed circumstances. See Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a 'cursory fashion' with only 'bare-bones arguments.'" (citations omitted)); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and

argument on appeal is not the proper time to advance new arguments or legal theories in opposition

to a motion for summary judgment. . . . It is not the task of this court to consider all of the

implications of a theory vaguely raised for the first time at oral argument on appeal and to search

the record for supporting evidence.").  Without having addressed the arbitrary and capricious

finding in the PI in its Motion to Dissolve, the Government cannot show that circumstances have

sufficiently changed in regard to this finding, nor can it show that inequity would result in the

court's continual enforcement of the PI.  See Morita, 1989 WL 83256, at *1–2; Ad Hoc Shrimp

Trade Action Comm., 562 F. Supp. 2d at 1388; SKF USA, 316 F. Supp. 3d at 1334; AIMCOR

Ala. Silicon, 83 F. Supp. 2d at 1299.

      Second, the court recognizes that the Government need not show changed circumstances

and inequity from continuation of the PI if the October Withdrawal is vacated, and thus the grounds

on which the PI rests become moot.  As discussed in detail above in the context of vacatur,

however, the Government has not conclusively shown that USTR has rescinded the October

Withdrawal, or that the October Withdrawal would not go into effect should the court dissolve the

PI.  Thus, the circumstances surrounding the October Withdrawal, taken apart from the April

Withdrawal, do not justify dissolving the PI.  The court does not and need not definitively decide

whether the April Withdrawal in and of itself cures the deficiencies of the October Withdrawal or

that the April Withdrawal is free from legal defect.  Because USTR has not rescinded the October

Withdrawal and Plaintiffs have only recently been able to supplement their complaints to include

claims that USTR's April Withdrawal also runs afoul of the APA, the court merely concludes that

the Government has not met its burden of showing sufficiently changed circumstances to justify

---

distinctly,' or else forever hold its peace." (quoting Paterson–Leitch Co. v. Mass. Mun. Wholesale
Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988)).

dissolving the PI at this stage in the litigation.   Furthermore, Plaintiffs, the Government, and

Defendant-Intervenors have not had an adequate opportunity to address the implications of the

addition of the April Withdrawal to the court's jurisdiction or the newly provided USTR

Memoranda in support of that decision.   The court's decision today in no way prejudices the

Government from making future motions to dissolve the PI, whether by showing changed

circumstances and inequity or by mooting the October Withdrawal, on which the PI rests, through

vacatur.

## CONCLUSION

For these reasons, the court: (1) denies the Government's Motion to Dismiss for Failure to

Join an Indispensable Party; (2) grants Plaintiffs' Motions to Supplement their Complaints; (3)

denies the Government's Motion to Vacate the Withdrawal and Dismiss the Case as Moot; and (4)

denies the Government's Motion to Dissolve the PI.   Pursuant to the accompanying Order, the

court directs the parties to confer and submit a proposed further schedule in this action by June 17,

2020.   The court acknowledges the Government and Defendant-Intervenors' concern that domestic

industries may face a threat of material injury due to USTR's decision to exclude bifacial solar

products from safeguard duties.   See, e.g., Def.'s Post-OA Filing at 7; Def.-Inters.' Resps. to Ct.'s

Questions at 20–21; Def.-Inters.' Post-OA Filing at 12.   The court also acknowledges the concerns

of Plaintiffs (consumers, purchasers and importers of utility-grade bifacial solar panels), who

oppose safeguard duties that they claim increase the cost of bifacial solar panels.   See, e.g.,

Invenergy's Resp. to Def.'s Mot. to Dissolve at 25: SEIA's Resp. to Def.'s Mot. to Dissolve at 21.

At this stage of the proceedings, the court takes no position on the efficacy of the Exclusion or a

decision to withdraw the Exclusion in providing protection to the domestic solar industry.   Instead,

the court merely continues to require the Government to follow its own laws when it acts.

**SO ORDERED.**

_/s/   Gary S. Katzmann_
Gary S. Katzmann, Judge

Dated: May 27, 2020
      New York, New York