# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| INVENERGY RENEWABLES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| SOLAR ENERGY INDUSTRIES | ) |
| ASSOCIATION, CLEARWAY ENERGY | ) |
| GROUP LLC, EDF RENEWABLES, INC., and | ) |
| AES DISTRIBUTED ENERGY INC., | ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, OFFICE OF THE UNITED | ) |
| STATES TRADE REPRESENTATIVE, | ) |
| UNITED STATES TRADE REPRESENTATIVE | ) |
| ROBERT E. LIGHTHIZER, U.S. CUSTOMS | ) |
| AND BORDER PROTECTION, and ACTING | ) |
| COMMISSIONER MARK A. MORGRAN, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| HANWHA Q CELLS USA, INC., and AUXIN | ) |
| SOLAR, | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

Before: Judge Gary S. Katzmann

Court No. 19-00192

## PLAINTIFF-INTERVENOR SOLAR ENERGY INDUSTRIES ASSOCIATION'S PROPOSED SECOND SUPPLEMENTAL COMPLAINT

Plaintiff-Intervenor Solar Energy Industries Association ("SEIA") hereby submits its

proposed Second Supplemental Complaint in this action. For the reasons stated in Plaintiff and

Plaintiff-Intervenors' Motion for Leave to File Second Supplemental Complaints (ECF No. 257),

the Court should grant SEIA leave to file the attached Second Supplemental Complaint to add

1

facts and expand its existing claims to encompass Presidential Proclamation 10101 of October 10, 2020, which, among other things, purports to withdraw the exclusion for bifacial solar modules from the safeguard measure on certain silicon photovoltaic cells and modules. *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020). A "clean" copy of SEIA's proposed Second Supplemental Complaint is appended as Attachment 1. A "redline" showing the proposed additions and edits to SEIA's first Supplemental Complaint (ECF No. 191) is appended as Attachment 2.

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 721-4750
mnicely@akingump.com

*Counsel to SEIA*

Dated: October 19, 2020

# Attachment 1

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INVENERGY RENEWABLES LLC, | ) |
| Plaintiff, | ) |
| and | ) |
| SOLAR ENERGY INDUSTRIES ASSOCIATION, CLEARWAY ENERGY GROUP LLC, EDF RENEWABLES, INC., and AES DISTRIBUTED ENERGY INC., | ) |
| Plaintiff-Intervenors, | ) Before: Judge Gary S. Katzmann<br>) Court No. 19-00192 |
| v. | ) |
| UNITED STATES, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, UNITED STATES TRADE REPRESENTATIVE ROBERT E. LIGHTHIZER, U.S. CUSTOMS AND BORDER PROTECTION, and ACTING COMMISSIONER MARK A. MORGRAN, | ) |
| Defendants, | ) |
| and | ) |
| HANWHA Q CELLS USA, INC., and AUXIN SOLAR, | ) |
| Defendant-Intervenors. | ) |

## SECOND SUPPLEMENTAL COMPLAINT

Plaintiff-Intervenor Solar Energy Industries Association ("SEIA") brings this Complaint

against the United States of America, the Office of the United States Trade Representative

("USTR"), United States Trade Representative Robert E. Lighthizer, United States Customs and

Border Protection, and Acting Commissioner of U.S. Customs and Border Protection Mark A. Morgan (collectively, "Defendants"), and alleges as follows:

## BACKGROUND

### The Parties

1.      Plaintiff-Intervenor Solar Energy Industries Association (SEIA) is a 501(c)(6) non-profit trade association organized under the laws of the District of Columbia and headquartered in Washington, DC.  *See* Exhibit 1, Declaration of John Smirnow at ¶ 3.  SEIA is the national trade association for the U.S. solar industry, with hundreds of member companies.  *Id.*  SEIA members include companies throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers, including Plaintiff Invenergy Renewables LLC ("Invenergy").  *Id.*

2.      Defendant United States of America is the federal government of the United States of America.

3.      Defendant Office of the United States Trade Representative ("USTR") is an executive agency of the United States Government and a component of the Executive Office of the President.  It is headquartered at 600 17th Street, NW, Washington, DC 20508.

4.      Defendant Robert E. Lighthizer is the United States Trade Representative.  He is sued in his official capacity.

5.      Defendant United States Customs and Border Protection is an executive agency of the U.S. Government and a component of the Department of Homeland Security.  It is headquartered at 1300 Pennsylvania Avenue, NW, Washington, DC 20229.

6.      Defendant Commissioner Mark A. Morgan is the Acting Commissioner of U.S. Customs and Border Protection.  He is sued in his official capacity.

**History Regarding the Challenged Conduct**

*The Solar Safeguard Measure and Exclusion of Bifacial CSPV Modules*

7.     On May 23, 2017, the U.S. International Trade Commission ("ITC") initiated a "safeguard" investigation under Chapter 1 of title II of the Trade Act of 1974, 19 U.S.C. § 2251 et seq., of crystalline silicon photovoltaic ("CSPV") cells (whether or not partially assembled into other products).  *See Crystalline Silicon Photovoltaic Cells' (Whether or Not Partially or Fully Assembled Into Other Products); Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (Int'l Trade Comm'n June 1, 2017).

8.     On November 13, 2017, the ITC transmitted to the President a report on its investigation, finding that certain CSPV products were being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article.  *See* Presidential Proclamation 9693, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3541, 3541 (Jan. 25, 2018).   The ITC submitted a supplemental report on December 27, 2017 identifying unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury.  *Id.*

9.     Following receipt of the ITC reports and the Commissioners' recommendations regarding the appropriate actions to address the serious injury to the domestic industry, the President issued Proclamation 9693 on January 23, 2018, imposing a safeguard measure of a type described in section 203(a)(3) of the Trade Act with regarding to certain CSPV products.  *See id.* at 3541-51.

3

As relevant to this case, the President imposed a tariff rate quota on CSPV cells and an additional duty on CSPV modules at the following rates:

> If entered during the period from
> February 7, 2018 through February 6, 2019 . . . . . . . . . 30%
>
> If entered during the period from
> February 7, 2019 through February 6, 2020 . . . . . . . . . 25%
>
> If entered during the period from
> February 7, 2020 through February 6, 2021 . . . . . . . . . 20%
>
> If entered during the period from
> February 7, 2021 through February 6, 2022 . . . . . . . . . 15%

10.     Presidential Proclamation 9693 also provided that "{w}ithin 30 days after the date of this proclamation, the USTR shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation.  If the USTR determines, after consultation with the Secretaries of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register*, to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure . . . ." *Id.* at 3543-44.  Presidential Proclamation 9693 did not include any language authorizing USTR to modify or withdraw an exclusion once granted.

11.     On February 14, 2018, USTR published a notice setting out the procedures to request a product exclusion and opened a public docket for the submission of exclusion requests and comments regarding submitted requests on the Federal eRulemaking Portal, http://www.regulations.gov.  *See Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6670 (USTR Feb. 14, 2018).  USTR's notice did not restrict who could request an exclusion.  *See id.*  USTR

required exclusion requests to be received by March 16, 2018 and any responsive comments to be received by April 16, 2018. *See id.* at 6670, 6672. USTR stated that it would "evaluate each request on a case-by-case basis" and "grant only those exclusions that do not undermine the objectives of the safeguard measures." *Id.* at 6671. The notice establishing the exclusion process did not include any reference to the possibility that a granted exclusion could be modified or withdrawn at a later date.

12. Several interested parties timely filed exclusion requests or commented on exclusion requests for bifacial modules and bifacial solar cells, which are products that absorb light and generate electricity on each side of the panel or cell. *See Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,684 (USTR June 13, 2019). Several SEIA members participated in the development of a request submitted by Pine Gate Renewables LLC for the exclusion of bifacial modules. *See* Smirnow Declaration at ¶ 7.

13. On June 13, 2019, following more than a year of consideration by USTR, USTR published a notice in the Federal Register granting an exclusion from the safeguards action for "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells." *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. at 27,685. In granting the exclusion, USTR stated that it had evaluated the factors laid out in the February 14, 2018 notice, including the requirement that the exclusion not undermine the objectives of the safeguard measures. *See id.* at 27,684. USTR's notice did not contain any indication that the granted exclusion might be re-visited, modified, or withdrawn in the future.

14.    On October 9, 2019, USTR published a notice in the Federal Register that the exclusion for bifacial solar panels would be withdrawn, effective October 28, 2019, meaning that imported bifacial CSPV products would again be subject to the current safeguard action.  *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (USTR Oct. 9, 2019) (hereinafter, the "October Notice").  In a reversal from its findings in granting the exclusion for bifacial CSPV products, USTR claimed that "maintaining the exclusion will undermine the objectives of the safeguard measure."  *Id.* at 54,245.

15.    Unlike the granting of the exclusion, which was done after notice and comment from interested parties, the withdrawal of the exclusion reflected in the October Notice was not subject to any formal notice and comment.  *See* Smirnow Declaration at ¶ 9.  In its October Notice withdrawing the exclusion, USTR cited "newly available information" from "multiple inquiries, requests, and other comments from members of the public" and "other sources" supposedly "demonstrating that global production of bifacial solar panels is increasing, that the exclusion will likely result in significant increases in imports of bifacial solar panels, and that such panels likely will compete with domestically produced monofacial and bifacial CSPV products in the U.S. market."  84 Fed. Reg. at 54,245.  USTR, however, failed to identify who "these and other sources" were or the precise content of the information that was provided by those sources.  *See id.*

16.    Invenergy instituted an action in the U.S. Court of International Trade challenging the withdrawal of the bifacial panel exclusion by filing a summons, complaint, and motion for a temporary restraining order.  ECF Nos. 1, 13, 14.  SEIA filed a motion to intervene as a plaintiff-intervenor and a proposed complaint on October 24, 2020.  ECF No. 21.  On October 30, 2020,

the Court granted SEIA's motion to intervene and deemed SEIA's complaint to be filed on that date.  ECF Nos. 39, 43.

17.     Defendants moved for leave to defer withdrawal of the bifacial module exclusion until November 8, 2019, which was thirty days after the October Notice was published in the Federal Register.  ECF No. 23.  The Court granted the motion.  ECF No. 29.

18.     Invenergy filed a motion for a preliminary injunction on November 1, 2019, seeking to prevent Defendants from withdrawing the exclusion for bifacial modules from the safeguard action.  ECF No. 49.  SEIA filed a response in support of Invenergy's motion for a preliminary injunction on November 8, 2019.  ECF No. 83.

19.     On November 7, 2019, the Court issued a temporary restraining order preventing the withdrawal of the bifacial module exclusion from going into effect.  ECF No. 68. The Court extended the temporary restraining order by 14 days on November 21, 2019.  ECF No. 108.  The Court issued a preliminary injunction on December 5, 2019, prohibiting the withdrawal of the bifacial module exclusion "until entry of final judgment as to Plaintiffs' claims against Defendants in this case."  ECF No. 114.

20.     In its opinion accompanying the preliminary injunction order, the Court concluded that Plaintiff Invenergy both independently and once joined by Plaintiff-Intervenors, including SEIA, has standing to challenge the withdrawal of the bifacial module exclusion.  ECF No. 113 at 15. The Court then went on to address the four factors traditionally associated with requests for preliminary injunctions: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff would suffer irreparable harm without the preliminary injunction; (3) whether the balance of hardships favors the plaintiff; and (4) whether the preliminary injunction would serve

the public interest.  The Court concluded that all four factors weighed in favor of issuing a

preliminary injunction.  *Id.* at 31.

21.     On the issue of likelihood of success, the Court concluded that Invenergy had established

a fair likelihood of success that USTR violated the notice-and-comment rulemaking

requirements of the Administrative Procedure Act.  *Id.* at 32.  The Court also concluded that

USTR's decision to withdraw the bifacial module exclusion was likely arbitrary and capricious.

*Id.* at 44-46.

<u>*USTR's January Withdrawal Procedures and April Notice*</u>

22.     USTR published a notice in the Federal Register on January 27, 2020 establishing a

procedure to consider the withdrawal of the bifacial module exclusion and inviting comments as

to whether USTR "should maintain the exclusion of bifacial solar panels from the safeguard

measure, withdraw the exclusion, or take some other action within his authority with respect to

this exclusion."  *See Procedures To Consider Retention or Withdrawal of the Exclusion of*

*Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4756, 4756

(USTR Jan. 27, 2020) (hereinafter, "January Withdrawal Procedures").  Although USTR's

original procedure for considering exclusions allowed 30 days for initial comments and an

additional 31 days for response comments, *Procedures To Consider Additional Requests for*

*Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. at

6670, USTR required initial comments to be submitted within 21 days of publication of the

January Withdrawal Procedures and any responses to the comments of other parties to be

submitted within 10 days of the deadline for initial comments.  85 Fed. Reg. at 4756.

23.     USTR issued the January Withdrawal Procedures without any order by the Court

vacating the October Withdrawal or remanding the dispute regarding the withdrawal of the

bifacial module exclusion to USTR.  USTR, however, stated in the January Withdrawal Procedures that "{i}f the U.S. Trade Representative determines after receipt of comments pursuant to this notice that it would be appropriate to withdraw the bifacial module exclusion or take some other action with respect to this exclusion, the U.S. Trade Representative will request that the Court lift the injunction" against withdrawing the exclusion.  *Id.*

24.     In the January Withdrawal Procedures, USTR explained that it was "concerned that: (1) The bifacial solar panel exclusion will result in significant increases in imports of bifacial solar panels and therefore will undermine the objectives of the safeguard measure; (2) the precise definition of bifacial solar panels excluded from the safeguard measure may require clarification; and (3) the exclusion in the June 2019 notice is broader than the category of products described in the exclusion requests submitted as of March 16, 2018."  *Id.*  To guide its consideration of the bifacial module exclusion, USTR specifically requested information or views, "with sufficient evidence to support a particular position," regarding ten discrete topics, along with "{a}ny other information or data that interested persons consider relevant to the U.S. Trade Representative's evaluation."  *Id.* at 4756-57.

25.     SEIA and several of its members timely submitted comments and information in support of maintaining the bifacial module exclusion and suggested certain modifications to the exclusion that would address the main concerns that had been raised regarding the impact on domestic CSPV module manufacturers of excluding all bifacial CSPV modules.  SEIA and its members argued in the alternative that if USTR did not consider a complete exclusion to be appropriate, even with SEIA's proposed modifications, then USTR should impose a tariff rate quota on bifacial modules that would allow a certain amount of bifacial modules suitable for the utility-scale segment to be imported free of safeguard duties.  SEIA further argued that the

amount of bifacial modules that should be allowed to enter duty free should be set at 8 gigawatts. SEIA and several of its members timely filed responses to comments that had been submitted opposing the continued exclusion of bifacial modules.

26.     Following this comment process, USTR published a determination in the Federal Register on April 17, 2020 again stating that the bifacial module exclusion should be completely withdrawn. *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (USTR Apr. 17, 2020) (hereinafter, the "April Notice").

27.     Despite seeking comments on ten specific items and any other information that interested parties considered relevant to USTR's determination, the April Notice contained just nine numbered findings and a general conclusion that the bifacial module exclusion was hindering the domestic industry's adjustment to import competition by disincentivizing U.S. production of bifacial solar panels, interfering with U.S. producers' ability to increase sales into the utility segment, and creating a depressive effect on prices for monofacial solar panels. *See id.* at 21,498-99.  The April Notice also referenced a report issued by the ITC after the close of the comment period established in the January Withdrawal Procedures regarding the potential impact on the domestic solar industry of increasing the tariff rate quota for CSPV cells and stated that the ITC's report supported its decision to withdraw the exclusion. *See id.*  The April Notice failed to cite to or discuss any individual submission that was placed on the record by interested parties, let alone any specific evidence contained in those comments.  Many of the arguments and proposals raised by SEIA and its members were left completely unaddressed.

28.     The April Notice additionally stated that "the U.S. Trade Representative will request that the U.S. Court of International Trade lift the order preliminarily enjoining the withdrawal from

entering into effect." *Id.* at 21,497. The April Notice went on to explain that "{w}ithdrawal of the exclusion for bifacial solar panels from application of the safeguard measure will apply to imported panels if the Court lifts the preliminary injunction but in no case earlier than May 18, 2020." *Id.*

*Further Litigation Following April Notice*

29. On April 16, 2020, the day before the April Notice was actually published in the Federal Register, Defendants filed a motion with the Court to dissolve the preliminary injunction. ECF No. 156. According to Defendants, USTR had invited notice and comment and issued the April Notice "{i}n response to the order" enjoining Defendants from withdrawing the bifacial module exclusion. *Id.* at 1. Defendants further claimed that the April Notice supposedly "cured" the deficiencies that the Court had identified with USTR's withdrawal of the bifacial exclusion. *Id.* at 1, 7.

30. Plaintiffs, including SEIA, filed their first motions to supplement their complaints to include the April Notice on May 4, 2020. ECF Nos. 160, 161, 162. Plaintiffs filed responses to Defendants' first motion to dissolve the preliminary injunction on May 7, 2020. ECF Nos. 163, 164, 166.

31. On May 27, 2020, the Court issued an opinion denying Defendants' motion to dissolve the preliminary injunction and granting Plaintiffs' motions to supplemental their complaints. *Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347 (2020), ECF No. 185. The Court held that Defendants had not shown that the October Notice was moot, explained that the Court did not have the authority to vacate the October Notice without a decision on the merits, and found that Defendants had not proved sufficiently changed circumstances to dissolve the

preliminary injunction. *See generally id.* The Court accordingly declined to lift the preliminary injunction.

32.     In response to the Court's opinion, USTR published a notice on June 12, 2020 purporting to rescind the October Notice. *Rescission of the First Withdrawal of the Bifacial Solar Panels Exclusion From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 35,975 (USTR June 12, 2020). On the same day, Defendants filed a renewed motion to dissolve the preliminary injunction. ECF No. 198. Plaintiffs, including SEIA, filed a response in opposition to Defendants' renewed motion and a cross-motion to modify the preliminary injunction to explicitly cover the April Notice. ECF No. 205.

33.     The Court issued an opinion on October 15, 2020, denying Defendants' second motion to dissolve the preliminary injunction and granting Plaintiffs' cross-motion to modify the preliminary injunction to explicitly cover the April Notice. ECF No. 252. The Court held that the April Notice was likely arbitrary and capricious. The Court further held on the merits that the October Notice violated the APA for the reasons stated in the December 5, 2019 opinion accompanying the original preliminary injunction order. The Court therefore vacated the October Notice.

*Presidential Modification Proclamation*

34.     Prior to the issuance of the Court's October 15 decision, on October 10, 2020, the President issued a proclamation that again withdraws the bifacial module exclusion, effective October 25, 2020. *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639, 65,640-42 (Oct. 16, 2020) ("Modification Proclamation"). The Modification Proclamation also increases Section 201 safeguard tariffs on imported CSPV

products, including bifacial CSPV modules, in year four of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) from 15% to 18%. *Id.* at 65,640, 65,642. The Modification Proclamation modified the HTS to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV modules and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure. *Id.* at 65,640-42. The Modification Proclamation was published in the Federal Register on October 16, 2020.

35. As authority for the action taken in the Modification Proclamation, the President cited 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification or termination on such basis, that the domestic industry has made a positive adjustment to import competition." The President asserted that he had received a petition from the domestic industry, and he found the domestic industry "has begun to make positive adjustments to import competition." 85 Fed. Reg. at 65,640.

**Impact of Withdrawing the Exclusion for Bifacial CSPV Modules**

36. The withdrawal of the exclusion for bifacial CSPV modules will cause economic and business reputational harm to SEIA members that import such products into the United States and will be directly responsible for paying the increased duties. *See id.* at ¶ 11. The withdrawal will also cause economic and business reputational harm to SEIA members such as Invenergy that purchase bifacial CSPV products for solar projects but are not the importer of record, because of the resulting increased price for bifacial CSPV products. *See id.* The exclusion withdrawal will also adversely impact the development of solar energy in the United States by raising the cost of solar projects and solar energy, contrary to the interests of SEIA and its

13

members.  *See id.* at ¶ 12.  Domestic manufactures do not produce bifacial products at commercial volume suitable for utility-scale projects and can supply only a fraction of the projected demand for utility-scale solar projects overall.  *Id.*

37.     SEIA brings this complaint seeking a declaration that USTR's and the President's withdrawal of the exclusion for bifacial CSPV products from the solar safeguard action was unlawful and to enjoin application of the safeguard measures to the bifacial CSPV products that were excluded by USTR on June 13, 2019.  SEIA also seeks a declaration that the President's increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is unlawful and to enjoin application of the 18% duty rate in year four of the safeguard measure.

## JURISDICTION

38.     This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(2)-(4), the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, and 28 U.S.C. § 2631(i).

39.     Section 1581 of title 28 provides in relevant part that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .  (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(2)-(4).

40.     The tariff rate quota on solar cells and the additional tariff imposed on solar modules, including those ordered to be re-imposed on bifacial solar modules by USTR, were imposed pursuant to Section 201 of the Trade Act of 1974.  Chapter 1 of title II of the Trade Act of 1974,

which includes Section 201, is a law "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and "quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." This action thus arises out of a law described in 28 U.S.C. § 1581(i)(2) and (3).

41.     SEIA challenges the withdrawal of the exclusion for bifacial CSPV products from the Section 201 trade action, and seeks to enjoin the collection of the safeguard tariffs on imports of bifacial modules. SEIA also seeks a declaration that the President's increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is unlawful and an injunction prohibiting the application of the 18% duty rate in year four of the CSPV safeguard measure. SEIA's claims thus also arise out of the "administration and enforcement with respect to matters referred to in paragraphs (1)-(3)" of 28 U.S.C. § 1581(i).

## STANDING

42.     Section 2631(i) of title 28 provides that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." 28 U.S.C. § 2631(i). The Administrative Procedure Act similarly provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

43.     SEIA has standing to bring this suit on behalf of its members, which include Plaintiff Invenergy. "{A}n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to

protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Biotech. Indus. v. District of Columbia*, 496 F.3d 1362, 1369 (Fed. Cir. 2007) (quoting *United Food & Commercial Workers v. Brown Group*, 517 U.S. 544, 553 (1996)). Members of SEIA, including Invenergy, would have standing to sue in their own right and are adversely affected or aggrieved by agency action. SEIA's members include importers, purchasers, and users of the imported bifacial products subject to the safeguard action. The increased tariffs on bifacial products will increase their cost of doing business, reduce their profits and business opportunities, and generally impede the development of solar power in the United States. SEIA's organizational interests are in growing solar energy in the United States, and SEIA thus is opposed to the additional tariffs, which raise costs and reduce the competitiveness of solar energy. Finally, although Invenergy is a plaintiff in this action, the legal claims raised and the relief requested below do not "require" the participation of individual SEIA members as plaintiffs in the lawsuit.

44.     Similarly, SEIA and its members are also "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). SEIA's members include importers, purchasers, and users of the imported bifacial products subject to the safeguard action, and thus their interests are, at minimum, "arguably within the zone of interests to be regulated." Moreover, in determining what action, if any, to take after the ITC finds serious injury or threat thereof, the President is directed to weigh whether the action will "provide greater economic and social benefits than costs." Trade Act § 203(a)(1), 19 U.S.C. § 2253(a)(1). The statute specifically directs the President to consider the "effect of the implementation of actions under this section on consumers and on competition in domestic markets for articles." Trade Act § 203(a)(2)(F)(ii),

19 U.S.C. § 2253(a)(2)(F)(ii). Thus, SEIA and its members are also "arguably within the zone of interests to be protected . . . by the statute."

## TIMELINESS OF THIS ACTION

45.    An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues.

46.    The October Notice regarding the withdrawal of the bifacial CSPV product exclusion was published in the Federal Register on October 9, 2019. This action was filed well within the two-year period from the date of the challenged determination.

47.    The April Notice regarding the withdrawal of the bifacial CSPV product exclusion was published in the Federal Register on April 17, 2020. Motion for leave to file and serve the Supplemental Complaint was filed on May 4, 2020, also well within the two-year period for commencing an action.

48.    The Modification Proclamation was published in the Federal Register on October 16, 2020. Motion for leave to file this Second Supplemental Complaint was filed on October 19, 2020, within the two-year period for commencing an action.

## STATEMENT OF CLAIMS

49.    SEIA seeks a declaratory judgment that the withdrawal of the bifacial module exclusion by USTR and the President was unlawful and an injunction against the United States, USTR, and U.S. Customs and Border Protection from enforcing any safeguard action related to CSPV products against the bifacial solar products that had been excluded from the safeguard action by USTR's June 13, 2019 Federal Register notice.

50.    SEIA also seeks a declaratory judgment that the President's increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is unlawful and to enjoin application

of the 18% duty rate by the United States and U.S. Customer and Border Protection in year four of the safeguard measure.

51.     In the following respects, USTR's and the President's withdrawal of the bifacial CSPV product exclusion and the President's increase of the Section 201 duty rate on CSPV products during the fourth year of the CSPV safeguard measure were not in accordance with law.

## COUNT ONE

52.     Paragraphs 1 through 51 of this Complaint are hereby incorporated by reference.

53.     USTR's exclusion of bifacial CSPV panels from the safeguard action on June 13, 2019, which changed the legal requirements for importing bifacial CSPV panels and was adopted after notice and comment, is a substantive "rule" for purposes of the Administrative Procedure Act ("APA").  5 U.S.C. § 551(4).

54.     In order to withdraw or otherwise modify this rule, USTR was required to go through the notice-and-comment rulemaking producers of the APA, including, but not limited to, publishing the proposed withdrawal or modification in the Federal Register, providing a transparent comment process addressing the proposed withdrawal or modification, and publishing the final amended rule at least 30 days before its effective date.  *See* 5 U.S.C. § 553.  USTR failed to follow these requirements.

55.     USTR's October Notice directing the withdrawal of the exclusion for bifacial CSPV panels from the safeguard action was adopted in violation of the APA's procedural requirements and must be set aside under 5 U.S.C. § 706(2)(D).

56.     Similarly, because USTR failed to provide interested parties an adequate opportunity to comment regarding the action USTR should take with respect to the bifacial module exclusion, USTR's April Notice confirming USTR's prior decision to withdraw the bifacial module

exclusion was adopted in violation of the APA's procedural requirements and must be set aside under 5 U.S.C. § 706(2)(D).

## COUNT TWO

57.     Paragraphs 1 through 51 of this Complaint are hereby incorporated by reference.

58.     In the October 9, 2019 Federal Register notice withdrawing the bifacial CSPV product exclusion, USTR failed to explain the rationale behind its conclusion that the exclusion undermined the safeguard measure and should be withdrawn.  Although USTR referred obliquely to "newly submitted information" from "members of the public and other sources," USTR failed to identify the source or substance of the information upon which it relied.

59.     In the April Notice again concluding that the bifacial CSPV module exclusion should be withdrawn, USTR failed to cite to specific information underlying its factual findings, wholly ignored substantial comments submitted by interested parties bearing on its determination, and generally failed to provide a reasoned explanation for its conclusion that the exclusion undermined the safeguard measure and should be withdrawn.

60.     By failing to adequately explain the reasoning behind the withdrawal of the bifacial CSPV product exclusion, identify the facts upon which its conclusions were based, and/or address substantial comments bearing on its determination, USTR's determination to withdraw the bifacial CSPV product exclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not otherwise in accordance with law" and must be set aside under 5 U.S.C. § 706(2)(A).

## COUNT THREE

61.     Paragraphs 1 through 51 of this Complaint are hereby incorporated by reference.

62.     Section 203 of the Trade Act of 1974, 19 U.S.C. § 2253(g), requires the President to establish regulations for the efficient and fair administration of safeguard actions taken for purposes of providing import relief.

63.     The withdrawal of the exclusion for bifacial CSPV panels was not authorized by Presidential Proclamation 9693, which authorized USTR to exclude certain products from the safeguard action, but did not authorize USTR to amend the safeguard action to cover products after those products had been excluded.

64.     The withdrawal of the exclusion for bifacial CSPV panels was also inconsistent with the exclusion process established by USTR, which provided for notice and comment and did not make any reference to the possibility of exclusions being later modified or withdrawn.

65.     USTR's failure to follow the procedures laid out by the President and USTR itself in withdrawing the exclusion for bifacial CSPV panels was unlawful and must be set aside under 5 U.S.C. § 706(2)(A), (C) and (D).

## COUNT FOUR

66.     Paragraphs 1 through 51 of this Complaint are hereby incorporated by reference.

67.     Section 204 of the Trade Act of 1974, 19 U.S.C. § 2254(b), sets procedural requirements and requires certain findings to be made by the President before a safeguard action can be modified. Section 203 of the Trade Act of 1974, 19 U.S.C. § 2253(e)(7), does not permit a safeguard measure to be re-imposed on an article for a period of two years after the prior measure terminated (here, in June 2019, when the exclusion for bifacial CSPV panels was granted).

68.     The exclusion of bifacial CSPV panels from the safeguard action was issued pursuant to the process specifically authorized by the President's original safeguard action. USTR's

withdrawal of that exclusion, however, was not authorized in the original safeguard action, and thus it effectively amended the safeguard action.

69.     In withdrawing the bifacial CSPV product exclusion, USTR did not follow, claim to rely on, or even cite to the statutory provisions governing the modification of safeguard actions in Section 204 of the Trade Act.

70.     USTR's withdrawal of the bifacial CSPV product exclusion was in violation of the procedural requirements and substantive restrictions of Section 204 of the Trade Act governing modifications of safeguard actions.  USTR's withdrawal of the exclusion therefore must be set aside as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(C) and having been issued "without observance of procedure required by law" under 5 U.S.C. § 706(D).

71.     A presidential action may be set aside if the President's action involves "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority."  *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *Motion Systems Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (stating that court may consider whether the President has violated an explicit statutory mandate).  The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

72.     The changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—the withdrawal of the bifacial module exclusion and the change in the duty rate in year four of the measure—were made in violation of the procedural requirements and substantive

restrictions of Section 204 of the Trade Act governing modifications of safeguard actions. The Modification Proclamation must therefore be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

73.     The withdrawal of the exclusion for bifacial CSPV modules results in the imposition of safeguard duties on those modules less than two years after a safeguard measure was terminated with respect to those modules, in violation of Section 203(e)(7) of the Trade Act. USTR's withdrawal of the exclusion therefore must be set aside as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(C) and having been issued "without observance of procedure required by law" under 5 U.S.C. § 706(D). Similarly, the Modification Proclamation's withdrawal of the exclusion must be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, SEIA respectfully requests that this Court:

74.     Issue a declaratory judgment that USTR's withdrawal of the exclusion for bifacial CSPV panels from the solar safeguards action, as originally reflected in the October Notice and as restated in the April Notice, was unlawful and is therefore null and void;

75.     Issue a declaratory judgment that the President's withdrawal of the exclusion for bifacial CSPV panels from the solar safeguards action was unlawful and is therefore null and void;

76.     Permanently and preliminarily enjoining Defendants, their agencies, officers, employees and agents from enforcing the withdrawal of the bifacial CSPV product exclusion;

77.     Permanently and preliminarily enjoining USTR from modifying the Harmonized Tariff Schedule of the United States ("HTSUS") to place Section 201 safeguard duties on bifacial CSPV panels;

78.     Issue a declaratory judgment that the President's increase of the applicable Section 201 safeguard duty rate on CSPV products during the fourth year of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) was unlawful and is therefore null and void;

79.     Permanently and preliminarily enjoining U.S. Customs and Border Protection from enforcing or making effective any modifications to the HTSUS pursuant to the October Notice, the April Notice, or the Modification Proclamation; and

80.     Provide such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 721-4750
mnicely@akingump.com

*Counsel to SEIA*

Dated: October 19, 2020

# EXHIBIT 1

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INVENERGY RENEWABLES LLC,       )<br>           )<br>      Plaintiff,      )<br>           )<br>     v.            )<br>           )<br>UNITED STATES, OFFICE OF THE UNITED  )<br>STATES TRADE REPRESENTATIVE,      )<br>UNITED STATES TRADE REPRESENTATIVE )<br>ROBERT E. LIGHTHIZER, U.S. CUSTOMS  )<br>AND BORDER PROTECTION, and ACTING   )<br>COMMISSIONER MARK A. MORGRAN,    )<br>           )<br>      Defendants.     )| Court No. 19-00192 |

## DECLARATION OF JOHN P. SMIRNOW

I, John P. Smirnow, General Counsel and Vice President of Market Strategy for the Solar Energy Industries Association ("SEIA"), hereby declare as follows:

1. I have been the General Counsel and Vice President of Market Strategy for SEIA since September 4, 2018. From 2010 to 2015, I served as SEIA's Vice President of Trade and Competitiveness. In addition, nearly all of my professional work over the past decade has focused on issues related to the solar industry.

2. The statements in this declaration are based on my knowledge of SEIA and its members.

3. SEIA is a 501(c)(6) non-profit trade association organized under the laws of the District of Columbia and headquartered in Washington, DC. SEIA is the national trade association for the U.S. solar industry and has more than 850 member companies, including Plaintiff Invenergy LLC ("Invenergy"). SEIA members include companies throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers.

4.    SEIA's organizational interests are in growing solar energy in the United States and its mission is to build a strong solar industry to power America.

5.    SEIA is opposed to trade restrictions on solar products that raise costs for solar energy and reduce the competitiveness of solar energy in the United States. In the original Section 201 safeguard investigation, SEIA was an active participant in opposition to the safeguard action.

6.    Since February 7, 2018, imports of certain crystalline silicon photovoltaic ("CSPV") cells and modules have been subject to a safeguard action in the form of a tariff-rate quote for CSPV cells and an increase in duties on CSPV modules. In proclaiming the safeguard action on CSPV products, President Trump authorized the Office of the United States Trade Representative ("USTR") to establish procedures for excluding particular products from the safeguard action. Attachment A to this declaration is a copy of Presidential Proclamation 9693 published on January 25, 2018 imposing the safeguard action and authorizing the establishment of an exclusion process.

7.    On February 14, 2018, USTR published a notice in the Federal Register inviting parties to submit exclusion requests and for parties to comment on submitted exclusion requests. Attachment B to this declaration is the Federal Register notice establishing and describing the exclusion process. Several SEIA members participated in the development of a request submitted by Pine Gate Renewables LLC for the exclusion of bifacial modules from the solar safeguard tariffs. SEIA also advocated in support of the bifacial module exclusion request before the Trump Administration and Members of Congress.

8.    Bifacial cells and modules are CSPV products that are able to produce solar power from both sides of the cell or module, making them more efficient than standard monofacial cells and

modules, which produce power from only a single side. On June 13, 2019, USTR published an exclusion for bifacial cells and modules.

9.      On October 4, 2019, USTR decided to withdraw the exclusion for bifacial cells and modules effective October 28, 2019. USTR's withdrawal of the exclusion was published in the Federal Register on October 9, 2019 and is included as Attachment C to this declaration. Before withdrawing the exclusion, USTR had never published a notice indicating that it was considering modifying or withdrawing the exclusion, and there was no formal mechanism for parties to comment on such a modification or withdrawal.

10.     The withdrawal of the exclusion will result in the re-imposition of safeguard duties on bifacial CSPV products. Currently, CSPV modules covered by the safeguard action are subject to an additional 25 percent ad valorem duty.

11.     The re-imposition of tariffs will cause serious harm to SEIA and its members. SEIA members include importers of bifacial modules and the largest U.S. purchasers of these products, including solar developers like Invenergy as well engineering, procurement and construction firms who are not the importer of record. These members face a significant increase in their costs, reducing their profitability and limiting their business opportunities. Moreover, the re-imposition of duties has caused SEIA members to seek to re-negotiate previously signed contracts, which places their business reputations at risk.

12.     In addition to the harms to specific SEIA members, the tariffs generally will impede the growth of solar energy in the United States. Domestic manufactures do not produce bifacial products at commercial volume suitable for utility-scale projects and can supply only a fraction of the projected demand for utility-scale solar projects overall. Tariffs on imported bifacial cells

and modules will make solar projects, and thus solar energy, more expensive, which is contrary to the aims of SEIA as an organization.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23 day of October 2019.

John P. Smirnow

# ATTACHMENT A

# Presidential Documents

Proclamation 9693 of January 23, 2018

## To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes

### By the President of the United States of America

### A Proclamation

1. On November 13, 2017, the United States International Trade Commission (ITC) transmitted to the President a report (the "ITC Report") on its investigation under section 202 of the Trade Act of 1974, as amended (the "Trade Act") (19 U.S.C. 2252), with respect to imports of certain crystalline silicon photovoltaic (CSPV) cells, whether or not partially or fully assembled into other products (including, but not limited to, modules, laminates, panels, and building-integrated materials) ("CSPV products"). These products exclude certain products described in the ITC Notice of Institution, 82 *FR* 25331 (June 1, 2017), and listed in subdivision (c)(ii) of Note 18 in Annex I to this proclamation.

2. The ITC reached an affirmative determination under section 202(b) of the Trade Act (19 U.S.C. 2252(b)) that CSPV products are being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article.

3. Pursuant to section 311(a) of the North American Free Trade Agreement Implementation Act (the "NAFTA Implementation Act") (19 U.S.C. 3371(a)), the ITC made findings as to whether imports from Mexico and Canada, considered individually, account for a substantial share of total imports and contribute importantly to the serious injury, or threat thereof, caused by imports. The ITC made affirmative findings of contribution to injury with respect to imports of CSPV products from Mexico but made negative findings with respect to imports of CSPV products from Canada.

4. On November 27, 2017, the United States Trade Representative (USTR) requested additional information from the ITC under section 203(a)(5) of the Trade Act (19 U.S.C. 2253(a)(5)). On December 27, 2017, the ITC provided a response that identified unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury (the "supplemental report").

5. The ITC commissioners transmitted to the President their individual recommendations with respect to the actions that each of them considered would address the serious injury, or threat of serious injury, to the domestic industry and be most effective in facilitating the efforts of the industry to make a positive adjustment to import competition. The ITC did not recommend an action within the meaning of section 202(e) of the Trade Act (19 U.S.C. 2252(e)).

6. Pursuant to section 203 of the Trade Act (19 U.S.C. 2253), and after taking into account the considerations specified in section 203(a)(2) of the Trade Act (19 U.S.C. 2253(a)(2)), the ITC Report, and the supplemental report, I have determined to implement action of a type described in section 203(a)(3) of the Trade Act (19 U.S.C. 2252(a)(3)) (a "safeguard measure"), with regard to the following CSPV products:

(a) solar cells, whether or not assembled into modules or made up into panels provided for in subheading 8541.40.60 in Annex I to this proclamation;

(b) parts or subassemblies of solar cells provided for in subheadings 8501.31.80, 8501.61.00, and 8507.20.80 in Annex I to this proclamation;

(c) inverters or batteries with CSPV cells attached provided for in subheadings 8501.61.00 and 8507.20.80 in Annex I to this proclamation; and

(d) DC generators with CSPV cells attached provided for in subheading 8501.31.80 in Annex I to this proclamation.

7. Pursuant to section 312(a) of the NAFTA Implementation Act (19 U.S.C. 3372(a)), I have determined after considering the ITC Report that imports of CSPV products from each of Mexico and Canada, considered individually, account for a substantial share of total imports and contribute importantly to the serious injury or threat of serious injury found by the ITC.

8. Pursuant to section 203 of the Trade Act, the action I have determined to take shall be a safeguard measure in the form of:

(a) a tariff-rate quota on imports of solar cells not partially or fully assembled into other products as described in paragraph 6 of this proclamation, imposed for a period of 4 years, with unchanging within-quota quantities and annual reductions in the rates of duty applicable to goods entered in excess of those quantities in the second, third, and fourth years, as provided in Annex I to this proclamation; and

(b) an increase in duties on imports of modules, imposed for a period of 4 years, with annual reductions in the rates of duty in the second, third, and fourth years, as provided in Annex I to this proclamation.

I have determined to exclude from this action the products listed in subdivision (c)(ii) and (c)(iii) of Note 18 in Annex I to this proclamation.

9. This safeguard measure shall apply to imports from all countries, except as provided in paragraph 10 of this proclamation.

10. This safeguard measure shall not apply to imports of any product described in paragraph 6 of this proclamation of a developing country that is a Member of the World Trade Organization (WTO), as listed in subdivision (b) of Note 18 in Annex I to this proclamation, as long as such a country's share of total imports of the product, based on imports during a recent representative period, does not exceed 3 percent, provided that imports that are the product of all such countries with less than 3 percent import share collectively account for not more than 9 percent of total imports of the product. If I determine that a surge in imports of a product described in paragraph 6 of this proclamation of a developing country that is a WTO Member results in imports of that product from that developing country exceeding either of the thresholds described in this paragraph, the safeguard measure shall be modified to apply to such product from such country.

11. The in-quota quantity in each year under the tariff-rate quota described in paragraph 8 of this proclamation shall be allocated among all countries except those countries the products of which are excluded from such tariff-rate quota pursuant to paragraph 10 of this proclamation.

12. Pursuant to section 203(a)(1)(A) of the Trade Act (19 U.S.C. 2253(a)(1)(A)), I have determined that this safeguard measure will facilitate efforts by the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs. If I determine that further action is appropriate and feasible to facilitate efforts by the domestic industry to make a positive adjustment to import competition and to provide greater economic and social benefits than costs, or if I determine that the conditions under section 204(b)(1) of the Trade Act (19 U.S.C. 2254(b)(1)) are met, I shall reduce, modify, or terminate the action established in this proclamation accordingly. In addition, if I determine within 30 days of the date of this proclamation, as a result of consultations between the United States and other WTO Members pursuant to Article

12.3 of the WTO Agreement on Safeguards, that it is necessary to reduce, modify, or terminate the safeguard measure, I shall proclaim the corresponding reduction, modification, or termination of the safeguard measure within 40 days.

13. Section 502 of the Trade Act (19 U.S.C. 2462) authorizes the President to designate countries as beneficiary developing countries for purposes of the Generalized System of Preferences (GSP).

14. Proclamation 9687 of December 22, 2017, ended the suspension of Argentina's designation as a GSP beneficiary developing country. That proclamation made corresponding modifications to the Harmonized Tariff Schedule of the United States (HTS). Those modifications included technical errors, and I have determined that modifications to the HTS are necessary to correct them.

15. Section 604 of the Trade Act (19 U.S.C. 2483), authorizes the President to embody in the HTS the substance of the relevant provisions of that Act, and of other acts affecting import treatment, and actions thereunder, including the removal, modification, continuance, or imposition of any rate of duty or other import restriction.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States of America, acting under the authority vested in me by the Constitution and the laws of the United States, including but not limited to sections 203, 502, and 604 of the Trade Act, and section 301 of title 3, United States Code, do proclaim that:

(1) In order to establish increases in duty and a tariff-rate quota on imports of the CSPV products described in paragraph 6 of this proclamation (other than excluded products), subchapter III of chapter 99 of the HTS is modified as provided in Annex I to this proclamation. Any merchandise subject to the safeguard measure that is admitted into U.S. foreign trade zones on or after 12:01 a.m. eastern standard time on February 7, 2018, must be admitted as ''privileged foreign status'' as defined in 19 CFR 146.41, and will be subject upon entry for consumption to any quantitative restrictions or tariffs related to the classification under the applicable HTS subheading.

(2) Except as provided in clause (3) below, imports of CSPV products of WTO Member developing countries, as listed in subdivision (b) of Note 18 in Annex I to this proclamation, shall be excluded from the safeguard measure established in this proclamation. Imports of solar cells of those countries that are not partially or fully assembled into other products shall not be counted toward the tariff-rate quota limits that trigger the over-quota rates of duties.

(3) If, after the safeguard measure established in this proclamation takes effect, the USTR determines that:

(a) the share of total imports of the product of a country listed in subdivision (b) of Note 18 in Annex I to this proclamation exceeds 3 percent,

(b) imports of the product from all listed countries with less than 3 percent import share collectively account for more than 9 percent of total imports of the product, or

(c) a country listed in subdivision (b) of Note 18 in Annex I to this proclamation is no longer a developing country for purposes of this proclamation;

the USTR is authorized, upon publication of a notice in the *Federal Register,* to revise subdivision (b) of Note 18 in Annex I to this proclamation to remove the relevant country from the list or suspend operation of that subdivision, as appropriate.

(4) Within 30 days after the date of this proclamation, the USTR shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation. If the USTR determines, after consultation with the Secretaries

of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register,* to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure described in paragraph 8 of this proclamation.

(5) In order to make technical corrections necessary to reflect the end of the suspension of Argentina's designation as a GSP beneficiary developing country, the HTS is modified as set forth in Annex II to this proclamation.

(6) Any provision of previous proclamations and Executive Orders that is inconsistent with the actions taken in this proclamation is superseded to the extent of such inconsistency.

(7) Except as provided for in clause (8) of this proclamation, the modifications to the HTS made by this proclamation, including Annex I, shall be effective with respect to goods entered, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 7, 2018, and shall continue in effect as provided in Annex I to this proclamation, unless such actions are earlier expressly reduced, modified, or terminated. Any modifications to the HTS made pursuant to clause (3) or (4) of this proclamation shall take effect as indicated in a *Federal Register* notice published in accordance with those clauses. One year from the termination of the safeguard measure established in this proclamation, the U.S. note and tariff provisions established in Annex I to this proclamation shall be deleted from the HTS.

(8) The modifications to the HTS set forth in Annex II to this proclamation shall be effective with respect to the articles entered, or withdrawn from warehouse for consumption, on or after the dates set forth in the relevant sections of Annex II.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-third day of January, in the year of our Lord two thousand eighteen, and of the Independence of the United States of America the two hundred and forty-second.

# ANNEX I

## MODIFICATIONS TO CHAPTER 99 OF THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

Effective with respect to goods entered, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 7, 2018, and through 11:59 p.m. eastern standard time on February 6, 2022, subchapter III of chapter 99 of the Harmonized Tariff Schedule of the United States (HTS) is hereby modified by inserting in numerical sequence the following new U.S. note and provisions:

"18. (a)   Subheadings 9903.45.21 through 9903.45.25 and any superior texts thereto establish temporary modifications applicable to entries of goods described herein and classified in the enumerated provisions of chapter 85 of the tariff schedule. Whenever any such subheading specifies that the annual aggregate quantity of such goods shall not exceed the quantity established under the terms of this note, when such goods are not the product of a country enumerated in subdivision (b) of this note, any entry of such goods that is in excess of the quantity specified for such provision shall be entered under the over-quota subheading set forth herein for such goods. All such goods shall be subject to duty as provided herein; and such duties shall be cumulative and imposed in addition to the rate of duty established for any such goods in chapter 85 of the tariff schedule, except as may be specified for duties imposed under the Rates of Duty 2 column.

(b)   For the purposes of this note and the application of subheadings 9903.45.21 through 9903.45.25, inclusive, the following developing countries that are members of the World Trade Organization shall not be subject to the rates of duty and tariff-rate quotas provided for therein:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belize, Benin, Bhutan, Bolivia, Bosnia and Herzegovina, Botswana, Brazil, Burkina Faso, Burma, Burundi, Cambodia, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Congo (Brazzaville), Congo (Kinshasa), Côte d'Ivoire, Djibouti, Dominica, Ecuador, Egypt, Eritrea, Ethiopia, Fiji, Gabon, The Gambia, Georgia, Ghana, Grenada, Guinea, Guinea-Bissau, Guyana, Haiti, India, Indonesia, Iraq, Jamaica, Jordan, Kazakhstan, Kenya, Kiribati, Kosovo, Kyrgyzstan, Lebanon, Lesotho, Liberia, Macedonia, Madagascar, Malawi, Maldives, Mali, Mauritania, Mauritius, Moldova, Mongolia, Montenegro, Mozambique, Namibia, Nepal, Niger, Nigeria, Pakistan, Papua New Guinea, Paraguay, Rwanda, Saint Lucia, Saint Vincent and the Grenadines, Samoa, Sao Tomé and Principe, Senegal, Serbia, Sierra Leone, Solomon Island, Somalia, South Africa, South Sudan, Sri Lanka, Suriname, Swaziland, Tanzania, Timor-Leste, Togo, Tonga, Tunisia, Turkey, Tuvalu, Uganda, Ukraine, Uzbekistan, Vanuatu, Yemen (Republic of), Zambia and Zimbabwe.

(c)   (i)   For the purposes of subheadings 9903.45.21 and 9903.45.22, except as otherwise provided herein, the term "crystalline silicon photovoltaic cells" ("CSPV cells") means crystalline silicon photovoltaic cells of a thickness equal to or greater than 20 micrometers, having a p/n junction (or variant thereof)

Annexes, page 2

formed by any means, whether or not the cell (or subassemblies thereof provided for in subheading 8541.40.60 and imported under statistical reporting number 8541.40.6030) has undergone other processing, including, but not limited to, cleaning, etching, coating, and/or addition of materials (including, but not limited to, metallization and conductor patterns) to collect and forward the electricity that is generated by the cell. Such cells include photovoltaic cells that contain crystalline silicon in addition to other photovoltaic materials. This includes, but is not limited to, passivated emitter rear contact cells, heterojunction with intrinsic thin-layer cells, and other so-called hybrid cells. Subheadings 9903.45.21 and 9903.45.22 include goods presented in cell form and which at the time of importation are not presented assembled into circuits, laminates or modules or made up into panels.

(ii) Subheadings 9903.45.21 and 9903.45.22 shall not cover—

(1) thin film photovoltaic products produced from amorphous silicon ("a-Si"), cadmium telluride ("CdTe"), or copper indium gallium selenide ("CIGS");

(2) CSPV cells, not exceeding 10,000 $mm^2$ in surface area, that are permanently integrated into a consumer good whose primary function is other than power generation and that consumes the electricity generated by the integrated CSPV cell. Where more than one CSPV cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all CSPV cells that are integrated into the consumer good; and

(3) CSPV cells, whether or not partially or fully assembled into other products, if such CSPV cells were manufactured in the United States.

(iii) Subheadings 9903.45.21 and 9903.45.22 shall likewise not cover the following goods, whether or not separate statistical reporting numbers therefor may appear in chapters 1 through 97 of the tariff schedule:

(1) 10 to 60 watt, inclusive, rectangular solar panels, where the panels have the following characteristics: (A) length of 250 mm or more but not over 482 mm or width of 400 mm or more but not over 635 mm, and (B) surface area of 1000 $cm^2$ or more but not over 3,061 $cm^2$), provided that no such panel with those characteristics shall contain an internal battery or external computer peripheral ports at the time of entry;

(2) 1 watt solar panels incorporated into nightlights that use rechargeable batteries and have the following dimensions: 58 mm or more but not over 64 mm by 126 mm or more but not over 140 mm;

(3) 2 watt solar panels incorporated into daylight dimmers, that may use rechargeable batteries, such panels with the following dimensions:

Annexes, page 3

75 mm or more but not over 82 mm by 139 mm or more but not over 143 mm;

(4) off-grid and portable CSPV panels, whether in a foldable case or in rigid form containing a glass cover, where the panels have the following characteristics:

    (A) a total power output of 100 watts or less per panel;

    (B) a maximum surface area of 8,000 $cm^2$ per panel;

    (C) do not include a built-in inverter;

    (D) where the panels have glass covers, such panels must be in individual retail packaging (for purposes of this provision, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport);

(5) 3.19 watt or less solar panels, each with length of 75 mm or more but not over 266 mm and width of 46 mm or more but not over 127 mm, with surface area of 338 $cm^2$ or less, with one black wire and one red wire (each of type 22 AWG or 24 AWG) not more than 206 mm in length when measured from panel edge, provided that no such panel shall contain an internal battery or external computer peripheral ports;

(6) 27.1 watt or less solar panels, each with surface area less than 3,000 $cm^2$ and coated across the entire surface with a polyurethane doming resin, the foregoing joined to a battery charging and maintaining unit, such unit which is an acrylonitrile butadiene styrene ("ABS") box that incorporates a light emitting diode ("LED") by coated wires that include a connector to permit the incorporation of an extension cable.

(d) Any goods covered by this note may also be excluded from the application of relief if they are covered by a determination by the United States Trade Representative ("USTR") published in the *Federal Register* that such goods should be exempt from the application of any rate of duty or tariff-rate quota otherwise imposed on goods described in the provisions of this note. Such a determination by the USTR under this subdivision may exempt specific additional CSPV cells or modules when entered from all countries or when entered from enumerated countries only, or may modify the product descriptions in subdivision (c) of this note. The USTR is authorized to modify or terminate any such determination during the effective period of the subheadings specified in the first sentence of subdivision (a) of this note and to specify, subsequent to the effective date specified in this note, that such CSPV cells and modules will be considered "goods excluded from the application of relief" upon publication by the USTR of a notice in the *Federal Register*. Such "goods excluded from the application of relief" shall not be counted toward any tariff-rate quota quantities specified for any quota period.

Annexes, page 4

(e)  (i)  For purposes of subheading 9903.45.21, the aggregate annual quantity of goods eligible to enter during any period enumerated herein shall not exceed the volume level set forth in such subheading, where 1 gigawatt equals 1,000 megawatts.

    (ii)  Any importer entering CSPV cells under subheading 9903.45.21 shall report the electricity power output attributable to such cells to the satisfaction of U.S. Customs and Border Protection ("Customs") and shall provide such information as Customs may require in order to permit the administration of this subheading. Such an entry shall constitute a certification by that importer of the power output attributable to the CSPV cells described therein. Importers are likewise directed to report the electricity power output attributable to CSPV cells entered under subheading 9903.45.22 to the extent that and in such form as Customs may require.

(f)  For purposes of subheading 9903.45.22 to this subchapter, the duty rate in the Rates of Duty 1-General subcolumn and the Rates of Duty 2 column for all goods entered under such subheading, and not the product of a country enumerated in subdivision (b) of this note, shall be as follows, with the duty rates set forth herein applied in addition to those applicable under subheading 8541.40.60:

    If entered during the period from
    February 7, 2018 through February 6, 2019 ..................................... 30%

    If entered during the period from
    February 7, 2019 through February 6, 2020 ..................................... 25%

    If entered during the period from
    February 7, 2020 through February 6, 2021 ..................................... 20%

    If entered during the period from
    February 7, 2021 through February 6, 2022 ..................................... 15%.

(g)  For purposes of subheading 9903.45.25 to this subchapter, the term "modules" shall include the following goods provided for in subheading 8541.40.60 of the tariff schedule: a module is a joined group of CSPV cells, as such cells are defined in subdivision (c) of this note, regardless of the number of cells or the shape of the joined group, that are capable of generating electricity. Also included as a "module" are goods each known as a "panel" comprising a CSPV cell that has undergone any processing, assembly, or interconnection (including, but not limited to, assembly into a laminate). Such CSPV cells assembled into modules or made up into panels include goods of a type reported for statistical purposes under statistical reporting number 8541.40.6020. Such goods also include (i) CSPV cells which are presented attached to inverters or batteries of subheading 8501.61.00 or 8507.20.80, respectively; and (ii) CSPV cells classifiable as DC generators of subheading 8501.31.80.

Annexes, page 5

(h)   For purposes of subheading 9903.45.25 to this subchapter, the duty rate in the Rates of Duty 1-General subcolumn and the Rates of Duty 2 column in any of the periods enumerated below shall be as follows, with the duty rates set forth herein applied in addition to those applicable under subheading 8541.40.60:

If entered during the period from
February 7, 2018 through February 6, 2019 .................................... 30%

If entered during the period from
February 7, 2019 through February 6, 2020 .................................... 25%

If entered during the period from
February 7, 2020 through February 6, 2021 .................................... 20%

If entered during the period from
February 7, 2021 through February 6, 2022 .................................... 15%.

Such duty shall be imposed on the declared value of such modules, including the cost or value of the non-cell portions thereof (such as aluminum frames), as Customs in its regulations or instructions may require.

| Heading/ Subheading | Article description | Rates of Duty | | |
| --- | --- | --- | --- | --- |
| | | 1 | | 2 |
| | | General | Special | |
| 9903.45.21 | Crystalline silicon photovoltaic cells, as defined in note 18(c) to this subchapter, when the product or originating good of a country other than a country described in note 18(b) to this subchapter: If entered in an annual aggregate quantity not exceeding 2.5 gigawatts, under the terms of such note.................................................................................. | No change | No change | No change |
| 9903.45.22 | Other................................................................................. | The duty rate provided in note 18(f) to this sub-chapter | | The duty rate provided in note 18(f) to this sub-chapter +35% |

## Annexes, page 6

| Heading/ Subheading | Article description | Rates of Duty | | |
|---|---|---|---|---|
| | | 1 | | 2 |
| | | General | Special | |
| 9903.45.25 | Modules as defined in note 18(g) to this subchapter, when the product or originating good of a country other than a country described in note 18(b) to this subchapter............... | The duty rate provided in note 18(h) to this subchapter | | The duty rate provided in note 18(h) to this subchapter". |

Annexes, page 7

## ANNEX II

## MODIFICATIONS ON THE ELIGIBILITY OF CERTAIN ARTICLES THE PRODUCT OF ARGENTINA FOR PURPOSES OF THE GENERALIZED SYSTEM OF PREFERENCES

Section A. Effective with respect to articles entered, or withdrawn from warehouse for consumption, on or after January 1, 2018, general note 4(d) to the HTS is modified by:

(1) adding, in numerical sequence, the following subheading numbers and country set out opposite such subheading numbers:

| | | | |
|---|---|---|---|
| 0202.30.10 | Argentina | 1901.20.45 | Argentina |
| 0711.20.18 | Argentina | 2007.99.48 | Argentina |
| 1007.10.00 | Argentina | 2008.30.37 | Argentina |
| 1007.90.00 | Argentina | 2305.00.00 | Argentina |
| 1202.30.40 | Argentina | 2306.30.00 | Argentina |
| 1202.42.40 | Argentina | 4107.11.80 | Argentina |
| 1702.60.22 | Argentina | | |

(2) deleting from the numerical sequence, the following subheading number and country set out opposite such subheading number:

8523.29.50    Argentina

(3) adding, in alphabetical order, the country set out opposite the following subheadings:

| | |
|---|---|
| 1602.50.08 | Argentina |
| 1702.30.22 | Argentina |
| 2008.50.20 | Argentina |
| 3824.99.41 | Argentina |
| 3826.00.10 | Argentina |

Section B. Effective with respect to articles entered, or withdrawn from warehouse for consumption, on or after January 1, 2018, the HTS is modified as provided in this section. For each of the following subheadings, the Rates of Duty 1-Special subcolumn is modified by deleting the symbol "A" and inserting the symbol "A*" in lieu thereof:

| | |
|---|---|
| 0202.30.10 | 1901.20.45 |
| 0711.20.18 | 2007.99.48 |
| 1007.10.00 | 2008.30.37 |
| 1007.90.00 | 2305.00.00 |
| 1202.30.40 | 2306.30.00 |
| 1202.42.40 | 4107.11.80 |
| 1702.60.22 | |

[FR Doc. 2018–01592

Filed 1–24–18; 2: pm]

Billing code 7020–02–C

# ATTACHMENT B

to attend the meeting and have special needs should call (865) 632–6000. Anyone who wishes to comment on any of the agenda in writing may send their comments to: TVA Board of Directors, Board Agenda Comments, 400 West Summit Hill Drive, Knoxville, Tennessee 37902.

Dated: February 9, 2018.

**Sherry A. Quirk,**

*General Counsel.*

[FR Doc. 2018–03138 Filed 2–12–18; 11:15 am]

**BILLING CODE 8120–08–P**

---

**OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE**

**[Docket No. USTR–2018–0001]**

**Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure**

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice and request for comments.

**SUMMARY:** On January 23, 2018, the President imposed a safeguard measure on imports of crystalline silicon photovoltaic (CSPV) cells, whether or not partially or fully assembled into other products such as modules (other CSPV products), consisting of (1) a tariff-rate quota on imports of CSPV cells not partially or fully assembled into other products, with an unchanged rate of duty for the within-quota quantity and an increase in the rate of duty applicable to articles entered in excess of that quantity; and (2) an increase in the rate of duty on imports of other CSPV products, as provided for in the Proclamation's annex. This notice establishes the procedures to request the exclusion of a particular product from the safeguard measure, the criteria for describing a particular product for which exclusion is sought, and identifies the factors that the Office of the United States Trade Representative (USTR) may take into consideration when determining whether to exclude a particular product. It also solicits requests for exclusion of a particular product from the safeguard measure.

**DATES:**

March 16, 2018, at 11:59 p.m. EST: Deadline for the submission of requests for exclusion of a particular product from the safeguard measure.

April 16, 2018 at 11:59 p.m. EST: Deadline for the submission of comments in response to requests for exclusion of a particular product from the safeguard measure.

**ADDRESSES:** USTR strongly prefers electronic submissions made through the Federal eRulemaking Portal: *http://www.regulations.gov.* Follow the instructions for submitting comments in section III below. The docket number is USTR–2018–0001. For alternatives to on-line submissions, please contact Yvonne Jamison, Trade Policy Staff Committee, at (202) 395–9666. All non-confidential versions of submissions will be posted in the docket for public inspection.

**FOR FURTHER INFORMATION CONTACT:** Victor Mroczka, Office of WTO and Multilateral Affairs, at *vmroczka@ustr.eop.gov* or (202) 395–9450, or Dax Terrill, Office of General Counsel, at *Dax.Terrill@ustr.eop.gov* or (202) 395–4739.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

Following receipt of a petition from Suniva, Inc., a producer of CSPV products in the United States, that was later joined by SolarWorld Americas, Inc., another producer of CPSV products in the United States (collectively, petitioners), the ITC instituted an investigation under section 202 of the Trade Act of 1974, as amended (Trade Act) (19 U.S.C. 2252), to determine whether there were increased imports of CSPV products in such quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing like or directly competitive products. The ITC notice of institution (82 FR 25331) identified the scope of the products covered by this investigation as CSPV cells, whether or not partially or fully assembled into other products, of a thickness equal to or greater than 20 micrometers, having a p/n junction (or variant thereof) formed by any means, whether or not the cell has undergone other processing, including, but not limited to cleaning, etching, coating, and addition of materials (including, but not limited to metallization and conductor patterns) to collect and forward the electricity that is generated by the cell. The scope of the investigation also included photovoltaic cells that contain crystalline silicon in addition to other materials, such as passivated emitter rear contact cells, heterojunction with intrinsic thin layer cells, and other so-called "hybrid" cells.

The notice of institution identified products covered and excluded by the scope of the investigation. Specifically, the scope of the investigation did not cover:

• Thin film photovoltaic products produced from amorphous silicon ("a-Si"), cadmium telluride ("CdTe"), or copper indium gallium selenide ("CIGS");

• CSPV cells, not exceeding 10,000 mm² in surface area, that are permanently integrated into a consumer good whose primary function is other than power generation and that consumes the electricity generated by the integrated CSPV cell. Where more than one CSPV cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all CSPV cells that are integrated into the consumer good; and

• CSPV cells, whether or not partially or fully assembled into other products, if such CSPV cells were manufactured in the United States.

On the basis of information developed during the investigation, the ITC determined pursuant to section 202(b) of the Trade Act (19 U.S.C. 2252(b)) that CSPV products are being imported into the United States in such increased quantities as to be a substantial cause of serious injury to the domestic industry and made additional findings under the implementing statutes of certain free trade agreements or other statutory provisions related to certain preferential trade programs.

**II. Products Excluded From the Application of the Safeguard Measure**

On October 25, 2017 (82 FR 49469), the Trade Policy Staff Committee (TPSC) provided details concerning the process it would use to make a recommendation to the President on actions he should take to facilitate the efforts of the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs. The process included an opportunity to file initial and responsive comments regarding this question and a public hearing on December 6, 2017, during which commenters testified regarding their submissions and addressed the claims and arguments of others. As part of this process, a number of interested persons requested the exclusion of products from application of the safeguard measure.

Presidential Proclamation 9693 of January 23, 2018 (83 FR 3541) excluded certain particular products:

• 10 to 60 watt, inclusive, rectangular solar panels, where the panels have the following characteristics: (A) Length of 250 mm or more but not over 482 mm or width of 400 mm or more but not over 635 mm, and (B) surface area of 1000 cm² or more but not over 3,061 cm²), provided that no such panel with those characteristics shall contain an

internal battery or external computer peripheral ports at the time of entry;

• 1 watt solar panels incorporated into nightlights that use rechargeable batteries and have the following dimensions: 58 mm or more but not over 64 mm by 126 mm or more but not over 140 mm;

• 2 watt solar panels incorporated into daylight dimmers, that may use rechargeable batteries, such panels with the following dimensions: 75 mm or more but not over 82 mm by 139 mm or more but not over 143 mm;

• Off-grid and portable CSPV panels, whether in a foldable case or in rigid form containing a glass cover, where the panels have the following characteristics: (a) A total power output of 100 watts or less per panel; (b) a maximum surface area of 8,000 cm² per panel; (c) does not include a built-in inverter; and where the panels have glass covers, such panels must be in individual retail packaging (in this context, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport);

• 3.19 watt or less solar panels, each with length of 75 mm or more but not over 266 mm and width of 46 mm or more but not over 127 mm, with surface area of 338 cm² or less, with one black wire and one red wire (each of type 22 AWG or 24 AWG) not more than 206 mm in length when measured from panel edge, provided that no such panel shall contain an internal battery or external computer peripheral ports;

• 27.1 watt or less solar panels, each with surface area less than 3,000 cm² and coated across the entire surface with a polyurethane doming resin, the foregoing joined to a battery charging and maintaining unit, such unit which is an acrylonitrile butadiene styrene (''ABS'') box that incorporates a light emitting diode (''LED'') by coated wires that include a connector to permit the incorporation of an extension cable.

## III. Procedure To Request the Exclusion of Additional Particular Products

The Proclamation directed the United States Trade Representative to publish a notice establishing procedures for requests for the exclusion of particular products from the safeguard measure. The Proclamation provides that if the Trade Representative determines, after consultation with the Secretaries of Commerce and Energy (the interagency group), that a particular product should be excluded, the Trade Representative can modify the Harmonized Tariff Schedule of the United States (HTS) provisions created in the Proclamation's annex to exclude that particular product

from the safeguard measure upon publication of the determination in the **Federal Register**. The Proclamation also instructed the Trade Representative to establish procedures for requests for exclusion of a particular product from the safeguard measure.

USTR invites interested persons to submit comments identifying a particular product for exclusion from the safeguard measure and providing reasons why the product should be excluded. USTR will evaluate each request on a case-by-case basis and will grant only those exclusions that do not undermine the objectives of the safeguard measures.

### A. Requests for Exclusion of Particular Products

Any request for exclusion clearly should identify the particular product in terms of the physical characteristics (*e.g.,* dimensions, wattage, material composition, or other distinguishing characteristics) that distinguish it from products that are subject to the safeguard measures. USTR will not consider requests that identify the product at issue in terms of the identity of the producer, importer, or ultimate consumer; the country of origin; or trademarks or tradenames. USTR will not consider requests that identify the product using criteria that cannot be made available to the public.

In evaluating requests for exclusion, the interagency group may consider the following factors or information:

• The names and locations of any producers, in the United States and foreign countries, of the particular product;

• Total U.S. consumption of the particular product, if any, by quantity and value for each year from 2014 to 2017, the projected annual consumption for each year from 2018 to 2022, and any related information about the types of consumers;

• Details concerning the typical use or application of the particular product;

• Total U.S. production of the particular product for each year from 2014 to 2017, if any;

• The identity of any U.S.-produced substitute for the particular product, total U.S. production of the substitute for each year from 2014 to 2017, and the names of any U.S. producers of the substitute;

• Whether the particular product or substitute for the particular product may be obtained from a U.S. producer;

• Whether qualification requirements affect the requestor's ability to use domestic products;

• Whether the particular product is under development by a U.S. producer

who will imminently be able to produce it in marketable quantities;

• Inventories of the particular product in the United States;

• Whether excluding the particular product from the safeguard measure would result in a benefit or advantage to the long-term competitiveness of the solar manufacturing supply chain in the United States, including by fostering research and development, supporting manufacturing innovation, or by leading to the development of differentiated products that command higher prices;

• The ability of U.S. Customs and Border Protection to administer the exclusion; and

• Any other information or data that interested persons consider relevant to an evaluation of the request.

As indicated above, the Trade Representative, in consultation with the Secretaries of Commerce and Energy, will grant only those exclusions that do not undermine the objectives of the safeguard measure. Any exclusion will be effective upon publication of the exclusion determination in the **Federal Register**.

Where necessary, an agency participating in the interagency group may contact interested persons to discuss the procedures or information referenced above or to gain additional information.

USTR strongly discourages the submission of business confidential information. Any request that contains business confidential information must be accompanied by a public version that does not contain the business confidential information, which will be posted on *Regulations.gov.*

When interested persons identify factors in addition to those listed above that they consider relevant to evaluating whether a particular product should be excluded from the safeguard measure, they should explain how the factor would affect the domestic industry's efforts to make a positive adjustment to import competition or the social and economic benefits or costs associated with the safeguard measure.

### B. Comments on Requests for Exclusions

After the submission of requests for exclusion of a particular product, interested persons will have an opportunity to comment on the requests, indicate whether they support or oppose any of them, and provide reasons for their view. You can view requests for exclusions on *www.regulations.gov* by entering docket number USTR–2018–0001 in the search field on the home page. If an interested person submits a request for exclusion of a particular product and, during the

responsive comment period, no objection to that request is received, USTR may conclude there are no reasons to prevent a determination that the particular product should be excluded from the safeguard measure, and may conclude, based on the interagency group's review of the request, any comments on the requests, and other relevant information, that the product should be excluded.

### C. Future Requests

At this time, USTR will not consider requests for exclusion received after March 16, 2018. USTR will monitor developments in the U.S. market for CSPV products and, if warranted, provide for additional requests for exclusion at a later date.

### D. Submission Instructions

USTR seeks requests and responses to requests with respect to the issues described in Section III.A through a public comment process. To be assured of consideration, you must submit written comments by 11:59 p.m. EST on March 16, 2018, and any written responses to those comments by 11:59 p.m. EST on April 16, 2018. All comments must be in English and must identify on the reference line of the first page of the submission "Comments Regarding Requests for Product Exclusions From the Solar Products Safeguard Measure."

We strongly encourage commenters to make on-line submissions using the *www.regulations.gov* website. To submit comments via *www.regulations.gov*, enter docket number USTR–2018–0001 on the home page and click "search." The site will provide a search-results page listing all documents associated with this docket. Find a reference to this notice and click on the link entitled "Comment Now!" For further information on using *www.regulations.gov*, please consult the resources provided on the website by clicking "How to Use Regulations.gov" on the bottom of the home page. We will not accept hand-delivered submissions.

The *www.regulations.gov* website allows users to provide comments by filling in a "Type Comment" field, or by attaching a document using an "Upload File" field. We prefer that you provide comments as an attached document in Microsoft Word (.doc) or Adobe Acrobat (.pdf) format. If the submission is in another file format, please indicate the name of the software application in the "Type Comment" field. File names should reflect the name of the person or entity submitting the comments. Please do not attach separate cover letters to electronic submissions; rather, include

any information that might appear in a cover letter in the comments themselves. Similarly, to the extent possible, please include any exhibits, annexes, or other attachments in the same file as the comment itself, rather than submitting them as separate files.

As noted above, we strongly discourage the submission of business confidential information and its inclusion may prevent a full consideration of the product exclusion request. In any event, including business confidential information in a submission should be extremely circumscribed. Additionally, the filer must provide a public version and the file name of the business confidential version should begin with the characters "BC". Any page containing business confidential information must be clearly marked "BUSINESS CONFIDENTIAL" on the top of that page and the submission should clearly indicate, via brackets, highlighting, or other means, the specific information that is business confidential. A filer requesting business confidential treatment must certify that the information is business confidential and would not customarily be released to the public by the submitter.

As indicated above, filers of submissions containing business confidential information must submit a public version of their comments. The file name of the public version should begin with the character "P". The "BC" and "P" should be followed by the name of the person or entity submitting the comments. Filers submitting comments containing no business confidential information should name their file using the name of the person or entity submitting the comments.

We emphasize that submitters are strongly encouraged to file comments through *www.regulations.gov*. You must make arrangements for any alternative method of submission with Yvonne Jamison at (202) 395–9666 in advance of transmitting a comment. You can find general information about USTR at *www.ustr.gov*.

We will post comments in the docket for public inspection, except business confidential information. You can view comments on *www.regulations.gov* by entering docket number USTR–2018–0001 in the search field on the home page.

**Edward Gresser,**

*Chair of the Trade Policy Staff Committee, Office of the United States Trade Representative.*

[FR Doc. 2018–03048 Filed 2–13–18; 8:45 am]

**BILLING CODE 3290–F8–P**

# DEPARTMENT OF TRANSPORTATION

## Federal Aviation Administration

## Notice of Opportunity for Public Comment on a Disposal of 17.6 Acres of Airport Land at Manchester-Boston Regional Airport, Manchester, NH

**AGENCY:** Federal Aviation Administration (FAA), DOT.

**ACTION:** Request for public comments.

**SUMMARY:** Notice is being given that the FAA is considering a request from the Manchester-Boston Regional Authority to dispose of 17.6 acres of airport land. The parcel is located three miles south of the airport and surrounded by residential development. Considering its remote location and no aviation development potential, disposal of the property is approved. The airport will obtain fair market value for the disposal and the proceeds deposited into the airport's account for operation and maintenance of the facility.

**DATES:** Comments must be received on or before March 16, 2018.

**ADDRESSES:** You may send comments using any of the following methods:

• *Federal eRulemaking Portal:* Go to *http://www.regulations.gov*, and follow the instructions on providing comments.

• *Fax:* 202–493–2251.

• *Mail:* U.S. Department of Transportation, Docket Operations, M–30, West Building Ground Floor, Room W 12–140, 1200 New Jersey Avenue SE, Washington, DC 20590.

• *Hand Delivery:* Deliver to mail address above between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays.

Interested persons may inspect the request and supporting documents by contacting the FAA at the address listed under **FOR FURTHER INFORMATION CONTACT.**

**FOR FURTHER INFORMATION CONTACT:** Mr. Jorge E. Panteli, Compliance and Land Use Specialist, Federal Aviation Administration New England Region Airports Division, 1200 District Avenue, Burlington, Massachusetts, 01803. Telephone: 781–238–7618.

Issued in Burlington, Massachusetts on January 29, 2018.

**Gail B. Lattrell,**

*Deputy Director, ANE–600.*

[FR Doc. 2018–02942 Filed 2–13–18; 8:45 am]

**BILLING CODE P**

# ATTACHMENT C

between milepost 219.0 at L'Anse (southwest of the intersection of U.S. 41 and Menge Creek Rd.) and milepost 223.9 at Baraga (the Line). The Line traverses U.S. Postal Service Zip Codes 49946 and 49908.

WCL has certified that: (1) No local traffic has moved over the Line for at least two years; (2) overhead traffic (to the extent any exists) can be rerouted over other lines; (3) no formal complaint filed by a user of rail service on the Line (or by a state or local government entity acting on behalf of such user) regarding cessation of service over the Line either is pending with the Surface Transportation Board (Board) or with any U.S. District Court or has been decided in favor of complainant within the two-year period; and (4) the requirements at 49 CFR 1105.12 (newspaper publication) and 49 CFR 1152.50(d)(1) (notice to governmental agencies) have been met.

As a condition to this exemption, any employee adversely affected by the discontinuance of service shall be protected under *Oregon Short Line Railroad—Abandonment Portion Goshen Branch Between Firth & Ammon, in Bingham & Bonneville Counties, Idaho,* 360 I.C.C. 91 (1979). To address whether this condition adequately protects affected employees, a petition for partial revocation under 49 U.S.C. 10502(d) must be filed.

Provided no formal expression of intent to file an offer of financial assistance (OFA) [1] [2] to subsidize continued rail service has been received, this exemption will be effective on November 8, 2019, unless stayed pending reconsideration. Petitions to stay that do not involve environmental issues must be filed by October 18, 2019, and formal expressions of intent to file an OFA to subsidize continued rail service under 49 CFR 1152.27(c)(2) [2] must be filed by October 21, 2019. [3] Petitions for reconsideration must be filed by October 29, 2019, with the Surface Transportation Board, 395 E Street SW, Washington, DC 20423–0001.

A copy of any petition filed with the Board should be sent to WCL's

---

[1] Persons interested in submitting an OFA to subsidize continued rail service must first file a formal expression of intent to file an offer, indicating the intent to file an OFA for subsidy and demonstrating that they are preliminarily financially responsible. *See* 49 CFR 1152.27(c)(2)(i).

[2] The filing fee for OFAs can be found at 49 CFR 1002.2(f)(25).

[3] Because this is a discontinuance proceeding and not an abandonment, trail use/rail banking and public use conditions are not appropriate. Because there will be an environmental review during abandonment, this discontinuance does not require environmental review.

representative, Bradon J. Smith, Fletcher & Sippel LLC, 29 North Wacker Drive, Suite 800, Chicago, IL 60606.

If the verified notice contains false or misleading information, the exemption is void ab initio.

Board decision and notices are available at *www.stb.gov.*

Decided: October 2, 2019.

By the Board, Allison C. Davis, Director, Office of Proceedings.

**Eden Besera,**

*Clearance Clerk.*

[FR Doc. 2019–21842 Filed 10–8–19; 8:45 am]

**BILLING CODE 4915–01–P**

---

## SURFACE TRANSPORTATION BOARD

### Release of Waybill Data

The Surface Transportation Board (Board) has received a request from the Southern California Association of Governments (WB19–49—10/1/19) for permission to use select data from the Board's 2011–2015 Unmasked Carload Waybill Sample. A copy of this request may be obtained from the Board's website under docket no. WB19–49.

The waybill sample contains confidential railroad and shipper data; therefore, if any parties object to these requests, they should file their objections with the Director of the Board's Office of Economics within 14 calendar days of the date of this notice. The rules for release of waybill data are codified at 49 CFR 1244.9.

*Contact:* Alexander Dusenberry, (202) 245–0319.

**Aretha Laws-Byrum,**

*Clearance Clerk.*

[FR Doc. 2019–22060 Filed 10–8–19; 8:45 am]

**BILLING CODE 4915–01–P**

---

## OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

**[Docket No. USTR–2018–0001]**

### Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice.

**SUMMARY:** On January 23, 2018, the President imposed a safeguard measure on imports of certain solar products pursuant to a section 201 investigation. On February 14, 2018, the U.S. Trade Representative established procedures for interested persons to request product-specific exclusions from application of the safeguard measure.

On June 13, 2019, the U.S. Trade Representative published a notice granting certain requests for exclusions and excluding the products at issue from the safeguard measure's application. In particular, the U.S. Trade Representative excluded bifacial solar panels consisting only of bifacial solar cells. Since publication of that notice, the U.S. Trade Representative has evaluated this exclusion further and, after consultation with the Secretaries of Commerce and Energy, determined it will undermine the objectives of the safeguard measure. Accordingly, the U.S. Trade Representative has modified the Harmonized Tariff Schedule of the United States (HTSUS) to withdraw the exclusion of bifacial solar panels from application of the safeguard measure. The U.S. Trade Representative also has modified the HTSUS to make certain technical changes in connection with the safeguard measure.

**DATES:** The withdrawal of the exclusion for bifacial solar panels from application of the safeguard measure and technical changes will apply as of October 28, 2019.

**FOR FURTHER INFORMATION CONTACT:** Victor Mroczka, Office of WTO and Multilateral Affairs, at *vmroczka@ ustr.eop.gov* or (202) 395–9450, or Dax Terrill, Office of General Counsel, at *Dax.Terrill@ustr.eop.gov* or (202) 395– 4739.

**SUPPLEMENTARY INFORMATION:**

### A. Background

On January 23, 2018, the President issued Proclamation 9693 (83 FR 3541) to impose a safeguard measure under section 201 of the Trade Act of 1974 (19 U.S.C. 2251) with respect to certain crystalline silicon photovoltaic (CSPV) cells and other products (CSPV products) containing these cells. The Proclamation directed the U.S. Trade Representative to establish procedures for interested persons to request the exclusion of particular products from the safeguard measure. It also authorized the U.S. Trade Representative, after consultation with the Secretaries of Commerce and Energy, to exclude products by modifying the HTSUS with publication of a determination in the **Federal Register** regarding the exclusion of such products.

On February 14, 2018, the U.S. Trade Representative issued a notice setting out the procedures to request a product exclusion and opened a public docket. *See* 83 FR 6670 (the February 2018 notice). Under the February 2018 notice, requests for exclusion were to identify the particular product in terms of its

physical characteristics, such as dimensions, wattage, material composition, or other distinguishing characteristics, that differentiate it from other products that are subject to the safeguard measure. The notice said that the U.S. Trade Representative would not consider requests identifying the product at issue in terms of the identity of the producer, importer, or ultimate consumer, the country of origin, or trademarks or tradenames. The notice also provided that the U.S. Trade Representative would evaluate each request on a case-by-case basis and would grant only those exclusions that did not undermine the objectives of the safeguard measure.

The February 2018 notice indicated that the U.S. Trade Representative would consider exclusion requests filed no later than March 16, 2018. The Office of the U.S. Trade Representative (USTR) received 48 product exclusion requests and 213 comments responding to the various requests. The exclusion requests generally fell into seven categories, one of which concerned bifacial solar panels. Proponents asserted that the volume of bifacial solar panel production available for export to the United States was highly limited, that the products would not compete directly with CSPV products produced in the United States, and that the exclusion would not undermine the objectives of the safeguard measure.

On September 19, 2018, and June 13, 2019 (the June 2019 notice), the U.S. Trade Representative granted certain product exclusion requests in notices published in the **Federal Register** (83 FR 47393 and 84 FR 27684) and modified the HTSUS accordingly. In particular, based on the above assertions, the June 2019 notice specifically excluded from application of the safeguard measure "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells."

**B. Further Evaluation of the Bifacial Solar Panel Exclusion**

USTR has received multiple inquiries, requests, and other comments from members of the public. Some have asserted that the bifacial solar panels exclusion granted in the June 2019 notice is broader than the category of products described in the exclusion requests submitted as of March 16, 2018. Others have stated that the exclusion will cause a significant increase in imports of bifacial solar panels, with projections that such a surge is imminent.

After evaluating newly available information from these and other sources demonstrating that global production of bifacial solar panels is increasing, that the exclusion will likely result in significant increases in imports of bifacial solar panels, and that such panels likely will compete with domestically produced monofacial and bifacial CSPV products in the U.S. market, the U.S. Trade Representative has determined, after consultation with the Secretaries of Commerce and Energy, that maintaining the exclusion will undermine the objectives of the safeguard measure.

**C. Withdrawal of the Bifacial Solar Panel Exclusion**

Based on an evaluation of the factors set out in the February 2018 notice, and further consideration of the exclusion granted for bifacial solar panels in the June 2019 notice, the U.S. Trade Representative has determined after consultation with the Secretaries of Commerce and Energy to withdraw that exclusion.

Accordingly, as set out in the Annex to this notice, USTR is modifying subdivision (c)(iii) of U.S. note 18 to subchapter III of chapter 99 of the HTSUS to remove subdivision (c)(iii)(15), which implements the exclusion of bifacial solar panels.

**D. Technical Changes to the HTSUS**

It has come to the attention of USTR that certain technical clarifications to the Annex will facilitate administration of the safeguard measure. Presidential Proclamation 6969 of January 27, 1997 (62 FR 4415) authorizes the U.S. Trade Representative to exercise the authority provided to the President under section 604 of the Trade Act of 1974 (19 U.S.C. 2483) to embody rectifications, technical or conforming changes, or similar modifications in the HTSUS. Pursuant to this delegated authority, the U.S. Trade Representative modifies the HTSUS to make the technical changes set out in the Annex to this notice.

**Annex**

Effective with respect to articles entered for consumption, or withdrawn from a warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 28, 2019, U.S. note 18 to subchapter III of chapter 99 of the Harmonized Tariff Schedule of the United States (HTSUS) is modified by removing the following from subdivision (c)(iii):

"(15) bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells;"

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by redesignating current subdivisions (c)(iii)(16) and (c)(iii)(17) as subdivisions (c)(iii)(15) and (c)(iii)(16), respectively.

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by striking from subdivision (c)(i) the HTSUS number "8541.40.6030" and by inserting in lieu thereof "8541.40.6025".

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by striking from subdivision (g) of such note the HTSUS number "8541.40.6020" and by inserting in lieu thereof "8541.40.6015".

**Jeffrey Gerrish,**
*Deputy United States Trade Representative, Office of the U.S. Trade Representative.*

[FR Doc. 2019–22074 Filed 10–8–19; 8:45 am]

**BILLING CODE 3290–F0–P**

---

**OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE**

**[Docket No. USTR–2019–0003]**

**Notice of Determination and Action Pursuant to Section 301: Enforcement of U.S. WTO Rights in Large Civil Aircraft Dispute**

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice of determinations and action.

---

**SUMMARY:** The U.S. Trade Representative has determined that the European Union (EU) and certain member States have denied U.S. rights under the World Trade Organization (WTO) Agreement and have failed to implement WTO Dispute Settlement Body recommendations concerning certain subsidies to the EU large civil aircraft industry. The U.S. Trade Representative has determined to take action in the form of additional duties on products of certain member States of the EU, as specified in Annex A to this notice.

**DATES:** The additional duties set out in Annex A are applicable with respect to products that are entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 18, 2019.

**FOR FURTHER INFORMATION CONTACT:** For questions about the determinations in this investigation, contact Assistant General Counsel Megan Grimball, (202) 395–5725, or Director for Europe

# Attachment 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INVENERGY RENEWABLES LLC, | ) |
| Plaintiff, | ) |
| and | ) |
| SOLAR ENERGY INDUSTRIES ASSOCIATION, CLEARWAY ENERGY GROUP LLC, EDF RENEWABLES, INC., and AES DISTRIBUTED ENERGY INC., | ) |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| UNITED STATES, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, UNITED STATES TRADE REPRESENTATIVE ROBERT E. LIGHTHIZER, U.S. CUSTOMS AND BORDER PROTECTION, and ACTING COMMISSIONER MARK A. MORGRAN, | ) |
| Defendants, | ) |
| and | ) |
| HANWHA Q CELLS USA, INC., and AUXIN SOLAR, | ) |
| Defendant-Intervenors. | ) |

Before: Judge Gary S. Katzmann
Court No. 19-00192

## <span style="color:red">SECOND</span> SUPPLEMENTAL COMPLAINT

Plaintiff-Intervenor Solar Energy Industries Association ("SEIA") brings this Complaint

against the United States of America, the Office of the United States Trade Representative

("USTR"), United States Trade Representative Robert E. Lighthizer, United States Customs and

Border Protection, and Acting Commissioner of U.S. Customs and Border Protection Mark A. Morgan (collectively, "Defendants"), and alleges as follows:

## BACKGROUND

### The Parties

1.     Plaintiff-Intervenor Solar Energy Industries Association (SEIA) is a 501(c)(6) non-profit trade association organized under the laws of the District of Columbia and headquartered in Washington, DC.  *See* Exhibit 1, Declaration of John Smirnow at ¶ 3.  SEIA is the national trade association for the U.S. solar industry, with hundreds of member companies.  *Id.*  SEIA members include companies throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers, including Plaintiff Invenergy Renewables LLC ("Invenergy").  *Id.*

2.     Defendant United States of America is the federal government of the United States of America.

3.     Defendant Office of the United States Trade Representative ("USTR") is an executive agency of the United States Government and a component of the Executive Office of the President.  It is headquartered at 600 17th Street, NW, Washington, DC 20508.

4.     Defendant Robert E. Lighthizer is the United States Trade Representative.  He is sued in his official capacity.

5.     Defendant United States Customs and Border Protection is an executive agency of the U.S. Government and a component of the Department of Homeland Security.  It is headquartered at 1300 Pennsylvania Avenue, NW, Washington, DC 20229.

6.     Defendant Commissioner Mark A. Morgan is the Acting Commissioner of U.S. Customs and Border Protection.  He is sued in his official capacity.

## History Regarding the Challenged Conduct

*The Solar Safeguard Measure and Exclusion of Bifacial CSPV Modules*

7.      On May 23, 2017, the U.S. International Trade Commission ("ITC") initiated a "safeguard" investigation under Chapter 1 of title II of the Trade Act of 1974, 19 U.S.C. § 2251 et seq., of crystalline silicon photovoltaic ("CSPV") cells (whether or not partially assembled into other products).  *See Crystalline Silicon Photovoltaic Cells' (Whether or Not Partially or Fully Assembled Into Other Products); Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (Int'l Trade Comm'n June 1, 2017).

8.      On November 13, 2017, the ITC transmitted to the President a report on its investigation, finding that certain CSPV products were being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article.  *See* Presidential Proclamation 9693, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3541, 3541 (Jan. 25, 2018).   The ITC submitted a supplemental report on December 27, 2017 identifying unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury.  *Id.*

9.      Following receipt of the ITC reports and the Commissioners' recommendations regarding the appropriate actions to address the serious injury to the domestic industry, the President issued Proclamation 9693 on January 23, 2018, imposing a safeguard measure of a type described in section 203(a)(3) of the Trade Act with regarding to certain CSPV products.  *See id.* at 3541-51.

As relevant to this case, the President imposed a tariff rate quota on CSPV cells and an additional duty on CSPV modules at the following rates:

> If entered during the period from
> February 7, 2018 through February 6, 2019 . . . . . . . . . 30%
>
> If entered during the period from
> February 7, 2019 through February 6, 2020 . . . . . . . . . 25%
>
> If entered during the period from
> February 7, 2020 through February 6, 2021 . . . . . . . . . 20%
>
> If entered during the period from
> February 7, 2021 through February 6, 2022 . . . . . . . . . 15%

10.     Presidential Proclamation 9693 also provided that "{w}ithin 30 days after the date of this proclamation, the USTR shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation.  If the USTR determines, after consultation with the Secretaries of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register*, to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure . . . ." *Id.* at 3543-44.  Presidential Proclamation 9693 did not include any language authorizing USTR to modify or withdraw an exclusion once granted.

11.     On February 14, 2018, USTR published a notice setting out the procedures to request a product exclusion and opened a public docket for the submission of exclusion requests and comments regarding submitted requests on the Federal eRulemaking Portal, http://www.regulations.gov.  *See Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6670 (USTR Feb. 14, 2018).  USTR's notice did not restrict who could request an exclusion.  *See id.*  USTR

required exclusion requests to be received by March 16, 2018 and any responsive comments to be received by April 16, 2018.  *See id.* at 6670, 6672.  USTR stated that it would "evaluate each request on a case-by-case basis" and "grant only those exclusions that do not undermine the objectives of the safeguard measures."  *Id.* at 6671.  The notice establishing the exclusion process did not include any reference to the possibility that a granted exclusion could be modified or withdrawn at a later date.

12.     Several interested parties timely filed exclusion requests or commented on exclusion requests for bifacial modules and bifacial solar cells, which are products that absorb light and generate electricity on each side of the panel or cell.  *See Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,684 (USTR June 13, 2019).  Several SEIA members participated in the development of a request submitted by Pine Gate Renewables LLC for the exclusion of bifacial modules.  *See* Smirnow Declaration at ¶ 7.

13.     On June 13, 2019, following more than a year of consideration by USTR, USTR published a notice in the Federal Register granting an exclusion from the safeguards action for "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells."  *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. at 27,685.  In granting the exclusion, USTR stated that it had evaluated the factors laid out in the February 14, 2018 notice, including the requirement that the exclusion not undermine the objectives of the safeguard measures.  *See id.* at 27,684.  USTR's notice did not contain any indication that the granted exclusion might be re-visited, modified, or withdrawn in the future.

*USTR's October Notice and Subsequent Court Proceedings*

14.     On October 9, 2019, USTR published a notice in the Federal Register that the exclusion for bifacial solar panels would be withdrawn, effective October 28, 2019, meaning that imported bifacial CSPV products would again be subject to the current safeguard action. *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (USTR Oct. 9, 2019) (hereinafter, the "October Notice").  In a reversal from its findings in granting the exclusion for bifacial CSPV products, USTR claimed that "maintaining the exclusion will undermine the objectives of the safeguard measure." *Id.* at 54,245.

15.     Unlike the granting of the exclusion, which was done after notice and comment from interested parties, the withdrawal of the exclusion reflected in the October Notice was not subject to any formal notice and comment.  *See* Smirnow Declaration at ¶ 9.  In its October Notice withdrawing the exclusion, USTR cited "newly available information" from "multiple inquiries, requests, and other comments from members of the public" and "other sources" supposedly "demonstrating that global production of bifacial solar panels is increasing, that the exclusion will likely result in significant increases in imports of bifacial solar panels, and that such panels likely will compete with domestically produced monofacial and bifacial CSPV products in the U.S. market."  84 Fed. Reg. at 54,245.  USTR, however, failed to identify who "these and other sources" were or the precise content of the information that was provided by those sources.  *See id.*

16.     Invenergy instituted an action in the U.S. Court of International Trade challenging the withdrawal of the bifacial panel exclusion by filing a summons, complaint, and motion for a temporary restraining order.  ECF Nos. 1, 13, 14.  SEIA filed a motion to intervene as a plaintiff-intervenor and a proposed complaint on October 24, 2020.  ECF No. 21.  On October 30, 2020,

the Court granted SEIA's motion to intervene and deemed SEIA's complaint to be filed on that date.  ECF Nos. 39, 43.

17.     Defendants moved for leave to defer withdrawal of the bifacial module exclusion until November 8, 2019, which was thirty days after the October Notice was published in the Federal Register.  ECF No. 23.  The Court granted the motion.  ECF No. 29.

18.     Invenergy filed a motion for a preliminary injunction on November 1, 2019, seeking to prevent Defendants from withdrawing the exclusion for bifacial modules from the safeguard action.  ECF No. 49.  SEIA filed a response in support of Invenergy's motion for a preliminary injunction on November 8, 2019.  ECF No. 83.

19.     On November 7, 2019, the Court issued a temporary restraining order preventing the withdrawal of the bifacial module exclusion from going into effect.  ECF No. 68. The Court extended the temporary restraining order by 14 days on November 21, 2019.  ECF No. 108.  The Court issued a preliminary injunction on December 5, 2019, prohibiting the withdrawal of the bifacial module exclusion "until entry of final judgment as to Plaintiffs' claims against Defendants in this case."  ECF No. 114.

20.     In its opinion accompanying the preliminary injunction order, the Court concluded that Plaintiff Invenergy both independently and once joined by Plaintiff-Intervenors, including SEIA, has standing to challenge the withdrawal of the bifacial module exclusion.  ECF No. 113 at 15. The Court then went on to address the four factors traditionally associated with requests for preliminary injunctions: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff would suffer irreparable harm without the preliminary injunction; (3) whether the balance of hardships favors the plaintiff; and (4) whether the preliminary injunction would serve

the public interest.  The Court concluded that all four factors weighed in favor of issuing a

preliminary injunction.  *Id.* at 31.

21.     On the issue of likelihood of success, the Court concluded that Invenergy had established

a fair likelihood of success that USTR violated the notice-and-comment rulemaking

requirements of the Administrative Procedure Act.  *Id.* at 32.  The Court also concluded that

USTR's decision to withdraw the bifacial module exclusion was likely arbitrary and capricious.

*Id.* at 44-46.

*USTR's January Withdrawal Procedures and April Notice*

22.     USTR published a notice in the Federal Register on January 27, 2020 establishing a

procedure to consider the withdrawal of the bifacial module exclusion and inviting comments as

to whether USTR "should maintain the exclusion of bifacial solar panels from the safeguard

measure, withdraw the exclusion, or take some other action within his authority with respect to

this exclusion."  *See Procedures To Consider Retention or Withdrawal of the Exclusion of*

*Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4756, 4756

(USTR Jan. 27, 2020) (hereinafter, "January Withdrawal Procedures").  Although USTR's

original procedure for considering exclusions allowed 30 days for initial comments and an

additional 31 days for response comments, *Procedures To Consider Additional Requests for*

*Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. at

6670, USTR required initial comments to be submitted within 21 days of publication of the

January Withdrawal Procedures and any responses to the comments of other parties to be

submitted within 10 days of the deadline for initial comments.  85 Fed. Reg. at 4756.

23.     USTR issued the January Withdrawal Procedures without any order by the Court

vacating the October Withdrawal or remanding the dispute regarding the withdrawal of the

bifacial module exclusion to USTR. USTR, however, stated in the January Withdrawal Procedures that "{i}f the U.S. Trade Representative determines after receipt of comments pursuant to this notice that it would be appropriate to withdraw the bifacial module exclusion or take some other action with respect to this exclusion, the U.S. Trade Representative will request that the Court lift the injunction" against withdrawing the exclusion. *Id.*

24.     In the January Withdrawal Procedures, USTR explained that it was "concerned that: (1) The bifacial solar panel exclusion will result in significant increases in imports of bifacial solar panels and therefore will undermine the objectives of the safeguard measure; (2) the precise definition of bifacial solar panels excluded from the safeguard measure may require clarification; and (3) the exclusion in the June 2019 notice is broader than the category of products described in the exclusion requests submitted as of March 16, 2018." *Id.* To guide its consideration of the bifacial module exclusion, USTR specifically requested information or views, "with sufficient evidence to support a particular position," regarding ten discrete topics, along with "{a}ny other information or data that interested persons consider relevant to the U.S. Trade Representative's evaluation." *Id.* at 4756-57.

25.     SEIA and several of its members timely submitted comments and information in support of maintaining the bifacial module exclusion and suggested certain modifications to the exclusion that would address the main concerns that had been raised regarding the impact on domestic CSPV module manufacturers of excluding all bifacial CSPV modules. SEIA and its members argued in the alternative that if USTR did not consider a complete exclusion to be appropriate, even with SEIA's proposed modifications, then USTR should impose a tariff rate quota on bifacial modules that would allow a certain amount of bifacial modules suitable for the utility-scale segment to be imported free of safeguard duties. SEIA further argued that the

amount of bifacial modules that should be allowed to enter duty free should be set at 8 gigawatts. SEIA and several of its members timely filed responses to comments that had been submitted opposing the continued exclusion of bifacial modules.

26. Following this comment process, USTR published a determination in the Federal Register on April 17, 2020 again stating that the bifacial module exclusion should be completely withdrawn. *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (USTR Apr. 17, 2020) (hereinafter, the "April Notice").

27. Despite seeking comments on ten specific items and any other information that interested parties considered relevant to USTR's determination, the April Notice contained just nine numbered findings and a general conclusion that the bifacial module exclusion was hindering the domestic industry's adjustment to import competition by disincentivizing U.S. production of bifacial solar panels, interfering with U.S. producers' ability to increase sales into the utility segment, and creating a depressive effect on prices for monofacial solar panels. *See id.* at 21,498-99. The April Notice also referenced a report issued by the ITC after the close of the comment period established in the January Withdrawal Procedures regarding the potential impact on the domestic solar industry of increasing the tariff rate quota for CSPV cells and stated that the ITC's report supported its decision to withdraw the exclusion. *See id.* The April Notice failed to cite to or discuss any individual submission that was placed on the record by interested parties, let alone any specific evidence contained in those comments. Many of the arguments and proposals raised by SEIA and its members were left completely unaddressed.

28. The April Notice additionally stated that "the U.S. Trade Representative will request that the U.S. Court of International Trade lift the order preliminarily enjoining the withdrawal from

entering into effect." *Id.* at 21,497.  The April Notice went on to explain that "{w}ithdrawal of the exclusion for bifacial solar panels from application of the safeguard measure will apply to imported panels if the Court lifts the preliminary injunction but in no case earlier than May 18, 2020." *Id.*

*Further Litigation Following April Notice*

29.     On April 16, 2020, the day before the April Notice was actually published in the Federal Register, Defendants filed a motion with the Court to dissolve the preliminary injunction.  ECF No. 156.  According to Defendants, USTR had invited notice and comment and issued the April Notice "{i}n response to the order" enjoining Defendants from withdrawing the bifacial module exclusion.  *Id.* at 1.  Defendants further claimed that the April Notice supposedly "cured" the deficiencies that the Court had identified with USTR's withdrawal of the bifacial exclusion.  *Id.* at 1, 7.

30.     Plaintiffs, including SEIA, filed their first motions to supplement their complaints to include the April Notice on May 4, 2020.  ECF Nos. 160, 161, 162.  Plaintiffs filed responses to Defendants' first motion to dissolve the preliminary injunction on May 7, 2020.  ECF Nos. 163, 164, 166.

31.     On May 27, 2020, the Court issued an opinion denying Defendants' motion to dissolve the preliminary injunction and granting Plaintiffs' motions to supplemental their complaints. *Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347 (2020), ECF No. 185.  The Court held that Defendants had not shown that the October Notice was moot, explained that the Court did not have the authority to vacate the October Notice without a decision on the merits, and found that Defendants had not proved sufficiently changed circumstances to dissolve the

preliminary injunction.  *See generally id.*  The Court accordingly declined to lift the preliminary injunction.

32.  In response to the Court's opinion, USTR published a notice on June 12, 2020 purporting to rescind the October Notice.  *Rescission of the First Withdrawal of the Bifacial Solar Panels Exclusion From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 35,975 (USTR June 12, 2020).  On the same day, Defendants filed a renewed motion to dissolve the preliminary injunction.  ECF No. 198. Plaintiffs, including SEIA, filed a response in opposition to Defendants' renewed motion and a cross-motion to modify the preliminary injunction to explicitly cover the April Notice.  ECF No. 205.

33.  The Court issued an opinion on October 15, 2020, denying Defendants' second motion to dissolve the preliminary injunction and granting Plaintiffs' cross-motion to modify the preliminary injunction to explicitly cover the April Notice.  ECF No. 252.  The Court held that the April Notice was likely arbitrary and capricious.  The Court further held on the merits that the October Notice violated the APA for the reasons stated in the December 5, 2019 opinion accompanying the original preliminary injunction order.  The Court therefore vacated the October Notice.

*Presidential Modification Proclamation*

34.  Prior to the issuance of the Court's October 15 decision, on October 10, 2020, the President issued a proclamation that again withdraws the bifacial module exclusion, effective October 25, 2020.  *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639, 65,640-42 (Oct. 16, 2020) ("Modification Proclamation").  The Modification Proclamation also increases Section 201 safeguard tariffs on imported CSPV

products, including bifacial CSPV modules, in year four of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) from 15% to 18%.  *Id.* at 65,640, 65,642.  The Modification Proclamation modified the HTS to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV modules and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure.  *Id.* at 65,640-42.  The Modification Proclamation was published in the Federal Register on October 16, 2020.

35.　　As authority for the action taken in the Modification Proclamation, the President cited 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification or termination on such basis, that the domestic industry has made a positive adjustment to import competition."  The President asserted that he had received a petition from the domestic industry, and he found the domestic industry "has begun to make positive adjustments to import competition."  85 Fed. Reg. at 65,640.


**Impact of Withdrawing the Exclusion for Bifacial CSPV Modules**

28.36.  The withdrawal of the exclusion for bifacial CSPV modules will cause economic and business reputational harm to SEIA members that import such products into the United States and will be directly responsible for paying the increased duties.  *See id.* at ¶ 11.  The withdrawal will also cause economic and business reputational harm to SEIA members such as Invenergy that purchase bifacial CSPV products for solar projects but are not the importer of record, because of the resulting increased price for bifacial CSPV products.  *See id.*  The exclusion withdrawal will also adversely impact the development of solar energy in the United States by

13

raising the cost of solar projects and solar energy, contrary to the interests of SEIA and its

members. *See id.* at ¶ 12. Domestic manufactures do not produce bifacial products at

commercial volume suitable for utility-scale projects and can supply only a fraction of the

projected demand for utility-scale solar projects overall. *Id.*

29.37. SEIA brings this complaint seeking a declaration that USTR's and the President's

withdrawal of the exclusion for bifacial CSPV products from the solar safeguard action was

unlawful and to enjoin application of the safeguard measures to the bifacial CSPV products that

were excluded by USTR on June 13, 2019. SEIA also seeks a declaration that the President's

increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is

unlawful and to enjoin application of the 18% duty rate in year four of the safeguard measure.

## JURISDICTION

30.38. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(2)-(4), the Administrative

Procedure Act, 5 U.S.C. §§ 702, 704, 706, and 28 U.S.C. § 2631(i).

31.39. Section 1581 of title 28 provides in relevant part that "the Court of International Trade

shall have exclusive jurisdiction of any civil action commenced against the United States, its

agencies, or its officers, that arises out of any law of the United States providing for . . . (2)

tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the

raising of revenue; (3) embargoes or other quantitative restrictions on the importation of

merchandise for reasons other than the protection of the public health or safety; or (4)

administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of

this subsection and subsections (a)-(h) of this section." 28 U.S.C. § 1581(i)(2)-(4).

32.40. The tariff rate quota on solar cells and the additional tariff imposed on solar modules,

including those ordered to be re-imposed on bifacial solar modules by USTR, were imposed

pursuant to Section 201 of the Trade Act of 1974.  Chapter 1 of title II of the Trade Act of 1974, which includes Section 201, is a law "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and "quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety."  This action thus arises out of a law described in 28 U.S.C. § 1581(i)(2) and (3).

33.41.  SEIA challenges the withdrawal of the exclusion for bifacial CSPV products from the Section 201 trade action, and seeks to enjoin the collection of the safeguard tariffs on imports of bifacial modules.  SEIA also seeks a declaration that the President's increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is unlawful and an injunction prohibiting the application of the 18% duty rate in year four of the CSPV safeguard measure.  SEIA's claims thus also arise out of the "administration and enforcement with respect to matters referred to in paragraphs (1)-(3)" of 28 U.S.C. § 1581(i).

**STANDING**

34.42.  Section 2631(i) of title 28 provides that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5."  28 U.S.C. § 2631(i).  The Administrative Procedure Act similarly provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

35.43.  SEIA has standing to bring this suit on behalf of its members, which include Plaintiff Invenergy.  "{A}n association has standing to bring suit on behalf of its members when: (a) its

15

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Biotech. Indus. v. District of Columbia*, 496 F.3d 1362, 1369 (Fed. Cir. 2007) (quoting *United Food & Commercial Workers v. Brown Group*, 517 U.S. 544, 553 (1996)). Members of SEIA, including Invenergy, would have standing to sue in their own right and are adversely affected or aggrieved by agency action. SEIA's members include importers, purchasers, and users of the imported bifacial products subject to the safeguard action. The increased tariffs on bifacial products will increase their cost of doing business, reduce their profits and business opportunities, and generally impede the development of solar power in the United States. SEIA's organizational interests are in growing solar energy in the United States, and SEIA thus is opposed to the additional tariffs, which raise costs and reduce the competitiveness of solar energy. Finally, although Invenergy is a plaintiff in this action, the legal claims raised and the relief requested below do not "require" the participation of individual SEIA members as plaintiffs in the lawsuit.

~~36.~~44. Similarly, SEIA and its members are also "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). SEIA's members include importers, purchasers, and users of the imported bifacial products subject to the safeguard action, and thus their interests are, at minimum, "arguably within the zone of interests to be regulated." Moreover, in determining what action, if any, to take after the ITC finds serious injury or threat thereof, the President is directed to weigh whether the action will "provide greater economic and social benefits than costs." Trade Act § 203(a)(1), 19 U.S.C. § 2253(a)(1). The statute specifically directs the President to consider the "effect of the implementation of actions under this section on

consumers and on competition in domestic markets for articles."  Trade Act § 203(a)(2)(F)(ii),

19 U.S.C. § 2253(a)(2)(F)(ii).  Thus, SEIA and its members are also "arguably within the zone of

interests to be protected . . . by the statute."

## TIMELINESS OF THIS ACTION

37.45.  An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause

of action first accrues.

38.46.  The October Notice regarding the withdrawal of the bifacial CSPV product exclusion was

published in the Federal Register on October 9, 2019.  This action was filed well within the two-

year period from the date of the challenged determination.

47.    The April Notice regarding the withdrawal of the bifacial CSPV product exclusion was

published in the Federal Register on April 17, 2020.  Motion for leave to file and serve theis

Supplemental Complaint was filed on May 4, 2020, also well within the two-year period for

commencing an action.

39.48.  The Modification Proclamation was published in the Federal Register on October 16,

2020.  Motion for leave to file this Second Supplemental Complaint was filed on October 19,

2020, within the two-year period for commencing an action.

## STATEMENT OF CLAIMS

49.    SEIA seeks a declaratory judgment that the withdrawal of the bifacial module exclusion

by USTR and the President was unlawful and an injunction against the United States, USTR, and

U.S. Customs and Border Protection from enforcing any safeguard action related to CSPV

products against the bifacial solar products that had been excluded from the safeguard action by

USTR's June 13, 2019 Federal Register notice.

17

40.50.  SEIA also seeks a declaratory judgment that the President's increase of the Section 201 duty rate for the fourth year of the CSPV safeguard measure is unlawful and to enjoin application of the 18% duty rate by the United States and U.S. Customer and Border Protection in year four of the safeguard measure.

41.51.  In the following respects, USTR's and the President's withdrawal of the bifacial CSPV product exclusion and the President's increase of the Section 201 duty rate on CSPV products during the fourth year of the CSPV safeguard measure werewas not in accordance with law.

**COUNT ONE**

42.52.  Paragraphs 1 through 4251 of this Complaint are hereby incorporated by reference.

43.53.  USTR's exclusion of bifacial CSPV panels from the safeguard action on June 13, 2019, which changed the legal requirements for importing bifacial CSPV panels and was adopted after notice and comment, is a substantive "rule" for purposes of the Administrative Procedure Act ("APA").  5 U.S.C. § 551(4).

44.54.  In order to withdraw or otherwise modify this rule, USTR was required to go through the notice-and-comment rulemaking producers of the APA, including, but not limited to, publishing the proposed withdrawal or modification in the Federal Register, providing a transparent comment process addressing the proposed withdrawal or modification, and publishing the final amended rule at least 30 days before its effective date.  *See* 5 U.S.C. § 553.  USTR failed to follow these requirements.

45.55.  USTR's October Notice directing the withdrawal of the exclusion for bifacial CSPV panels from the safeguard action was adopted in violation of the APA's procedural requirements and must be set aside under 5 U.S.C. § 706(2)(D).

46.56.  Similarly, because USTR failed to provide interested parties an adequate opportunity to comment regarding the action USTR should take with respect to the bifacial module exclusion, USTR's April Notice confirming USTR's prior decision to withdraw the bifacial module exclusion was adopted in violation of the APA's procedural requirements and must be set aside under 5 U.S.C. § 706(2)(D).

### COUNT TWO

47.57.  Paragraphs 1 through 4251 of this Complaint are hereby incorporated by reference.

48.58.  In the October 9, 2019 Federal Register notice withdrawing the bifacial CSPV product exclusion, USTR failed to explain the rationale behind its conclusion that the exclusion undermined the safeguard measure and should be withdrawn.  Although USTR referred obliquely to "newly submitted information" from "members of the public and other sources," USTR failed to identify the source or substance of the information upon which it relied.

49.59.  In the April Notice again concluding that the bifacial CSPV module exclusion should be withdrawn, USTR failed to cite to specific information underlying its factual findings, wholly ignored substantial comments submitted by interested parties bearing on its determination, and generally failed to provide a reasoned explanation for its conclusion that the exclusion undermined the safeguard measure and should be withdrawn.

50.60.  By failing to adequately explain the reasoning behind the withdrawal of the bifacial CSPV product exclusion, identify the facts upon which its conclusions were based, and/or address substantial comments bearing on its determination, USTR's determination to withdraw the bifacial CSPV product exclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not otherwise in accordance with law" and must be set aside under 5 U.S.C. § 706(2)(A).

### COUNT THREE

51.61.  Paragraphs 1 through 42 51 of this Complaint are hereby incorporated by reference.

52.62.  Section 203 of the Trade Act of 1974, 19 U.S.C. § 2253(g), requires the President to establish regulations for the efficient and fair administration of safeguard actions taken for purposes of providing import relief.

53.63.  The withdrawal of the exclusion for bifacial CSPV panels was not authorized by Presidential Proclamation 9693, which authorized USTR to exclude certain products from the safeguard action, but did not authorize USTR to amend the safeguard action to cover products after those products had been excluded.

54.64.  The withdrawal of the exclusion for bifacial CSPV panels was also inconsistent with the exclusion process established by USTR, which provided for notice and comment and did not make any reference to the possibility of exclusions being later modified or withdrawn.

55.65.  USTR's failure to follow the procedures laid out by the President and USTR itself in withdrawing the exclusion for bifacial CSPV panels was unlawful and must be set aside under 5 U.S.C. § 706(2)(A), (C) and (D).

**COUNT FOUR**

56.66.  Paragraphs 1 through 42 51 of this Complaint are hereby incorporated by reference.

57.67.  Section 204 of the Trade Act of 1974, 19 U.S.C. § 2254(b), sets procedural requirements and requires certain findings to be made by the President before a safeguard action can be modified.  Section 203 of the Trade Act of 1974, 19 U.S.C. § 2253(e)(7), does not permit a safeguard measure to be re-imposed on an article for a period of two years after the prior measure terminated (here, in June 2019, when the exclusion for bifacial CSPV panels was granted).

58.68.  The exclusion of bifacial CSPV panels from the safeguard action was issued pursuant to the process specifically authorized by the President's original safeguard action.  USTR's withdrawal of that exclusion, however, was not authorized in the original safeguard action, and thus it effectively amended the safeguard action.

59.69.  In withdrawing the bifacial CSPV product exclusion, USTR did not follow, claim to rely on, or even cite to the statutory provisions governing the modification of safeguard actions in Section 204 of the Trade Act.

70.     USTR's The withdrawal of the bifacial CSPV product exclusion was in violation of the procedural requirements and substantive restrictions of Section 204 of the Trade Act governing modifications of safeguard actions.  The USTR's withdrawal of the exclusion therefore must be set aside as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(C) and having been issued "without observance of procedure required by law" under 5 U.S.C. § 706(D).

71.     A presidential action may be set aside if the President's action involves "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority."  *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *Motion Systems Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (stating that court may consider whether the President has violated an explicit statutory mandate).  The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

72.     The changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—the withdrawal of the bifacial module exclusion and the change in the duty rate in year four of the measure—were made in violation of the procedural requirements and substantive restrictions of Section 204 of the Trade Act governing modifications of safeguard actions.  The Modification Proclamation must therefore be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

60.73.  The withdrawal of the exclusion for bifacial CSPV modules results in the imposition of safeguard duties on those modules less than two years after a safeguard measure was terminated with respect to those modules, in violation of Section 203(e)(7) of the Trade Act.  USTR's withdrawal of the exclusion therefore must be set aside as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(C) and having been issued "without observance of procedure required by law" under 5 U.S.C. § 706(D).  Similarly, the Modification Proclamation's withdrawal of the exclusion must be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority."  *Silfab*, 892 F.3d at 1346.

**DEMAND FOR JUDGMENT AND RELIEF**

WHEREFORE, SEIA respectfully requests that this Court:

74.     Issue a declaratory judgment that USTR's withdrawal of the exclusion for bifacial CSPV panels from the solar safeguards action, as originally reflected in the October Notice and as restated in the April Notice, was unlawful and is therefore null and void;

61.75.  Issue a declaratory judgment that the President's withdrawal of the exclusion for bifacial CSPV panels from the solar safeguards action was unlawful and is therefore null and void;

62.76.  Permanently and preliminarily enjoining Defendants, their agencies, officers, employees and agents from enforcing the withdrawal of the bifacial CSPV product exclusion;

77.      Permanently and preliminarily enjoining USTR from modifying the Harmonized Tariff Schedule of the United States ("HTSUS") to place Section 201 safeguard duties on bifacial CSPV panels;

63.78.  Issue a declaratory judgment that the President's increase of the applicable Section 201 safeguard duty rate on CSPV products during the fourth year of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) was unlawful and is therefore null and void;

64.79.  Permanently and preliminarily enjoining U.S. Customs and Border Protection from enforcing or making effective any modifications to the HTSUS pursuant to the October Notice, or the April Notice, or the Modification Proclamation; and

65.80.  Provide such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Dean A. Pinkert
Daniel M. Witkowski
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 721-4750
mnicely@akingump.com
**HUGHES HUBBARD & REED LLP**
1775 I Street, N.W., Suite 600
Washington, D.C. 20006
(202) 721-4750
matthew.nicely@hugheshubbard.com

*Counsel to SEIA*

Dated: May 4October 19, 2020

# EXHIBIT 1

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| INVENERGY RENEWABLES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 19-00192 |
| | ) | |
| UNITED STATES, OFFICE OF THE UNITED | ) | |
| STATES TRADE REPRESENTATIVE, | ) | |
| UNITED STATES TRADE REPRESENTATIVE | ) | |
| ROBERT E. LIGHTHIZER, U.S. CUSTOMS | ) | |
| AND BORDER PROTECTION, and ACTING | ) | |
| COMMISSIONER MARK A. MORGRAN, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF JOHN P. SMIRNOW</u>

I, John P. Smirnow, General Counsel and Vice President of Market Strategy for the Solar Energy Industries Association ("SEIA"), hereby declare as follows:

1. I have been the General Counsel and Vice President of Market Strategy for SEIA since September 4, 2018. From 2010 to 2015, I served as SEIA's Vice President of Trade and Competitiveness. In addition, nearly all of my professional work over the past decade has focused on issues related to the solar industry.

2. The statements in this declaration are based on my knowledge of SEIA and its members.

3. SEIA is a 501(c)(6) non-profit trade association organized under the laws of the District of Columbia and headquartered in Washington, DC. SEIA is the national trade association for the U.S. solar industry and has more than 850 member companies, including Plaintiff Invenergy LLC ("Invenergy"). SEIA members include companies throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers.

4. SEIA's organizational interests are in growing solar energy in the United States and its mission is to build a strong solar industry to power America.

5. SEIA is opposed to trade restrictions on solar products that raise costs for solar energy and reduce the competitiveness of solar energy in the United States. In the original Section 201 safeguard investigation, SEIA was an active participant in opposition to the safeguard action.

6. Since February 7, 2018, imports of certain crystalline silicon photovoltaic ("CSPV") cells and modules have been subject to a safeguard action in the form of a tariff-rate quote for CSPV cells and an increase in duties on CSPV modules. In proclaiming the safeguard action on CSPV products, President Trump authorized the Office of the United States Trade Representative ("USTR") to establish procedures for excluding particular products from the safeguard action. Attachment A to this declaration is a copy of Presidential Proclamation 9693 published on January 25, 2018 imposing the safeguard action and authorizing the establishment of an exclusion process.

7. On February 14, 2018, USTR published a notice in the Federal Register inviting parties to submit exclusion requests and for parties to comment on submitted exclusion requests. Attachment B to this declaration is the Federal Register notice establishing and describing the exclusion process. Several SEIA members participated in the development of a request submitted by Pine Gate Renewables LLC for the exclusion of bifacial modules from the solar safeguard tariffs. SEIA also advocated in support of the bifacial module exclusion request before the Trump Administration and Members of Congress.

8. Bifacial cells and modules are CSPV products that are able to produce solar power from both sides of the cell or module, making them more efficient than standard monofacial cells and

modules, which produce power from only a single side. On June 13, 2019, USTR published an exclusion for bifacial cells and modules.

9. On October 4, 2019, USTR decided to withdraw the exclusion for bifacial cells and modules effective October 28, 2019. USTR's withdrawal of the exclusion was published in the Federal Register on October 9, 2019 and is included as Attachment C to this declaration. Before withdrawing the exclusion, USTR had never published a notice indicating that it was considering modifying or withdrawing the exclusion, and there was no formal mechanism for parties to comment on such a modification or withdrawal.

10. The withdrawal of the exclusion will result in the re-imposition of safeguard duties on bifacial CSPV products. Currently, CSPV modules covered by the safeguard action are subject to an additional 25 percent ad valorem duty.

11. The re-imposition of tariffs will cause serious harm to SEIA and its members. SEIA members include importers of bifacial modules and the largest U.S. purchasers of these products, including solar developers like Invenergy as well engineering, procurement and construction firms who are not the importer of record. These members face a significant increase in their costs, reducing their profitability and limiting their business opportunities. Moreover, the re-imposition of duties has caused SEIA members to seek to re-negotiate previously signed contracts, which places their business reputations at risk.

12. In addition to the harms to specific SEIA members, the tariffs generally will impede the growth of solar energy in the United States. Domestic manufactures do not produce bifacial products at commercial volume suitable for utility-scale projects and can supply only a fraction of the projected demand for utility-scale solar projects overall. Tariffs on imported bifacial cells

3

and modules will make solar projects, and thus solar energy, more expensive, which is contrary to the aims of SEIA as an organization.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23 day of October 2019.

John P. Smirnow

# ATTACHMENT A

# Presidential Documents

Proclamation 9693 of January 23, 2018

## To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes

### By the President of the United States of America

### A Proclamation

1. On November 13, 2017, the United States International Trade Commission (ITC) transmitted to the President a report (the "ITC Report") on its investigation under section 202 of the Trade Act of 1974, as amended (the "Trade Act") (19 U.S.C. 2252), with respect to imports of certain crystalline silicon photovoltaic (CSPV) cells, whether or not partially or fully assembled into other products (including, but not limited to, modules, laminates, panels, and building-integrated materials) ("CSPV products"). These products exclude certain products described in the ITC Notice of Institution, 82 *FR* 25331 (June 1, 2017), and listed in subdivision (c)(ii) of Note 18 in Annex I to this proclamation.

2. The ITC reached an affirmative determination under section 202(b) of the Trade Act (19 U.S.C. 2252(b)) that CSPV products are being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article.

3. Pursuant to section 311(a) of the North American Free Trade Agreement Implementation Act (the "NAFTA Implementation Act") (19 U.S.C. 3371(a)), the ITC made findings as to whether imports from Mexico and Canada, considered individually, account for a substantial share of total imports and contribute importantly to the serious injury, or threat thereof, caused by imports. The ITC made affirmative findings of contribution to injury with respect to imports of CSPV products from Mexico but made negative findings with respect to imports of CSPV products from Canada.

4. On November 27, 2017, the United States Trade Representative (USTR) requested additional information from the ITC under section 203(a)(5) of the Trade Act (19 U.S.C. 2253(a)(5)). On December 27, 2017, the ITC provided a response that identified unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury (the "supplemental report").

5. The ITC commissioners transmitted to the President their individual recommendations with respect to the actions that each of them considered would address the serious injury, or threat of serious injury, to the domestic industry and be most effective in facilitating the efforts of the industry to make a positive adjustment to import competition. The ITC did not recommend an action within the meaning of section 202(e) of the Trade Act (19 U.S.C. 2252(e)).

6. Pursuant to section 203 of the Trade Act (19 U.S.C. 2253), and after taking into account the considerations specified in section 203(a)(2) of the Trade Act (19 U.S.C. 2253(a)(2)), the ITC Report, and the supplemental report, I have determined to implement action of a type described in section 203(a)(3) of the Trade Act (19 U.S.C. 2252(a)(3)) (a "safeguard measure"), with regard to the following CSPV products:

(a) solar cells, whether or not assembled into modules or made up into panels provided for in subheading 8541.40.60 in Annex I to this proclamation;

(b) parts or subassemblies of solar cells provided for in subheadings 8501.31.80, 8501.61.00, and 8507.20.80 in Annex I to this proclamation;

(c) inverters or batteries with CSPV cells attached provided for in subheadings 8501.61.00 and 8507.20.80 in Annex I to this proclamation; and

(d) DC generators with CSPV cells attached provided for in subheading 8501.31.80 in Annex I to this proclamation.

7. Pursuant to section 312(a) of the NAFTA Implementation Act (19 U.S.C. 3372(a)), I have determined after considering the ITC Report that imports of CSPV products from each of Mexico and Canada, considered individually, account for a substantial share of total imports and contribute importantly to the serious injury or threat of serious injury found by the ITC.

8. Pursuant to section 203 of the Trade Act, the action I have determined to take shall be a safeguard measure in the form of:

(a) a tariff-rate quota on imports of solar cells not partially or fully assembled into other products as described in paragraph 6 of this proclamation, imposed for a period of 4 years, with unchanging within-quota quantities and annual reductions in the rates of duty applicable to goods entered in excess of those quantities in the second, third, and fourth years, as provided in Annex I to this proclamation; and

(b) an increase in duties on imports of modules, imposed for a period of 4 years, with annual reductions in the rates of duty in the second, third, and fourth years, as provided in Annex I to this proclamation.

I have determined to exclude from this action the products listed in subdivision (c)(ii) and (c)(iii) of Note 18 in Annex I to this proclamation.

9. This safeguard measure shall apply to imports from all countries, except as provided in paragraph 10 of this proclamation.

10. This safeguard measure shall not apply to imports of any product described in paragraph 6 of this proclamation of a developing country that is a Member of the World Trade Organization (WTO), as listed in subdivision (b) of Note 18 in Annex I to this proclamation, as long as such a country's share of total imports of the product, based on imports during a recent representative period, does not exceed 3 percent, provided that imports that are the product of all such countries with less than 3 percent import share collectively account for not more than 9 percent of total imports of the product. If I determine that a surge in imports of a product described in paragraph 6 of this proclamation of a developing country that is a WTO Member results in imports of that product from that developing country exceeding either of the thresholds described in this paragraph, the safeguard measure shall be modified to apply to such product from such country.

11. The in-quota quantity in each year under the tariff-rate quota described in paragraph 8 of this proclamation shall be allocated among all countries except those countries the products of which are excluded from such tariff-rate quota pursuant to paragraph 10 of this proclamation.

12. Pursuant to section 203(a)(1)(A) of the Trade Act (19 U.S.C. 2253(a)(1)(A)), I have determined that this safeguard measure will facilitate efforts by the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs. If I determine that further action is appropriate and feasible to facilitate efforts by the domestic industry to make a positive adjustment to import competition and to provide greater economic and social benefits than costs, or if I determine that the conditions under section 204(b)(1) of the Trade Act (19 U.S.C. 2254(b)(1)) are met, I shall reduce, modify, or terminate the action established in this proclamation accordingly. In addition, if I determine within 30 days of the date of this proclamation, as a result of consultations between the United States and other WTO Members pursuant to Article

12.3 of the WTO Agreement on Safeguards, that it is necessary to reduce, modify, or terminate the safeguard measure, I shall proclaim the corresponding reduction, modification, or termination of the safeguard measure within 40 days.

13. Section 502 of the Trade Act (19 U.S.C. 2462) authorizes the President to designate countries as beneficiary developing countries for purposes of the Generalized System of Preferences (GSP).

14. Proclamation 9687 of December 22, 2017, ended the suspension of Argentina's designation as a GSP beneficiary developing country. That proclamation made corresponding modifications to the Harmonized Tariff Schedule of the United States (HTS). Those modifications included technical errors, and I have determined that modifications to the HTS are necessary to correct them.

15. Section 604 of the Trade Act (19 U.S.C. 2483), authorizes the President to embody in the HTS the substance of the relevant provisions of that Act, and of other acts affecting import treatment, and actions thereunder, including the removal, modification, continuance, or imposition of any rate of duty or other import restriction.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States of America, acting under the authority vested in me by the Constitution and the laws of the United States, including but not limited to sections 203, 502, and 604 of the Trade Act, and section 301 of title 3, United States Code, do proclaim that:

(1) In order to establish increases in duty and a tariff-rate quota on imports of the CSPV products described in paragraph 6 of this proclamation (other than excluded products), subchapter III of chapter 99 of the HTS is modified as provided in Annex I to this proclamation. Any merchandise subject to the safeguard measure that is admitted into U.S. foreign trade zones on or after 12:01 a.m. eastern standard time on February 7, 2018, must be admitted as ''privileged foreign status'' as defined in 19 CFR 146.41, and will be subject upon entry for consumption to any quantitative restrictions or tariffs related to the classification under the applicable HTS subheading.

(2) Except as provided in clause (3) below, imports of CSPV products of WTO Member developing countries, as listed in subdivision (b) of Note 18 in Annex I to this proclamation, shall be excluded from the safeguard measure established in this proclamation. Imports of solar cells of those countries that are not partially or fully assembled into other products shall not be counted toward the tariff-rate quota limits that trigger the over-quota rates of duties.

(3) If, after the safeguard measure established in this proclamation takes effect, the USTR determines that:

(a) the share of total imports of the product of a country listed in subdivision (b) of Note 18 in Annex I to this proclamation exceeds 3 percent,

(b) imports of the product from all listed countries with less than 3 percent import share collectively account for more than 9 percent of total imports of the product, or

(c) a country listed in subdivision (b) of Note 18 in Annex I to this proclamation is no longer a developing country for purposes of this proclamation;

the USTR is authorized, upon publication of a notice in the *Federal Register,* to revise subdivision (b) of Note 18 in Annex I to this proclamation to remove the relevant country from the list or suspend operation of that subdivision, as appropriate.

(4) Within 30 days after the date of this proclamation, the USTR shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation. If the USTR determines, after consultation with the Secretaries

of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register,* to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure described in paragraph 8 of this proclamation.

(5) In order to make technical corrections necessary to reflect the end of the suspension of Argentina's designation as a GSP beneficiary developing country, the HTS is modified as set forth in Annex II to this proclamation.

(6) Any provision of previous proclamations and Executive Orders that is inconsistent with the actions taken in this proclamation is superseded to the extent of such inconsistency.

(7) Except as provided for in clause (8) of this proclamation, the modifications to the HTS made by this proclamation, including Annex I, shall be effective with respect to goods entered, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 7, 2018, and shall continue in effect as provided in Annex I to this proclamation, unless such actions are earlier expressly reduced, modified, or terminated. Any modifications to the HTS made pursuant to clause (3) or (4) of this proclamation shall take effect as indicated in a *Federal Register* notice published in accordance with those clauses. One year from the termination of the safeguard measure established in this proclamation, the U.S. note and tariff provisions established in Annex I to this proclamation shall be deleted from the HTS.

(8) The modifications to the HTS set forth in Annex II to this proclamation shall be effective with respect to the articles entered, or withdrawn from warehouse for consumption, on or after the dates set forth in the relevant sections of Annex II.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-third day of January, in the year of our Lord two thousand eighteen, and of the Independence of the United States of America the two hundred and forty-second.

## ANNEX I

## MODIFICATIONS TO CHAPTER 99 OF THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

Effective with respect to goods entered, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern standard time on February 7, 2018, and through 11:59 p.m. eastern standard time on February 6, 2022, subchapter III of chapter 99 of the Harmonized Tariff Schedule of the United States (HTS) is hereby modified by inserting in numerical sequence the following new U.S. note and provisions:

"18.　(a)　Subheadings 9903.45.21 through 9903.45.25 and any superior texts thereto establish temporary modifications applicable to entries of goods described herein and classified in the enumerated provisions of chapter 85 of the tariff schedule. Whenever any such subheading specifies that the annual aggregate quantity of such goods shall not exceed the quantity established under the terms of this note, when such goods are not the product of a country enumerated in subdivision (b) of this note, any entry of such goods that is in excess of the quantity specified for such provision shall be entered under the over-quota subheading set forth herein for such goods. All such goods shall be subject to duty as provided herein; and such duties shall be cumulative and imposed in addition to the rate of duty established for any such goods in chapter 85 of the tariff schedule, except as may be specified for duties imposed under the Rates of Duty 2 column.

(b)　For the purposes of this note and the application of subheadings 9903.45.21 through 9903.45.25, inclusive, the following developing countries that are members of the World Trade Organization shall not be subject to the rates of duty and tariff-rate quotas provided for therein:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Belize, Benin, Bhutan, Bolivia, Bosnia and Herzegovina, Botswana, Brazil, Burkina Faso, Burma, Burundi, Cambodia, Cameroon, Cape Verde, Central African Republic, Chad, Comoros, Congo (Brazzaville), Congo (Kinshasa), Côte d'Ivoire, Djibouti, Dominica, Ecuador, Egypt, Eritrea, Ethiopia, Fiji, Gabon, The Gambia, Georgia, Ghana, Grenada, Guinea, Guinea-Bissau, Guyana, Haiti, India, Indonesia, Iraq, Jamaica, Jordan, Kazakhstan, Kenya, Kiribati, Kosovo, Kyrgyzstan, Lebanon, Lesotho, Liberia, Macedonia, Madagascar, Malawi, Maldives, Mali, Mauritania, Mauritius, Moldova, Mongolia, Montenegro, Mozambique, Namibia, Nepal, Niger, Nigeria, Pakistan, Papua New Guinea, Paraguay, Rwanda, Saint Lucia, Saint Vincent and the Grenadines, Samoa, Sao Tomé and Principe, Senegal, Serbia, Sierra Leone, Solomon Island, Somalia, South Africa, South Sudan, Sri Lanka, Suriname, Swaziland, Tanzania, Timor-Leste, Togo, Tonga, Tunisia, Turkey, Tuvalu, Uganda, Ukraine, Uzbekistan, Vanuatu, Yemen (Republic of), Zambia and Zimbabwe.

(c)　(i)　For the purposes of subheadings 9903.45.21 and 9903.45.22, except as otherwise provided herein, the term "crystalline silicon photovoltaic cells" ("CSPV cells") means crystalline silicon photovoltaic cells of a thickness equal to or greater than 20 micrometers, having a p/n junction (or variant thereof)

Annexes, page 2

formed by any means, whether or not the cell (or subassemblies thereof provided for in subheading 8541.40.60 and imported under statistical reporting number 8541.40.6030) has undergone other processing, including, but not limited to, cleaning, etching, coating, and/or addition of materials (including, but not limited to, metallization and conductor patterns) to collect and forward the electricity that is generated by the cell. Such cells include photovoltaic cells that contain crystalline silicon in addition to other photovoltaic materials. This includes, but is not limited to, passivated emitter rear contact cells, heterojunction with intrinsic thin-layer cells, and other so-called hybrid cells. Subheadings 9903.45.21 and 9903.45.22 include goods presented in cell form and which at the time of importation are not presented assembled into circuits, laminates or modules or made up into panels.

(ii) Subheadings 9903.45.21 and 9903.45.22 shall not cover—

(1) thin film photovoltaic products produced from amorphous silicon ("a-Si"), cadmium telluride ("CdTe"), or copper indium gallium selenide ("CIGS");

(2) CSPV cells, not exceeding 10,000 mm$^2$ in surface area, that are permanently integrated into a consumer good whose primary function is other than power generation and that consumes the electricity generated by the integrated CSPV cell. Where more than one CSPV cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all CSPV cells that are integrated into the consumer good; and

(3) CSPV cells, whether or not partially or fully assembled into other products, if such CSPV cells were manufactured in the United States.

(iii) Subheadings 9903.45.21 and 9903.45.22 shall likewise not cover the following goods, whether or not separate statistical reporting numbers therefor may appear in chapters 1 through 97 of the tariff schedule:

(1) 10 to 60 watt, inclusive, rectangular solar panels, where the panels have the following characteristics: (A) length of 250 mm or more but not over 482 mm or width of 400 mm or more but not over 635 mm, and (B) surface area of 1000 cm$^2$ or more but not over 3,061 cm$^2$), provided that no such panel with those characteristics shall contain an internal battery or external computer peripheral ports at the time of entry;

(2) 1 watt solar panels incorporated into nightlights that use rechargeable batteries and have the following dimensions: 58 mm or more but not over 64 mm by 126 mm or more but not over 140 mm;

(3) 2 watt solar panels incorporated into daylight dimmers, that may use rechargeable batteries, such panels with the following dimensions:

Annexes, page 3

75 mm or more but not over 82 mm by 139 mm or more but not over 143 mm;

(4) off-grid and portable CSPV panels, whether in a foldable case or in rigid form containing a glass cover, where the panels have the following characteristics:

    (A) a total power output of 100 watts or less per panel;

    (B) a maximum surface area of 8,000 $cm^2$ per panel;

    (C) do not include a built-in inverter;

    (D) where the panels have glass covers, such panels must be in individual retail packaging (for purposes of this provision, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport);

(5) 3.19 watt or less solar panels, each with length of 75 mm or more but not over 266 mm and width of 46 mm or more but not over 127 mm, with surface area of 338 $cm^2$ or less, with one black wire and one red wire (each of type 22 AWG or 24 AWG) not more than 206 mm in length when measured from panel edge, provided that no such panel shall contain an internal battery or external computer peripheral ports;

(6) 27.1 watt or less solar panels, each with surface area less than 3,000 $cm^2$ and coated across the entire surface with a polyurethane doming resin, the foregoing joined to a battery charging and maintaining unit, such unit which is an acrylonitrile butadiene styrene ("ABS") box that incorporates a light emitting diode ("LED") by coated wires that include a connector to permit the incorporation of an extension cable.

(d) Any goods covered by this note may also be excluded from the application of relief if they are covered by a determination by the United States Trade Representative ("USTR") published in the *Federal Register* that such goods should be exempt from the application of any rate of duty or tariff-rate quota otherwise imposed on goods described in the provisions of this note. Such a determination by the USTR under this subdivision may exempt specific additional CSPV cells or modules when entered from all countries or when entered from enumerated countries only, or may modify the product descriptions in subdivision (c) of this note. The USTR is authorized to modify or terminate any such determination during the effective period of the subheadings specified in the first sentence of subdivision (a) of this note and to specify, subsequent to the effective date specified in this note, that such CSPV cells and modules will be considered "goods excluded from the application of relief" upon publication by the USTR of a notice in the *Federal Register*. Such "goods excluded from the application of relief" shall not be counted toward any tariff-rate quota quantities specified for any quota period.

Annexes, page 4

(e)    (i)    For purposes of subheading 9903.45.21, the aggregate annual quantity of goods eligible to enter during any period enumerated herein shall not exceed the volume level set forth in such subheading, where 1 gigawatt equals 1,000 megawatts.

      (ii)    Any importer entering CSPV cells under subheading 9903.45.21 shall report the electricity power output attributable to such cells to the satisfaction of U.S. Customs and Border Protection ("Customs") and shall provide such information as Customs may require in order to permit the administration of this subheading. Such an entry shall constitute a certification by that importer of the power output attributable to the CSPV cells described therein. Importers are likewise directed to report the electricity power output attributable to CSPV cells entered under subheading 9903.45.22 to the extent that and in such form as Customs may require.

(f)    For purposes of subheading 9903.45.22 to this subchapter, the duty rate in the Rates of Duty 1-General subcolumn and the Rates of Duty 2 column for all goods entered under such subheading, and not the product of a country enumerated in subdivision (b) of this note, shall be as follows, with the duty rates set forth herein applied in addition to those applicable under subheading 8541.40.60:

       If entered during the period from
       February 7, 2018 through February 6, 2019 ..................................... 30%

       If entered during the period from
       February 7, 2019 through February 6, 2020 ..................................... 25%

       If entered during the period from
       February 7, 2020 through February 6, 2021 ..................................... 20%

       If entered during the period from
       February 7, 2021 through February 6, 2022 ..................................... 15%.

(g)    For purposes of subheading 9903.45.25 to this subchapter, the term "modules" shall include the following goods provided for in subheading 8541.40.60 of the tariff schedule: a module is a joined group of CSPV cells, as such cells are defined in subdivision (c) of this note, regardless of the number of cells or the shape of the joined group, that are capable of generating electricity. Also included as a "module" are goods each known as a "panel" comprising a CSPV cell that has undergone any processing, assembly, or interconnection (including, but not limited to, assembly into a laminate). Such CSPV cells assembled into modules or made up into panels include goods of a type reported for statistical purposes under statistical reporting number 8541.40.6020. Such goods also include (i) CSPV cells which are presented attached to inverters or batteries of subheading 8501.61.00 or 8507.20.80, respectively; and (ii) CSPV cells classifiable as DC generators of subheading 8501.31.80.

Annexes, page 5

(h)  For purposes of subheading 9903.45.25 to this subchapter, the duty rate in the Rates of Duty 1-General subcolumn and the Rates of Duty 2 column in any of the periods enumerated below shall be as follows, with the duty rates set forth herein applied in addition to those applicable under subheading 8541.40.60:

If entered during the period from
February 7, 2018 through February 6, 2019 .................................... 30%

If entered during the period from
February 7, 2019 through February 6, 2020 .................................... 25%

If entered during the period from
February 7, 2020 through February 6, 2021 .................................... 20%

If entered during the period from
February 7, 2021 through February 6, 2022 .................................... 15%.

Such duty shall be imposed on the declared value of such modules, including the cost or value of the non-cell portions thereof (such as aluminum frames), as Customs in its regulations or instructions may require.

| Heading/ Subheading | Article description | Rates of Duty | | |
| --- | --- | --- | --- | --- |
| | | 1 | | 2 |
| | | General | Special | |
| 9903.45.21 | Crystalline silicon photovoltaic cells, as defined in note 18(c) to this subchapter, when the product or originating good of a country other than a country described in note 18(b) to this subchapter: If entered in an annual aggregate quantity not exceeding 2.5 gigawatts, under the terms of such note.............................................................................. | No change | No change | No change |
| 9903.45.22 | Other............................................................................................ | The duty rate provided in note 18(f) to this sub-chapter | | The duty rate provided in note 18(f) to this sub-chapter + 35% |

Annexes, page 6

| Heading/ Subheading | Article description | Rates of Duty | | |
|---|---|---|---|---|
| | | 1 | | 2 |
| | | General | Special | |
| 9903.45.25 | Modules as defined in note 18(g) to this subchapter, when the product or originating good of a country other than a country described in note 18(b) to this subchapter.............. | The duty rate provided in note 18(h) to this subchapter | | The duty rate provided in note 18(h) to this subchapter". |

Annexes, page 7

## ANNEX II

## MODIFICATIONS ON THE ELIGIBILITY OF CERTAIN ARTICLES THE PRODUCT OF ARGENTINA FOR PURPOSES OF THE GENERALIZED SYSTEM OF PREFERENCES

<u>Section A</u>. Effective with respect to articles entered, or withdrawn from warehouse for consumption, on or after January 1, 2018, general note 4(d) to the HTS is modified by:

(1) adding, in numerical sequence, the following subheading numbers and country set out opposite such subheading numbers:

| | | | |
|---|---|---|---|
| 0202.30.10 | Argentina | 1901.20.45 | Argentina |
| 0711.20.18 | Argentina | 2007.99.48 | Argentina |
| 1007.10.00 | Argentina | 2008.30.37 | Argentina |
| 1007.90.00 | Argentina | 2305.00.00 | Argentina |
| 1202.30.40 | Argentina | 2306.30.00 | Argentina |
| 1202.42.40 | Argentina | 4107.11.80 | Argentina |
| 1702.60.22 | Argentina | | |

(2) deleting from the numerical sequence, the following subheading number and country set out opposite such subheading number:

8523.29.50     Argentina

(3) adding, in alphabetical order, the country set out opposite the following subheadings:

| | |
|---|---|
| 1602.50.08 | Argentina |
| 1702.30.22 | Argentina |
| 2008.50.20 | Argentina |
| 3824.99.41 | Argentina |
| 3826.00.10 | Argentina |

<u>Section B</u>. Effective with respect to articles entered, or withdrawn from warehouse for consumption, on or after January 1, 2018, the HTS is modified as provided in this section. For each of the following subheadings, the Rates of Duty 1-Special subcolumn is modified by deleting the symbol "A" and inserting the symbol "A*" in lieu thereof:

| | |
|---|---|
| 0202.30.10 | 1901.20.45 |
| 0711.20.18 | 2007.99.48 |
| 1007.10.00 | 2008.30.37 |
| 1007.90.00 | 2305.00.00 |
| 1202.30.40 | 2306.30.00 |
| 1202.42.40 | 4107.11.80 |
| 1702.60.22 | |

[FR Doc. 2018–01592

Filed 1–24–18; 2: pm]

Billing code 7020–02–C

# ATTACHMENT B

to attend the meeting and have special needs should call (865) 632–6000. Anyone who wishes to comment on any of the agenda in writing may send their comments to: TVA Board of Directors, Board Agenda Comments, 400 West Summit Hill Drive, Knoxville, Tennessee 37902.

Dated: February 9, 2018.

**Sherry A. Quirk,**

*General Counsel.*

[FR Doc. 2018–03138 Filed 2–12–18; 11:15 am]

**BILLING CODE 8120–08–P**

---

## OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

**[Docket No. USTR–2018–0001]**

## Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice and request for comments.

**SUMMARY:** On January 23, 2018, the President imposed a safeguard measure on imports of crystalline silicon photovoltaic (CSPV) cells, whether or not partially or fully assembled into other products such as modules (other CSPV products), consisting of (1) a tariff-rate quota on imports of CSPV cells not partially or fully assembled into other products, with an unchanged rate of duty for the within-quota quantity and an increase in the rate of duty applicable to articles entered in excess of that quantity; and (2) an increase in the rate of duty on imports of other CSPV products, as provided for in the Proclamation's annex. This notice establishes the procedures to request the exclusion of a particular product from the safeguard measure, the criteria for describing a particular product for which exclusion is sought, and identifies the factors that the Office of the United States Trade Representative (USTR) may take into consideration when determining whether to exclude a particular product. It also solicits requests for exclusion of a particular product from the safeguard measure.

**DATES:**

March 16, 2018, at 11:59 p.m. EST: Deadline for the submission of requests for exclusion of a particular product from the safeguard measure.

April 16, 2018 at 11:59 p.m. EST: Deadline for the submission of comments in response to requests for exclusion of a particular product from the safeguard measure.

**ADDRESSES:** USTR strongly prefers electronic submissions made through the Federal eRulemaking Portal: *http:// www.regulations.gov.* Follow the instructions for submitting comments in section III below. The docket number is USTR–2018–0001. For alternatives to on-line submissions, please contact Yvonne Jamison, Trade Policy Staff Committee, at (202) 395–9666. All non-confidential versions of submissions will be posted in the docket for public inspection.

**FOR FURTHER INFORMATION CONTACT:** Victor Mroczka, Office of WTO and Multilateral Affairs, at *vmroczka@ ustr.eop.gov* or (202) 395–9450, or Dax Terrill, Office of General Counsel, at *Dax.Terrill@ustr.eop.gov* or (202) 395–4739.

**SUPPLEMENTARY INFORMATION:**

## I. Background

Following receipt of a petition from Suniva, Inc., a producer of CSPV products in the United States, that was later joined by SolarWorld Americas, Inc., another producer of CPSV products in the United States (collectively, petitioners), the ITC instituted an investigation under section 202 of the Trade Act of 1974, as amended (Trade Act) (19 U.S.C. 2252), to determine whether there were increased imports of CSPV products in such quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing like or directly competitive products. The ITC notice of institution (82 FR 25331) identified the scope of the products covered by this investigation as CSPV cells, whether or not partially or fully assembled into other products, of a thickness equal to or greater than 20 micrometers, having a p/n junction (or variant thereof) formed by any means, whether or not the cell has undergone other processing, including, but not limited to cleaning, etching, coating, and addition of materials (including, but not limited to metallization and conductor patterns) to collect and forward the electricity that is generated by the cell. The scope of the investigation also included photovoltaic cells that contain crystalline silicon in addition to other materials, such as passivated emitter rear contact cells, heterojunction with intrinsic thin layer cells, and other so-called "hybrid" cells.

The notice of institution identified products covered and excluded by the scope of the investigation. Specifically, the scope of the investigation did not cover:

• Thin film photovoltaic products produced from amorphous silicon ("a-Si"), cadmium telluride ("CdTe"), or copper indium gallium selenide ("CIGS");

• CSPV cells, not exceeding 10,000 mm$^2$ in surface area, that are permanently integrated into a consumer good whose primary function is other than power generation and that consumes the electricity generated by the integrated CSPV cell. Where more than one CSPV cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all CSPV cells that are integrated into the consumer good; and

• CSPV cells, whether or not partially or fully assembled into other products, if such CSPV cells were manufactured in the United States.

On the basis of information developed during the investigation, the ITC determined pursuant to section 202(b) of the Trade Act (19 U.S.C. 2252(b)) that CSPV products are being imported into the United States in such increased quantities as to be a substantial cause of serious injury to the domestic industry and made additional findings under the implementing statutes of certain free trade agreements or other statutory provisions related to certain preferential trade programs.

## II. Products Excluded From the Application of the Safeguard Measure

On October 25, 2017 (82 FR 49469), the Trade Policy Staff Committee (TPSC) provided details concerning the process it would use to make a recommendation to the President on actions he should take to facilitate the efforts of the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs. The process included an opportunity to file initial and responsive comments regarding this question and a public hearing on December 6, 2017, during which commenters testified regarding their submissions and addressed the claims and arguments of others. As part of this process, a number of interested persons requested the exclusion of products from application of the safeguard measure.

Presidential Proclamation 9693 of January 23, 2018 (83 FR 3541) excluded certain particular products:

• 10 to 60 watt, inclusive, rectangular solar panels, where the panels have the following characteristics: (A) Length of 250 mm or more but not over 482 mm or width of 400 mm or more but not over 635 mm, and (B) surface area of 1000 cm$^2$ or more but not over 3,061 cm$^2$), provided that no such panel with those characteristics shall contain an

internal battery or external computer peripheral ports at the time of entry;

• 1 watt solar panels incorporated into nightlights that use rechargeable batteries and have the following dimensions: 58 mm or more but not over 64 mm by 126 mm or more but not over 140 mm;

• 2 watt solar panels incorporated into daylight dimmers, that may use rechargeable batteries, such panels with the following dimensions: 75 mm or more but not over 82 mm by 139 mm or more but not over 143 mm;

• Off-grid and portable CSPV panels, whether in a foldable case or in rigid form containing a glass cover, where the panels have the following characteristics: (a) A total power output of 100 watts or less per panel; (b) a maximum surface area of 8,000 cm² per panel; (c) does not include a built-in inverter; and where the panels have glass covers, such panels must be in individual retail packaging (in this context, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport);

• 3.19 watt or less solar panels, each with length of 75 mm or more but not over 266 mm and width of 46 mm or more but not over 127 mm, with surface area of 338 cm² or less, with one black wire and one red wire (each of type 22 AWG or 24 AWG) not more than 206 mm in length when measured from panel edge, provided that no such panel shall contain an internal battery or external computer peripheral ports;

• 27.1 watt or less solar panels, each with surface area less than 3,000 cm² and coated across the entire surface with a polyurethane doming resin, the foregoing joined to a battery charging and maintaining unit, such unit which is an acrylonitrile butadiene styrene (''ABS'') box that incorporates a light emitting diode (''LED'') by coated wires that include a connector to permit the incorporation of an extension cable.

## III. Procedure To Request the Exclusion of Additional Particular Products

The Proclamation directed the United States Trade Representative to publish a notice establishing procedures for requests for the exclusion of particular products from the safeguard measure. The Proclamation provides that if the Trade Representative determines, after consultation with the Secretaries of Commerce and Energy (the interagency group), that a particular product should be excluded, the Trade Representative can modify the Harmonized Tariff Schedule of the United States (HTS) provisions created in the Proclamation's annex to exclude that particular product

from the safeguard measure upon publication of the determination in the **Federal Register**. The Proclamation also instructed the Trade Representative to establish procedures for requests for exclusion of a particular product from the safeguard measure.

USTR invites interested persons to submit comments identifying a particular product for exclusion from the safeguard measure and providing reasons why the product should be excluded. USTR will evaluate each request on a case-by-case basis and will grant only those exclusions that do not undermine the objectives of the safeguard measures.

### A. Requests for Exclusion of Particular Products

Any request for exclusion clearly should identify the particular product in terms of the physical characteristics (*e.g.,* dimensions, wattage, material composition, or other distinguishing characteristics) that distinguish it from products that are subject to the safeguard measures. USTR will not consider requests that identify the product at issue in terms of the identity of the producer, importer, or ultimate consumer; the country of origin; or trademarks or tradenames. USTR will not consider requests that identify the product using criteria that cannot be made available to the public.

In evaluating requests for exclusion, the interagency group may consider the following factors or information:

• The names and locations of any producers, in the United States and foreign countries, of the particular product;

• Total U.S. consumption of the particular product, if any, by quantity and value for each year from 2014 to 2017, the projected annual consumption for each year from 2018 to 2022, and any related information about the types of consumers;

• Details concerning the typical use or application of the particular product;

• Total U.S. production of the particular product for each year from 2014 to 2017, if any;

• The identity of any U.S.-produced substitute for the particular product, total U.S. production of the substitute for each year from 2014 to 2017, and the names of any U.S. producers of the substitute;

• Whether the particular product or substitute for the particular product may be obtained from a U.S. producer;

• Whether qualification requirements affect the requestor's ability to use domestic products;

• Whether the particular product is under development by a U.S. producer

who will imminently be able to produce it in marketable quantities;

• Inventories of the particular product in the United States;

• Whether excluding the particular product from the safeguard measure would result in a benefit or advantage to the long-term competitiveness of the solar manufacturing supply chain in the United States, including by fostering research and development, supporting manufacturing innovation, or by leading to the development of differentiated products that command higher prices;

• The ability of U.S. Customs and Border Protection to administer the exclusion; and

• Any other information or data that interested persons consider relevant to an evaluation of the request.

As indicated above, the Trade Representative, in consultation with the Secretaries of Commerce and Energy, will grant only those exclusions that do not undermine the objectives of the safeguard measure. Any exclusion will be effective upon publication of the exclusion determination in the **Federal Register**.

Where necessary, an agency participating in the interagency group may contact interested persons to discuss the procedures or information referenced above or to gain additional information.

USTR strongly discourages the submission of business confidential information. Any request that contains business confidential information must be accompanied by a public version that does not contain the business confidential information, which will be posted on *Regulations.gov*.

When interested persons identify factors in addition to those listed above that they consider relevant to evaluating whether a particular product should be excluded from the safeguard measure, they should explain how the factor would affect the domestic industry's efforts to make a positive adjustment to import competition or the social and economic benefits or costs associated with the safeguard measure.

### B. Comments on Requests for Exclusions

After the submission of requests for exclusion of a particular product, interested persons will have an opportunity to comment on the requests, indicate whether they support or oppose any of them, and provide reasons for their view. You can view requests for exclusions on *www.regulations.gov* by entering docket number USTR–2018–0001 in the search field on the home page. If an interested person submits a request for exclusion of a particular product and, during the

responsive comment period, no objection to that request is received, USTR may conclude there are no reasons to prevent a determination that the particular product should be excluded from the safeguard measure, and may conclude, based on the interagency group's review of the request, any comments on the requests, and other relevant information, that the product should be excluded.

### C. Future Requests

At this time, USTR will not consider requests for exclusion received after March 16, 2018. USTR will monitor developments in the U.S. market for CSPV products and, if warranted, provide for additional requests for exclusion at a later date.

### D. Submission Instructions

USTR seeks requests and responses to requests with respect to the issues described in Section III.A through a public comment process. To be assured of consideration, you must submit written comments by 11:59 p.m. EST on March 16, 2018, and any written responses to those comments by 11:59 p.m. EST on April 16, 2018. All comments must be in English and must identify on the reference line of the first page of the submission "Comments Regarding Requests for Product Exclusions From the Solar Products Safeguard Measure."

We strongly encourage commenters to make on-line submissions using the *www.regulations.gov* website. To submit comments via *www.regulations.gov,* enter docket number USTR–2018–0001 on the home page and click "search." The site will provide a search-results page listing all documents associated with this docket. Find a reference to this notice and click on the link entitled "Comment Now!" For further information on using *www.regulations.gov,* please consult the resources provided on the website by clicking "How to Use Regulations.gov" on the bottom of the home page. We will not accept hand-delivered submissions.

The *www.regulations.gov* website allows users to provide comments by filling in a "Type Comment" field, or by attaching a document using an "Upload File" field. We prefer that you provide comments as an attached document in Microsoft Word (.doc) or Adobe Acrobat (.pdf) format. If the submission is in another file format, please indicate the name of the software application in the "Type Comment" field. File names should reflect the name of the person or entity submitting the comments. Please do not attach separate cover letters to electronic submissions; rather, include

any information that might appear in a cover letter in the comments themselves. Similarly, to the extent possible, please include any exhibits, annexes, or other attachments in the same file as the comment itself, rather than submitting them as separate files.

As noted above, we strongly discourage the submission of business confidential information and its inclusion may prevent a full consideration of the product exclusion request. In any event, including business confidential information in a submission should be extremely circumscribed. Additionally, the filer must provide a public version and the file name of the business confidential version should begin with the characters "BC". Any page containing business confidential information must be clearly marked "BUSINESS CONFIDENTIAL" on the top of that page and the submission should clearly indicate, via brackets, highlighting, or other means, the specific information that is business confidential. A filer requesting business confidential treatment must certify that the information is business confidential and would not customarily be released to the public by the submitter.

As indicated above, filers of submissions containing business confidential information must submit a public version of their comments. The file name of the public version should begin with the character "P". The "BC" and "P" should be followed by the name of the person or entity submitting the comments. Filers submitting comments containing no business confidential information should name their file using the name of the person or entity submitting the comments.

We emphasize that submitters are strongly encouraged to file comments through *www.regulations.gov.* You must make arrangements for any alternative method of submission with Yvonne Jamison at (202) 395–9666 in advance of transmitting a comment. You can find general information about USTR at *www.ustr.gov.*

We will post comments in the docket for public inspection, except business confidential information. You can view comments on *www.regulations.gov* by entering docket number USTR–2018–0001 in the search field on the home page.

**Edward Gresser,**

*Chair of the Trade Policy Staff Committee, Office of the United States Trade Representative.*

[FR Doc. 2018–03048 Filed 2–13–18; 8:45 am]

**BILLING CODE 3290–F8–P**

# DEPARTMENT OF TRANSPORTATION

## Federal Aviation Administration

## Notice of Opportunity for Public Comment on a Disposal of 17.6 Acres of Airport Land at Manchester-Boston Regional Airport, Manchester, NH

**AGENCY:** Federal Aviation Administration (FAA), DOT.

**ACTION:** Request for public comments.

**SUMMARY:** Notice is being given that the FAA is considering a request from the Manchester-Boston Regional Authority to dispose of 17.6 acres of airport land. The parcel is located three miles south of the airport and surrounded by residential development. Considering its remote location and no aviation development potential, disposal of the property is approved. The airport will obtain fair market value for the disposal and the proceeds deposited into the airport's account for operation and maintenance of the facility.

**DATES:** Comments must be received on or before March 16, 2018.

**ADDRESSES:** You may send comments using any of the following methods:

• *Federal eRulemaking Portal:* Go to *http://www.regulations.gov,* and follow the instructions on providing comments.

• *Fax:* 202–493–2251.

• *Mail:* U.S. Department of Transportation, Docket Operations, M–30, West Building Ground Floor, Room W 12–140, 1200 New Jersey Avenue SE, Washington, DC 20590.

• *Hand Delivery:* Deliver to mail address above between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays.

Interested persons may inspect the request and supporting documents by contacting the FAA at the address listed under **FOR FURTHER INFORMATION CONTACT.**

**FOR FURTHER INFORMATION CONTACT:** Mr. Jorge E. Panteli, Compliance and Land Use Specialist, Federal Aviation Administration New England Region Airports Division, 1200 District Avenue, Burlington, Massachusetts, 01803. Telephone: 781–238–7618.

Issued in Burlington, Massachusetts on January 29, 2018.

**Gail B. Lattrell,**

*Deputy Director, ANE–600.*

[FR Doc. 2018–02942 Filed 2–13–18; 8:45 am]

**BILLING CODE P**

# ATTACHMENT C

between milepost 219.0 at L'Anse (southwest of the intersection of U.S. 41 and Menge Creek Rd.) and milepost 223.9 at Baraga (the Line). The Line traverses U.S. Postal Service Zip Codes 49946 and 49908.

WCL has certified that: (1) No local traffic has moved over the Line for at least two years; (2) overhead traffic (to the extent any exists) can be rerouted over other lines; (3) no formal complaint filed by a user of rail service on the Line (or by a state or local government entity acting on behalf of such user) regarding cessation of service over the Line either is pending with the Surface Transportation Board (Board) or with any U.S. District Court or has been decided in favor of complainant within the two-year period; and (4) the requirements at 49 CFR 1105.12 (newspaper publication) and 49 CFR 1152.50(d)(1) (notice to governmental agencies) have been met.

As a condition to this exemption, any employee adversely affected by the discontinuance of service shall be protected under *Oregon Short Line Railroad—Abandonment Portion Goshen Branch Between Firth & Ammon, in Bingham & Bonneville Counties, Idaho,* 360 I.C.C. 91 (1979). To address whether this condition adequately protects affected employees, a petition for partial revocation under 49 U.S.C. 10502(d) must be filed.

Provided no formal expression of intent to file an offer of financial assistance (OFA) [1] [2] to subsidize continued rail service has been received, this exemption will be effective on November 8, 2019, unless stayed pending reconsideration. Petitions to stay that do not involve environmental issues must be filed by October 18, 2019, and formal expressions of intent to file an OFA to subsidize continued rail service under 49 CFR 1152.27(c)(2) [2] must be filed by October 21, 2019.[3] Petitions for reconsideration must be filed by October 29, 2019, with the Surface Transportation Board, 395 E Street SW, Washington, DC 20423–0001.

A copy of any petition filed with the Board should be sent to WCL's

---

[1] Persons interested in submitting an OFA to subsidize continued rail service must first file a formal expression of intent to file an offer, indicating the intent to file an OFA for subsidy and demonstrating that they are preliminarily financially responsible. *See* 49 CFR 1152.27(c)(2)(i).

[2] The filing fee for OFAs can be found at 49 CFR 1002.2(f)(25).

[3] Because this is a discontinuance proceeding and not an abandonment, trail use/rail banking and public use conditions are not appropriate. Because there will be an environmental review during abandonment, this discontinuance does not require environmental review.

representative, Bradon J. Smith, Fletcher & Sippel LLC, 29 North Wacker Drive, Suite 800, Chicago, IL 60606.

If the verified notice contains false or misleading information, the exemption is void ab initio.

Board decision and notices are available at *www.stb.gov.*

Decided: October 2, 2019.

By the Board, Allison C. Davis, Director, Office of Proceedings.

**Eden Besera,**
*Clearance Clerk.*

[FR Doc. 2019–21842 Filed 10–8–19; 8:45 am]

**BILLING CODE 4915–01–P**

---

## SURFACE TRANSPORTATION BOARD

### Release of Waybill Data

The Surface Transportation Board (Board) has received a request from the Southern California Association of Governments (WB19–49—10/1/19) for permission to use select data from the Board's 2011–2015 Unmasked Carload Waybill Sample. A copy of this request may be obtained from the Board's website under docket no. WB19–49.

The waybill sample contains confidential railroad and shipper data; therefore, if any parties object to these requests, they should file their objections with the Director of the Board's Office of Economics within 14 calendar days of the date of this notice. The rules for release of waybill data are codified at 49 CFR 1244.9.

*Contact:* Alexander Dusenberry, (202) 245–0319.

**Aretha Laws-Byrum,**
*Clearance Clerk.*

[FR Doc. 2019–22060 Filed 10–8–19; 8:45 am]

**BILLING CODE 4915–01–P**

---

## OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

**[Docket No. USTR–2018–0001]**

### Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice.

**SUMMARY:** On January 23, 2018, the President imposed a safeguard measure on imports of certain solar products pursuant to a section 201 investigation. On February 14, 2018, the U.S. Trade Representative established procedures for interested persons to request product-specific exclusions from application of the safeguard measure.

On June 13, 2019, the U.S. Trade Representative published a notice granting certain requests for exclusions and excluding the products at issue from the safeguard measure's application. In particular, the U.S. Trade Representative excluded bifacial solar panels consisting only of bifacial solar cells. Since publication of that notice, the U.S. Trade Representative has evaluated this exclusion further and, after consultation with the Secretaries of Commerce and Energy, determined it will undermine the objectives of the safeguard measure. Accordingly, the U.S. Trade Representative has modified the Harmonized Tariff Schedule of the United States (HTSUS) to withdraw the exclusion of bifacial solar panels from application of the safeguard measure. The U.S. Trade Representative also has modified the HTSUS to make certain technical changes in connection with the safeguard measure.

**DATES:** The withdrawal of the exclusion for bifacial solar panels from application of the safeguard measure and technical changes will apply as of October 28, 2019.

**FOR FURTHER INFORMATION CONTACT:** Victor Mroczka, Office of WTO and Multilateral Affairs, at *vmroczka@ustr.eop.gov* or (202) 395–9450, or Dax Terrill, Office of General Counsel, at *Dax.Terrill@ustr.eop.gov* or (202) 395–4739.

**SUPPLEMENTARY INFORMATION:**

### A. Background

On January 23, 2018, the President issued Proclamation 9693 (83 FR 3541) to impose a safeguard measure under section 201 of the Trade Act of 1974 (19 U.S.C. 2251) with respect to certain crystalline silicon photovoltaic (CSPV) cells and other products (CSPV products) containing these cells. The Proclamation directed the U.S. Trade Representative to establish procedures for interested persons to request the exclusion of particular products from the safeguard measure. It also authorized the U.S. Trade Representative, after consultation with the Secretaries of Commerce and Energy, to exclude products by modifying the HTSUS with publication of a determination in the **Federal Register** regarding the exclusion of such products.

On February 14, 2018, the U.S. Trade Representative issued a notice setting out the procedures to request a product exclusion and opened a public docket. *See* 83 FR 6670 (the February 2018 notice). Under the February 2018 notice, requests for exclusion were to identify the particular product in terms of its

physical characteristics, such as dimensions, wattage, material composition, or other distinguishing characteristics, that differentiate it from other products that are subject to the safeguard measure. The notice said that the U.S. Trade Representative would not consider requests identifying the product at issue in terms of the identity of the producer, importer, or ultimate consumer, the country of origin, or trademarks or tradenames. The notice also provided that the U.S. Trade Representative would evaluate each request on a case-by-case basis and would grant only those exclusions that did not undermine the objectives of the safeguard measure.

The February 2018 notice indicated that the U.S. Trade Representative would consider exclusion requests filed no later than March 16, 2018. The Office of the U.S. Trade Representative (USTR) received 48 product exclusion requests and 213 comments responding to the various requests. The exclusion requests generally fell into seven categories, one of which concerned bifacial solar panels. Proponents asserted that the volume of bifacial solar panel production available for export to the United States was highly limited, that the products would not compete directly with CSPV products produced in the United States, and that the exclusion would not undermine the objectives of the safeguard measure.

On September 19, 2018, and June 13, 2019 (the June 2019 notice), the U.S. Trade Representative granted certain product exclusion requests in notices published in the **Federal Register** (83 FR 47393 and 84 FR 27684) and modified the HTSUS accordingly. In particular, based on the above assertions, the June 2019 notice specifically excluded from application of the safeguard measure "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells."

## B. Further Evaluation of the Bifacial Solar Panel Exclusion

USTR has received multiple inquiries, requests, and other comments from members of the public. Some have asserted that the bifacial solar panels exclusion granted in the June 2019 notice is broader than the category of products described in the exclusion requests submitted as of March 16, 2018. Others have stated that the exclusion will cause a significant increase in imports of bifacial solar panels, with projections that such a surge is imminent.

After evaluating newly available information from these and other sources demonstrating that global production of bifacial solar panels is increasing, that the exclusion will likely result in significant increases in imports of bifacial solar panels, and that such panels likely will compete with domestically produced monofacial and bifacial CSPV products in the U.S. market, the U.S. Trade Representative has determined, after consultation with the Secretaries of Commerce and Energy, that maintaining the exclusion will undermine the objectives of the safeguard measure.

## C. Withdrawal of the Bifacial Solar Panel Exclusion

Based on an evaluation of the factors set out in the February 2018 notice, and further consideration of the exclusion granted for bifacial solar panels in the June 2019 notice, the U.S. Trade Representative has determined after consultation with the Secretaries of Commerce and Energy to withdraw that exclusion.

Accordingly, as set out in the Annex to this notice, USTR is modifying subdivision (c)(iii) of U.S. note 18 to subchapter III of chapter 99 of the HTSUS to remove subdivision (c)(iii)(15), which implements the exclusion of bifacial solar panels.

## D. Technical Changes to the HTSUS

It has come to the attention of USTR that certain technical clarifications to the Annex will facilitate administration of the safeguard measure. Presidential Proclamation 6969 of January 27, 1997 (62 FR 4415) authorizes the U.S. Trade Representative to exercise the authority provided to the President under section 604 of the Trade Act of 1974 (19 U.S.C. 2483) to embody rectifications, technical or conforming changes, or similar modifications in the HTSUS. Pursuant to this delegated authority, the U.S. Trade Representative modifies the HTSUS to make the technical changes set out in the Annex to this notice.

## Annex

Effective with respect to articles entered for consumption, or withdrawn from a warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 28, 2019, U.S. note 18 to subchapter III of chapter 99 of the Harmonized Tariff Schedule of the United States (HTSUS) is modified by removing the following from subdivision (c)(iii):

"(15) bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells;"

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by redesignating current subdivisions (c)(iii)(16) and (c)(iii)(17) as subdivisions (c)(iii)(15) and (c)(iii)(16), respectively.

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by striking from subdivision (c)(i) the HTSUS number "8541.40.6030" and by inserting in lieu thereof "8541.40.6025".

U.S. note 18 to subchapter III of chapter 99 of the HTSUS is further modified by striking from subdivision (g) of such note the HTSUS number "8541.40.6020" and by inserting in lieu thereof "8541.40.6015".

**Jeffrey Gerrish,**
*Deputy United States Trade Representative, Office of the U.S. Trade Representative.*

[FR Doc. 2019–22074 Filed 10–8–19; 8:45 am]

**BILLING CODE 3290–F0–P**

## OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

**[Docket No. USTR–2019–0003]**

## Notice of Determination and Action Pursuant to Section 301: Enforcement of U.S. WTO Rights in Large Civil Aircraft Dispute

**AGENCY:** Office of the United States Trade Representative.

**ACTION:** Notice of determinations and action.

---

**SUMMARY:** The U.S. Trade Representative has determined that the European Union (EU) and certain member States have denied U.S. rights under the World Trade Organization (WTO) Agreement and have failed to implement WTO Dispute Settlement Body recommendations concerning certain subsidies to the EU large civil aircraft industry. The U.S. Trade Representative has determined to take action in the form of additional duties on products of certain member States of the EU, as specified in Annex A to this notice.

**DATES:** The additional duties set out in Annex A are applicable with respect to products that are entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 18, 2019.

**FOR FURTHER INFORMATION CONTACT:** For questions about the determinations in this investigation, contact Assistant General Counsel Megan Grimball, (202) 395–5725, or Director for Europe