Slip Op. 20-166

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **INVENERGY RENEWABLES LLC,** | |
| **Plaintiff,** | |
| **and** | |
| **SOLAR ENERGY INDUSTRIES ASSOCIATION, CLEARWAY ENERGY GROUP LLC, EDF RENEWABLES, INC. and AES DISTRIBUTED ENERGY, INC.,** | |
| **Plaintiff-Intervenors,** | |
| **v.** | |
| **UNITED STATES OF AMERICA, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, UNITED STATES TRADE REPRESENTATIVE ROBERT E. LIGHTHIZER, U.S. CUSTOMS AND BORDER PROTECTION, and ACTING COMMISSIONER OF U.S. CUSTOMS and BORDER PROTECTION MARK A. MORGAN,** | **Before: Judge Gary S. Katzmann Court No. 19-00192** |
| **Defendants,** | |
| **and** | |
| **HANWHA Q CELLS USA, INC. and AUXIN SOLAR, INC,** | |
| **Defendant-Intervenors.** | |

## <u>OPINION</u>

[The court denies Plaintiffs' motion for leave to file second supplemental complaints and denies Plaintiffs' motion to modify preliminary injunction.]

Dated:  November 19, 2020

Amanda Shafer Berman, John Brew and Larry F. Eisenstat, Crowell & Moring LLP, of Washington, DC and New York, NY, argued for plaintiff, *Invenergy Renewables LLC* and plaintiff-intervenors, *Clearway Energy Group LLC* and *AES Distributed Energy, Inc*. With them on the briefs were Frances Hadfield and Leland P. Frost.

Matthew R. Nicely and Daniel M. Witkowski, Akin, Gump, Strauss, Hauer & Feld LLP, of Washington, DC, argued for plaintiff-intervenor, *Solar Energy Industries Association.* With them on the brief was Julia K. Eppard.

Kevin M. O'Brien, Baker & McKenzie LLP, of Washington, DC, argued for plaintiff-intervenor, *EDF Renewables, Inc*. With him on the brief was Christine M. Streatfeild.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendants. With him on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director, and Joshua E. Kurland, Attorney.

John M. Gurley, Dianna Dimitriuc-Quaia, Taniel E. Anderson, Friederike S. Görgens, and Jessica R. DiPietro, Arent Fox LLP, of Washington, DC, argued for defendant-intervenors, *Hanwha Q CELLS USA, Inc*. and *Auxin Solar Inc*. With them on the briefs were Aman Kakar and Russell A. Semmel.

Katzmann, Judge:  In the most recent hearing in this ongoing litigation, counsel for the plaintiffs described the predicament of her clients as something akin to Whack-a-Mole. Counsel for the United States said it was more analogous to a game of PacMan. We need not choose between the two characterizations here but can say that this litigation has taken many twists and turns. The court for the fifth time addresses issues related to attempts to withdraw an exclusion from safeguard duties on imported bifacial solar modules, duties which the President imposed by proclamation to protect the domestic industry.[1]

In its prior decisions, without reaching the merits of the underlying challenges to the safeguard duties, the court determined that the actions of the Office of the United States Trade Representative ("USTR") in October 2019 and April 2020 to withdraw the exclusion of bifacial

---

[1] For purposes of this opinion, the term "solar modules" and "solar panels" are used interchangeably.

panels from the safeguard measure on solar products likely violated procedural requirements of

the Administrative Procedure Act ("APA").  See Order and Op. Granting Mot. for Prelim. Inj.,

Invenergy Renewables LLC v. United States, 43 CIT __, 422 F. Supp. 3d 1255 (2019), ECF No.

113 ("Invenergy I"); Order and Op. Den. Mot. to Show Cause, Invenergy Renewables LLC v.

United States, 44 CIT __, 427 F. Supp. 3d 1402 (2020), ECF No. 149 ("Invenergy II"); Order and

Op. Den. Mot. to Dissolve Prelim. Inj., Mots. to Dismiss and Granting Mot. to Suppl. Compl.,

Invenergy Renewables LLC v. United States, 44 CIT __, 450 F. Supp. 3d 1347 (2020), ECF No.

185 ("Invenergy III"); Order and Op. Den. Mot. to Dissolve Prelim. Inj., Mot. to Stay, Granting

Mot. to Modify Prelim. Inj., Mot. to Complete Administrative R., and Vacating USTR Decision,

Invenergy Renewables LLC v. United States, 44 CIT __, Slip Op. 20-144 (Oct. 15, 2020), ECF

No. 252, 253 ("Invenergy IV").  Accordingly, the court issued a preliminary injunction ("PI") to

enjoin implementation of withdrawals of Exclusion of Particular Products From the Solar Products

Safeguard Measure, 84 Fed. Reg. 27,684–85 (USTR June 13, 2019) ("Exclusion").  In the most

recent development, the President on October 10, 2020, announced his decision to withdraw by

proclamation an exclusion for bifacial solar panels from safeguard duties and to increase duties on

certain crystalline silicon photovoltaic ("CSPV") cells in year four of the safeguard measure from

the originally scheduled fifteen percent to eighteen percent.  Proclamation 10101 of October 10,

2020, To Further Facilitate Positive Adjustment to Competition From Imports of Certain

Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other

Products), 85 Fed. Reg. 65,639 (Oct. 16, 2020) ("Proclamation 10101").  Thus, with Proclamation

10101, bifacial solar panels are set to be subjected to safeguard duties once again.

Plaintiff Invenergy Renewables LLC ("Invenergy"), a renewable energy company,[2] joined by Plaintiff-Intervenors Solar Energy Industries Association ("SEIA"), Clearway Energy Group LLP ("Clearway"), EDF Renewables, Inc. ("EDF-R"), and AES Distributed Energy, Inc. ("AES DE") (collectively, "Plaintiffs"), challenged that October 2020 action under the umbrella of the prior litigation by seeking to incorporate Proclamation 10101 into their complaints and to the court's previously issued PI enjoining USTR from withdrawing its Exclusion. Pls.' Mot. for Leave to File Second Suppl. Compls., Oct. 17, 2020, ECF No. 257 ("Pls.' Mot. to Suppl. Compls."); Pls.' Emergency Appl./Mot. for Prelim. Inj. Modification or in the Alternative TRO, Oct. 20, 2020, ECF No. 263 ("Pls.' Mot. to Modify PI"). The United States, USTR, U.S. Trade Representative Robert E. Lighthizer, U.S. Customs and Border Protection ("CBP"), and CBP Acting Commissioner Mark A. Morgan (collectively, "the Government"), joined by Defendant-Intervenors Hanwha Q CELLS USA, Inc. ("Hanwha Q CELLS") and Auxin Solar Inc. ("Auxin Solar") (collectively, "Defendant-Intervenors"), oppose Plaintiffs' challenge. The court temporarily restrained the re-implementation of safeguard duties on bifacial solar products so that it could consider Plaintiffs' challenge. Order Granting Mot. for TRO, Oct. 24, 2020, ECF No. 270 ("First TRO Order"); Order Extending TRO, Nov. 6, 2020, ECF No. 283 ("Second TRO Order"). The court now denies both of Plaintiffs' motions and lifts its previously issued TRO. The parties may seek further recourse by filing separate actions.

---

[2] Invenergy describes itself as "the world's leading independent and privately-held renewable energy company." Invenergy's Comp. ¶ 14, Oct. 21, 2019, ECF No. 13.

## BACKGROUND

### I.        *Prior Proceedings*

The statutory framework at issue here is that of the APA and of Sections 201, 203 and 204 of the Trade Act of 1974, 19 U.S.C. §§ 2251–54.  As the court noted in <u>Invenergy I</u>, the APA sets out procedural requirements for notice-and-comment rulemaking by government agencies with respect to certain legal or policy decisions.  433 F. Supp. 3d at 1297.  The Trade Act lays out procedures by which the executive branch may implement temporary safeguard measures to protect a domestic industry from harm.  <u>Id.</u> at 1265–66 (citing 19 U.S.C. §§ 2251–54).  Section 202 dictates that, upon petitions from domestic entities or industries, the International Trade Commission ("ITC") may make an affirmative determination that serious injury or a threat of serious injury to that industry exists. 19 U.S.C. § 2252.  The President is then permitted to authorize discretionary safeguards to provide temporary relief to the at-risk domestic industry.  <u>Id.</u> § 2253. The statute prescribes in Section 203 certain factors which the President must consider before issuing safeguard measures and limits the duration of such measures.  <u>Id.</u> § 2253(a)(2), (e)(1).  The statute also outlines certain limits on Presidential action, including by limiting new action following the termination of safeguard measures regarding certain articles.  <u>E.g.</u>, <u>id.</u> § 2253(e). Further, the safeguard statute mandates that the President "shall by regulation provide for the efficient and fair administration of all actions taken for the purpose of providing import relief." <u>Id.</u> § 2253(g)(1).  Section 204 sets procedural forth procedural requirements and requires certain findings to be made by the President before a safeguard action can be modified.  <u>Id.</u> § 2254.

In January 2018, the President issued <u>Presidential Proclamation 9693 To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes,</u>

83 Fed. Reg. 3,541–51 (Jan. 25, 2018) ("Proclamation 9693"), announcing a safeguard measure

against imports of solar products after an affirmative determination of injury by the ITC.  These

duties were to remain in effect for a four-year period that began on February 7, 2018.  The

President delegated the process of "exclusion of a particular product from the safeguard measure"

to USTR.  Proclamation 9693, 83 Fed. Reg. at 3,543.  After a lengthy process, USTR decided to

exclude bifacial solar panels from safeguard duties.  Exclusion.  Four months later, in October

2019, Invenergy initiated litigation to enjoin the Government from implementing the Withdrawal

of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure, 84 Fed. Reg.

54,244–45 (USTR Oct. 9, 2019) ("First Withdrawal"), which would have ended the Exclusion.

Invenergy's Mot. for Prelim. Inj., Nov. 1, 2019, ECF No. 49.  On December 5, 2019, the court

issued a PI to enjoin USTR from reinstituting safeguard duties on certain bifacial solar panels

through implementation of the First Withdrawal.  Invenergy I, 422 F. Supp. 3d at 1294.  On April

14, 2020, the Government filed a status report to inform the court of the issuance of USTR's

Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar

Products, 85 Fed. Reg. 21,497–99 (USTR Apr. 17, 2020) ("Second Withdrawal"), which, like the

First Withdrawal, constituted a withdrawal of the Exclusion of bifacial solar panels from

safeguard duties.  Def.'s Status Report, ECF No. 155.  On May 27, 2020, the court issued a

decision in which it granted Plaintiffs' motion to supplement their complaints to include the

Second Withdrawal and denied the Government's motion to dissolve the preliminary injunction

because it had not proved sufficiently changed circumstances.  Invenergy III, 450 F. Supp. 3d at

1365.[3]  After further filings and another oral argument, on October 15, 2020, the court granted

Plaintiffs' cross-motion to modify the PI to enjoin the Second Withdrawal and simultaneously

vacated the First Withdrawal.  Invenergy IV, Slip Op. 20-144 at 44–45.  As with the initial

injunction, the modified injunction was granted upon finding a likelihood of success on the merits

of the two APA counts alone.  See id. at 22 ("[T]he court concludes that Plaintiffs . . . [showed]

that the Second Withdrawal was likely arbitrary and capricious and that they would suffer from

the same procedural harm through a decision that did not comply with APA requirements.").  The

court there observed:

> The court notes that if presented with an adequate record and explanation of
> USTR's action, the court could proceed, in accordance with well-established
> administrative law standards, to review USTR's decision to withdraw it previously
> granted exclusion from safeguard duties on imported bifacial solar modules.
> However, various procedural missteps by USTR mean that the court cannot reach
> that point now.  As the court has stated, "[t]he court acknowledges the Government
> and Defendant-Intervenors' concern that domestic industries may face a threat of
> material injury due to USTR's decision to exclude bifacial solar products from
> safeguard duties.   The court also acknowledges the concerns of Plaintiffs
> (consumers, purchasers and importers of utility-grade bifacial solar panels), who
> oppose safeguard duties that they claim increase the cost of bifacial solar panels."
> Invenergy III, 450 F. Supp. 3d at 1365 (citations omitted).  The court takes no
> position on the efficacy of safeguard duties in providing protection to the domestic
> solar industry or of a decision to exclude products from those safeguard duties.  Id.
> Once again, the court merely continues to require the Government to follow its own
> laws when it acts.

Invenergy IV, Slip Op. 20-144 at 45.  The court further ordered that the Government complete the

administrative record by December 3, 2020 and that the parties confer and submit a joint status

report on the status and schedule of further briefing by December 11, 2020.  Order Granting Def.'s

Consent Mot. for Extension of Time to File Administrative R., Nov. 2, 2020, ECF No. 275; Order

---

[3] On August 5, 2020, the Government filed an appeal of this decision in United States Court of
Appeals for the Federal Circuit.  Invenergy III, appeal docketed No. 2020-2130 (Fed. Cir. Aug. 5,
2020), ECF No. 240.

Granting Def.'s Consent Mot. for Extension of Time to File Joint Status Report, Nov. 13, 2020,

ECF. No. 290.

## II.       *Proclamation 10101 and Ensuing Litigation*

When the President has taken a safeguard measure to address serious injury to the domestic

industry under Section 201 of the Trade Act of 1974, Section 204 of the Trade Act directs the ITC

to monitor developments with respect to the domestic industry protected by the safeguard.  See 19

U.S.C. § 2254(a).  When, as here, the safeguard measure the President imposes under Section 203

of the Trade Act exceeds three years, the statute requires the ITC to submit a report with the results

of its monitoring efforts to the President and to Congress not later than the date that is the mid-

point of the initial period during which the action is in effect.  See id.

Pursuant to these statutory requirements and for the purpose of preparing a mid-term report

regarding the safeguard measure imposed by Proclamation 9693, the ITC initiated a monitoring

investigation on July 25, 2019, held a public hearing, and accepted written submissions from

interested parties to prepare the required report.  See Crystalline Silicon Photovoltaic Cells,

Whether or Not Partially or Fully Assembled Into Other Products: Monitoring Developments in

the Domestic Industry Institution and Scheduling Notice for the Subject Investigation, 84 Fed.

Reg. 37,674 (ITC Aug. 1, 2019).  The ITC then issued its mid-term monitoring report in February

2020.  Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into

Other Products: Monitoring Developments in the Domestic Industry, USITC Pub. 5021, Inv. No.

TA-201-075 at 1 (Feb. 2020).  The report found "a number of significant developments" in the

domestic industry for CSPV products," including an expanded U.S. module industry, "changes in

import volumes, and generally decreased prices."  Id.

Additionally, in March 2020, the ITC issued a report pursuant to a request from USTR under Section 204, 19 U.S.C. § 2254(a)(4), regarding the probable economic effect on the domestic solar cell and module manufacturing industry of modifying the safeguard measure to increase the level of the tariff-rate quota ("TRQ") on solar cells. Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products: Advice on the Probable Economic Effect of Certain Modifications to the Safeguard Measure, USITC Pub. 5032, TA-201-075 (Mar. 2020).

After receipt of the ITC's reports, Section 204 authorizes the President to reduce, modify, or terminate an action he has taken under Section 203. 19 U.S.C. § 2254(b)(1). On October 10, 2020, pursuant to that Section, the President issued Proclamation 10101. In the proclamation, the President noted the ITC's findings that: (1) the exclusion of bifacial modules from the safeguard measure will likely result in substantial increases in imports of bifacial modules if the Exclusion remains in effect; (2) such modules will likely compete with domestically produced CSPV products in the United States; and (3) the benefits to domestic CSPV module producers from an increased TRQ discussed elsewhere in the proclamation would likely be limited if the bifacial module exclusion remained in place. Proclamation 10101, 85 Fed. Reg. at 65,640 ¶ 6. He additionally noted the ITC's further finding that bifacial modules are likely to account for a greater share of the market in the future and can substitute for monofacial products in the various market segments, such that exempting imports of bifacial modules from the safeguard tariff would apply significant downward pressure on prices of domestically produced CSPV modules. Id. The President also stated that he had received a petition "from a majority of the representatives of the domestic industry with respect to each of the following modifications." Id. ¶ 7.

The President found that the "domestic industry has begun to make positive adjustment

to import competition, shown by the increases in domestic module production capacity, production, and market share." Id.  Invoking his authority under Section 204 to "reduce, modify, or terminate an action taken under Section 203 of the Trade Act when the President determines that the domestic industry has made a positive adjustment to import competition," the President determined that "it is necessary to revoke th[e] exclusion and to apply the safeguard tariff to bifacial panels" because that exclusion "has impaired and is likely to continue to impair the effectiveness of the action [he] proclaimed in Proclamation 9693."  85 Fed. Reg. at 65,640 ¶¶ 7, 9(a).  He further determined that to "achieve the full remedial effect envisaged by Proclamation 9693," it was necessary to increase "the duty rate of the safeguard tariff for the fourth year of the safeguard measure to proclaimed" in that Proclamation.  Id. at 65,640 ¶ 9(b).  The President modified the Harmonized Tariff Schedule of the United States ("HTSUS") accordingly, setting October 25, 2020, as the effective date for the modifications.  Id. at 65,640–42 cls. (1), (4), Annex.

On October 12, 2020, the Government notified the court of Proclamation 10101.[4]  Def.'s Status Report, Oct. 12, 2020, ECF No. 251.  Plaintiffs responded by filing a motion to supplement their complaints to include a challenge to Proclamation 10101.  See Pls.' Mot. to Suppl. Compls.[5] They then filed an emergency motion to modify the PI to explicitly enjoin Proclamation 10101,

---

[4] Proclamation 10101 was published in the Federal Register on October 16, 2020.  85 Fed. Reg. 65,639 (Oct. 16, 2020).

[5] Plaintiffs collectively filed a motion for leave to supplement their complaints and accompanying memorandum of support.  See Pls.' Mot. to Suppl. Compls.  However, each plaintiff filed separate proposed supplemental complaints.  See Pls.' Mot. to Suppl. Compls., Attach. 1, Oct. 17, 2020, ECF No. 257 ("Invenergy's Proposed Second Suppl. Compl."); Pl. Clearway's Proposed Second Suppl. Compl., Oct. 19, 2020, ECF No. 258; Pl.-Inter. SEIA's Proposed Second Suppl. Compl., Oct. 19, 2020, ECF No. 259; Pl.-Inter. AES DE's Proposed Second Suppl. Compl., Oct. 19, 2020, ECF No. 260; Pl.-Inter EDF-R's Proposed Second Suppl. Compl., Oct. 19, 2020, ECF No. 261.

and, in the alternative, for a TRO to temporarily enjoin <u>Proclamation 10101</u> until a hearing could be held on their outstanding motions.  Pls.' Mot. to Modify PI at 1.  Simultaneously, Defendant-Intervenors filed a conditional motion for a three-judge panel in the event that the court granted Plaintiffs' motion to supplement their complaints.  Conditional Mot. of Def.-Inters. for a Panel of Three Judges, Oct. 20, 2020, ECF No. 264.  The court ordered the Government and Defendant-Intervenors to respond to Plaintiffs' motion, Order Directing Resp. by Def. and Def.-Ints., Oct. 21, 2020, ECF No. 265, which those parties did on October 23, 2020, Def.'s Resp. to Pls.' Mot. to Amend the Ct.'s Prelim. Inj. or for a TRO, ECF No. 269 ("Def.'s Resp. to Mot. to Modify PI"); Def.-Inters.' Resp. to Pls.' Emergency Mot. to Modify Prelim. Inj., ECF No. 268 ("Def.-Inters.' Resp. to Mot. to Modify PI").

The court issued the TRO on October 24, 2020 to temporarily enjoin <u>Proclamation 10101,</u> as it affected bifacial solar panels, in order to preserve the status quo as the court considered Plaintiffs' allegations that <u>Proclamation 10101</u> violated the PI and Plaintiffs' motions to supplement their complaints and modify the PI.  First TRO Order.  On November 3, 2020, the Government and Defendant-Intervenors responded to Plaintiffs' motion to supplement their complaints.  Def.'s Resp. to Pls.' Mot. for Leave to File Second Suppl. Compl., ECF No. 277 ("Def.'s Resp. to Suppl. Compl."); Def.-Inters.' Resp. to Pl. and Pl.-Inters.' Mot. for Leave to File Second Suppl. Compl., ECF No. 279 ("Def.-Inters.' Resp. to Suppl. Compl.").  After a hearing on November 5, 2020, the court extended the TRO for an additional fourteen days while the court took Plaintiffs' motions and the Government's and Defendant-Intervenors' responses under advisement.  Second TRO Order.  At the request of the court, the parties filed supplemental briefs on November 10, 2020.  Pl. Invenergy's and Pl.-Inters. Clearway and AES DE's Suppl. Br. in Supp. of Emergency Mot. to Modify PI, ECF No. 286 ("Invenergy's Suppl. Br."); Pl.-Inters. SEIA

and EDF-R's Suppl. Br. in Supp. of Emergency Mot. to Modify PI, ECF No. 288 ("Pl.-Inters.'

Suppl. Br."); Def.'s Suppl. Br., ECF No. 285; Def.-Inters.' Post-Hearing Submission, ECF No.

287 ("Def.-Inters.' Suppl. Br.").

## JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(i), which provides

that the court "shall have exclusive jurisdiction of any civil action commenced against the United

States, its agencies, or its officers, that arises out of any law of the United States providing for . . .

[the] administration and enforcement" of tariffs and duties.

## DISCUSSION

The court denies both Plaintiffs' Motion for Leave to File Second Supplemental

Complaints and Plaintiffs' Motion to Modify the PI.  The court addresses each motion in turn.

### I.      *Plaintiffs' Motion for Leave to File Second Supplement Complaints*

Plaintiffs request leave to file second supplemental complaints to "incorporate facts related

to, and expand their claims to encompass," the President's withdrawal of the Exclusion in

Proclamation 10101.  Pls.' Mot. to Suppl. Compls. at 2.  The proposed second supplemental

complaints add, inter alia, allegations that Proclamation 10101 "violates the Trade Act's

restrictions on the imposition and modification of safeguard measures and does not comply with

the process prescribed by that Act for Presidential action," and that "[i]nsofar as Section[s] 203–

04 of the Trade Act allows Defendants to impose a safeguard measure pursuant to [Proclamation

10101], they violate Plaintiffs' due process rights."  Pls.' Mot. to Suppl. Compls., Attach. 1 ¶¶

101, 112, Oct. 17, 2020, ECF No. 257 ("Invenergy's Proposed Second Suppl. Compl.").  The

proposed second supplemental complaints further allege that "[i]nsofar as [Proclamation 10101]

must be implemented by Defendants through subsequent actions, such actions also violate the . . .

APA procedural requirements," and must be set aside because they are "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." Id. at ¶¶ 83, 90. Plaintiffs ask that Proclamation 10101 be declared unlawful and the Government be enjoined from implementing the proclamation, including by collecting duties on merchandise covered by the Exclusion or modifying the HTSUS. Id. at 28 (Prayer for Relief). In addition, SEIA's complaint also challenges the modification of the safeguard in year four to reduce the duty rate on modules to eighteen percent. SEIA's Proposed Second Suppl. Compl. ¶ 50, Oct. 19, 2020, ECF No. 259.

Relying on the fact that Proclamation 10101 withdraws the same exclusion of bifacial solar panels at issue in this litigation and claiming that Proclamation 10101 is "unlawful for many of the same reasons as USTR's prior withdrawal actions," Plaintiffs argue that supplementation would be both permissible and efficient. Pls.' Mot. to Suppl. Compls. at 2. They specifically identify Sections 203 and 204 of the Trade Act as key considerations in the court's analysis of both their initial claims regarding the First Withdrawal and Second Withdrawal and their proposed supplemental claims regarding Proclamation 10101. Id. at 9. The Government and Defendant-Intervenors oppose Plaintiffs' motion to supplement their complaints, arguing instead that the President's revocation of the Exclusion in Proclamation 10101 represents a "separate Executive action from USTR's administrative determinations at issue in this lawsuit." Def.'s Resp. to Suppl. Compls. at 8; Def.-Inters.' Resp. to Suppl. Compls. at 11–12.

While leave to amend the pleadings shall, under USCIT Rule 15, be freely granted, the decision of whether to permit the filing of a supplemental complaint falls within the discretion of the court after consideration of all relevant factors. Intrepid v. Pollock, 907 F.2d 1125, 1128–29 (Fed. Cir. 1990) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Among those factors properly informing the court's discretion are the relationship between the initial cause of action and the

proposed amendments and the risk of prejudice to the parties.  Id.  In particular, where "later events are directly related to those averments" constituting the basis of the original claims and there is "no substantive prejudice" to the nonmovant, both the Federal Circuit and the Supreme Court have held that amendment is proper.  Id. at 1129, 1131; Foman, 371 U.S. at 179, 181 (finding motion to amend was improperly denied where there was no prejudice to defendant and supplemental complaint asserted a second claim against same defendant and relating to same transaction); Griffin v. School Board, 377 U.S. 218, 227 (1964) (finding amendment proper where there was no prejudice to defendant and supplemental claims were "part of the same old cause of action").

The court is not persuaded by Plaintiffs' arguments that the existing action and proposed second supplemental complaints are sufficiently related to justify amendment.  Plaintiffs' proposed second supplemental complaints do not "directly relate[]" to the claims and actions forming the basis of the existing action.  Intrepid, 907 F.3d at 1129.  Rather, they involve actions undertaken by the President, a party not implicated in Plaintiffs' complaints or supplemental complaints and seek relief against the President not contemplated by Plaintiffs' prior pleadings.  Those earlier pleadings allege that USTR violated Plaintiffs' due process rights by failing to provide adequate notice and opportunity for comment under the APA, and by failing to defer to Presidential authority and procedural requirements under Sections 203 and 204 of the Trade Act.  Invenergy's Suppl. Compl. ¶¶ 77–81, May 27, 2020, ECF No. 187.  In contrast, the proposed Second Supplemental Complaints allege that Proclamation 10101 violates the APA only "insofar as [it] must be implemented by Defendants," and that the President's own actions violated the procedural requirements of the Trade Act.  Invenergy's Proposed Second Suppl. Compl. ¶¶ 91, 101.  The USTR's administrative proceedings at issue in the existing complaints are entirely separate from the ITC's midterm review of the safeguard which led to the modification of the safeguard by the

President in issuing <u>Proclamation 10101</u>, now challenged by Plaintiffs.  In short, the core issues are different.[6]

Plaintiffs argue that their claims regarding <u>Proclamation 10101</u> constitute "the same statutory and constitutional claims" as their existing allegations against USTR and involve "legal and factual issues" which "overlap substantially."  Invenergy's Suppl. Br. at 3.  With respect to the Trade Act, Plaintiffs' previous pleadings allege that by withdrawing the <u>Exclusion</u> USTR violated Section 203's requirement that the President "provide for the efficient and fair administration of all actions taken for the purpose of providing import relief under this part," 19 U.S.C. § 2253(g), and Section 204's requirements for Presidential action prior to the modification of a safeguard action, 19 U.S.C. § 2254(b).  Invenergy's Proposed Second Suppl. Compl. at ¶¶ 78, 79.  In their proposed amended pleading, Plaintiffs argue that <u>Proclamation 10101</u> also violates Section 203 by re-imposing a safeguard measure less than two years after the prior measure terminated and violates Section 204 insofar as it fails to satisfy that Section's requirement that the President only "reduce modify or terminate" safeguard measures upon finding "positive adjustments to import competition" and following industry request.  Invenergy's Proposed Second Suppl. Compl. at ¶¶ 97–101.

The court finds that the current and proposed claims are not directly related such that they warrant amendment sought by Plaintiffs.  Although Plaintiffs' proposed supplemental claims under Sections 203 and 204 of the Trade Act involve the same statutory scheme as the existing complaints, they are far from the same statutory claims.  Rather, as noted, the proposed second

---

[6] SEIA's proposed second supplemental complaint is further removed from the core issue in the underlying APA litigation by adding a challenge to the rate of duty in year four of the safeguard, a determination that does not affect the bifacial exclusion in any way and is entirely unrelated to the underlying litigation – but is still the subject of <u>Proclamation 10101</u>.  SEIA's Proposed Second Suppl. Compl. ¶ 50.

supplemental complaints introduce a new cause of action against the President for violation of his

own statutory duties under the Trade Act.  Invenergy's Proposed Second Suppl. Compl. at ¶¶ 96–

101.  This new claim is distinct from Plaintiffs' original allegations that USTR overstepped

statutory bounds and exercised authority "not delegated to USTR" by the President by issuing the

First Withdrawal and Second Withdrawal.  Invenergy's Suppl. Compl. at ¶ 79.

 Nor is there a compelling argument that Plaintiffs' proposed additional claims under the

APA are adequately related to the existing complaints to require the court to grant Plaintiffs'

motion.  With respect to the APA, Plaintiffs' original claims hinge on the procedural rulemaking

requirements imposed on agencies by the APA, and USTR's alleged failure to afford due process

to Plaintiffs by complying with those requirements.  Plaintiffs' proposed supplemental claims

address the APA only with respect to USTR's likely implementation of Proclamation 10101,

Invenergy's Proposed Second Suppl. Compl. at ¶¶ 83, 91.  As the President is not himself subject

to the APA, Franklin v. Massachusetts, 505 U.S. 788, 801–801 (1992), this attempt to formulate

claims under the APA regarding Proclamation 10101 is too tenuous a connection to warrant

granting of Plaintiffs' motion.

 Finally, there is no evidence that Plaintiffs will be prejudiced by denial of their motion to

amend.  Rather, Proclamation 10101 involves a distinct and separate action governed by different

procedures.  As such, the court finds that efficient resolution of Plaintiffs' claims regarding

Proclamation 10101 is most likely to be achieved in a separate proceeding.  Rather than requiring

the parties to "separately litigat[e] many of the same merits issues" across multiple actions, Pls.'

Mot. to Suppl. Compls. at 11, recognizing the distinct nature of Plaintiffs' claims stemming from

Proclamation 10101 will promote efficient resolution of the already-pleaded issues surrounding

the First Withdrawal and Second Withdrawal without prejudice to Plaintiffs' ability to re-file their supplemental claims as a separate action.

For these reasons, the court acts within its discretion in denying Plaintiffs' Motion for Leave to File Second Supplemental Complaints.

## II.      *Plaintiffs' Motion to Modify the Preliminary Injunction*

Plaintiffs move for modification of the PI to further enjoin the President's decision in Proclamation 10101 to end the Exclusion.  Pls.' Mot. to Modify PI at 13.  Plaintiffs claim that Proclamation 10101 attempts to implement the same withdrawal of the exclusion for bifacial solar panels under the safeguard measure on CSPV products that the court previously enjoined.  Id. at 2.  Plaintiffs contend that Proclamation 10101 constitutes a change in circumstances that should be enjoined "in order to continue to protect Plaintiffs from harm pending final adjudication of the lawfulness of the government's actions."  Id. at 13.  Citing the court's recent opinion in Invenergy IV that noted the court must preserve the status quo during the pendency of an appeal, Plaintiffs' further argue modification of the PI to include Proclamation 10101 is necessary.  Id. at 16. Plaintiffs then argue that, even though they need not re-prove each factor of the PI, they nevertheless are likely to succeed on the merits of their challenge to the withdrawals of the Exclusion, id. at 17–35, Plaintiffs face irreparable procedural and economic harms from implementation of Proclamation 10101, id. at 26–41, and the balance of equities and public interest weigh in favor of enjoining Proclamation 10101, id. at 41–42.

Plaintiffs alleged in their initial response to the Government's status report regarding Proclamation 10101, Pls.' Resp. to Def.'s Status Report at 3, Oct. 15, 2020, ECF No. 254, and in their motion to modify the PI that Proclamation 10101 constituted a violation of the previously issued PI by "seek[ing] to bypass the [c]ourt's review -- and to circumvent the [c]ourt's PI," Pls.'

Mot. to Modify PI at 1.  Further, in their motion, Plaintiffs noted the Government's previous statements to the court that "it would not make a withdrawal of the <u>Exclusion</u> effective, and would not impose safeguard duties on bifacial panels, unless and until the [c]ourt lifted its PI." <u>Id.</u> at 14. Plaintiffs also claimed that "[p]roperly construed, the extant PI should be all that is necessary to prevent [<u>Proclamation 10101</u>]'s withdrawal of the <u>Exclusion</u> from becoming effective." <u>Id.</u> at 15. At oral argument, Plaintiffs clarified that, while they claimed that <u>Proclamation 10101</u> violates the PI, they moved to modify the PI "so that there can be no question going forward at least that defendants are barred from entering the proclamation into effect and imposing the safeguard measure on bifacial panels under the proclamation or under USTR's prior withdrawal actions." Tr. of Hr'g of Nov. 5, 2020 at 14, Nov. 6, 2020, ECF No. 284.

The Government and Defendant-Intervenor responded in opposition to Plaintiffs' motion. The Government summarized <u>Proclamation 10101</u> as "a new determination, by the President, under a different statutory authority than that on which USTR relied, which is not subject to the procedural requirements of the APA that this [c]ourt has found lacking with respect to USTR's actions."  Def.'s Resp. to Mot. to Modify PI at 2.  Thus, the Government argues that modification of the PI to include <u>Proclamation 10101</u> would not be appropriate in light of the narrower standard of review over Presidential actions and Plaintiffs' failure to meet the four factors necessary for injunctive relief.  <u>Id.</u> at 2–3.  Further, the Government explains that, "[b]ecause <u>Proclamation 10101</u> provides an additional and wholly distinct basis for applying the safeguard duties to bifacial products, [P]laintiffs' likelihood of success on their challenge to the Proclamation cannot rest on their challenges to the USTR's prior actions."  <u>Id.</u> at 10.  Thus, the Government argues that Plaintiffs would be required to prove each of the injunctive factors anew as they relate to <u>Proclamation 10101</u>.  <u>Id.</u> at 11–12.  Defendant-Intervenors similarly argue that Plaintiffs "have not

met their burden to warrant modification of the [PI]" and dispute Plaintiffs' characterization of the status quo as inclusive of the withdrawal.[7]  Def.-Inters.' Resp. to Mot. to Modify PI at 13–15.  The Government and Defendant-Intervenors then argue that Plaintiffs have not carried their burden of proving their success on the injunctive factors.  Def.'s Resp. to Mot. to Modify PI at 12–29: Def.-Inters.' Resp. to Mot. to Modify PI at 16–42.

As to Plaintiffs' claims of a violation of the PI, the Government responded that, despite its representations on behalf of USTR, it "never represented that the President would withhold issuance of a midterm proclamation, or decline to use his authority under section 204 to take action in response to congressionally-mandated ITC issue[d] midterm reports."  Def.'s Resp. to Mot. to Modify PI at 9.  Further, at oral argument, the Government stated that the PI could not be construed to cover hypothetical, future Presidential action.  Tr. of Hr'g of Nov. 5, 2020 at 44–45.  Finally, the Government argues that the President's action, resulting from the ITC's midterm review that began in July 2019 before the initiation of this litigation, does not circumvent the PI.  Id. at 45.

As the court noted in Ad Hoc Shrimp Trade Action Committee v. United States, in order for the court to modify a PI, the moving party must show that (1) "a change in circumstances of the parties from the time the injunction would issue that would make the modification necessary"; and (2) continuation of the unmodified PI would be inequitable.  32 CIT 666, 670, 562 F. Supp.

---

[7] Defendant-Intervenors now argue that the Exclusion is one of the contested agency decisions within this litigation.  See Def.-Inters.' Resp. to Mot. to Modify PI at 14; Tr. of Hr'g of Nov. 5, 2020 at 82–84; Def.-Inters.' Suppl. Br. at 7–8.  The court rejects this characterization.  Defendant-Intervenors have never filed a separate action or cross-complaint within this action challenging the Exclusion before the court.  See also Tr. of Hr'g of Nov. 5, 2020 at 47 (the Government explaining that it nor any other party has challenged the Exclusion).  Thus, the court does not have subject-matter jurisdiction over review of the Exclusion and would have no basis for ruling on the procedural or substantive merits of Defendant-Intervenors' grievances with the Exclusion.  If Defendant-Intervenors' wish to expressly challenge the merits of the Exclusion, then they may do so by initiating such a challenge following the rules of this court.

2d 1383, 1388 (2008).  The first requirement is based on the Supreme Court's decision in Sys

Fed'n No. 91 v. Wright, in which it stated that "[t]he source of the power to modify is of course

the fact that an injunction often requires continuing supervision by the issuing court and always a

continuing willingness to apply its powers and processes on behalf of the party who obtained that

equitable relief."  364 U.S. 642, 647 (1961); see also United States v. United Shoe Machinery

Corp., 391 U.S. 244, 249 (1968) (holding that if an injunction has failed to achieve its intended

results, the court has the power to modify the order).  The court thus addresses whether

modification of the PI is required in order to fulfill its original objective and to avoid inequity to

Plaintiffs.[8]

The court denies Plaintiffs' motion to modify the PI because it determines that

Proclamation 10101 does not constitute a change in circumstances requiring modification.  As the

court noted in Invenergy IV, the purpose of the PI, as originally issued and as modified, is "to

shield Plaintiffs from the effects of an agency decision that was undertaken in violation of the

APA."  Slip Op. 20-144 at 20.  Fundamentally, the President is neither an agency nor subject to

the APA under well-settled, long-standing decisions by the Supreme Court.  See Franklin, 505

U.S. at 800–01 ("Out of respect for the separation of powers and the unique constitutional position

---

[8] Plaintiffs propose that the court may modify the PI in order to preserve the status quo.  Pls.' Mot.
to Modify PI at 16.  However, as the court noted in its past opinion, that standard applies in the
context of modification of a PI while an appeal is pending.  Invenergy IV, Slip Op. 20-144 at 18
("The caselaw is clear that a court may exercise continuing supervision over a PI while an
interlocutory appeal is pending to the extent necessary to maintain the status quo." (citing Amado
v. Microsoft Corp., 517 F.3d 1354, 1358 (Fed. Cir. 2008); Prudential Real Estate Affiliates, Inc.
v. PPR Realty, Inc., 204 F.3d 867, 880 (9th Cir. 2000); Sierra Club, Lone Star Chapter v. Cedar
Point Oil Co., 73 F.3d 546, 578 (5th Cir. 1996)).  Because the court declines to modify the PI
further, the court need not address the impact of the pending appeal on the present decision.
Further, for the reasons stated below, the court concludes that Proclamation 10101 does not impact
that status quo set by the PI.

of the President, we find that textual silence is not enough to subject the President to the provisions of the APA."). Thus, there is no way in which modification of the PI to include Proclamation 10101 would shield Plaintiffs from an agency decision that runs afoul of the APA.[9] The court also concludes that Proclamation 10101 is not a violation of the PI despite directing re-implementation of safeguard duties on bifacial solar products, the same effect of USTR's enjoined actions. Because the President acted to withdraw the Exclusion under different statutory authority than that delegated to the USTR, any implementation of safeguard duties on bifacial products does not violate the court's PI, which was premised solely upon legislative restrictions imposed on USTR by the APA.[10] Any inequity faced by Plaintiffs is not implicated by the protection of the PI or within the scope of the current litigation. Plaintiffs are not without recourse to have those alleged inequities addressed by this court but, because the court denies the motion to file second supplemental complaints, Plaintiffs must do so under a separate action. Thus, the Plaintiffs' motion to modify the PI is denied.

---

[9] None of Plaintiffs' cited cases require modification of a PI to include wholly separate action by a different government actor under different legal authority, but merely explain that a court has the power to modify a PI to preserve the status quo, in the event of changed circumstances, or where it is necessary to achieve the PI's purpose. See Pls.' Mot. to Modify PI at 14–16 (citing SKF USA Inc. v. United States, 28 CIT 170, 184, 316 F. Supp. 2d 1322, 1335–36 (2004); Sys. Fed'n No. 91, 364 U.S. 642, 647 (1961); Transgo Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1030 (9th Cir. 1985); Pro Edge L.P. v. Gue, 411 F. Supp. 2d 1080 (N.D. Iowa 2006); 1250 24th Street Associates Ltd. v. Brown, 684 F. Supp. 326, 329–30 (D.D.C. 1988)). See also Invenergy's Suppl. Br. at 7. Proclamation 10101 is not analogous to any of the situations addressed in those cases.

[10] Plaintiffs contend that Proclamation 10101 was issued to circumvent the PI. See, e.g., Invenergy's Suppl. Br. at 7 ("[T]he obvious intent of the 2020 Proclamation is to circumvent this [c]ourt's PI . . . ."). The court notes that the midterm investigation and review of the safeguard was commenced pursuant to statute in July 2019 prior to the initiation of this litigation which resulted in the PI. See Background, supra, Sec. II. The court thus declines to conclude on the record now before it that Proclamation 10101 is a deliberate circumvention of the court's past decisions directed at the actions of USTR.

## CONCLUSION

Because <u>Proclamation 10101</u> constitutes a distinct action related to the safeguard measure that presents questions of law and fact separate from USTR's action at issue in the present case, the court exercises its discretion and denies Plaintiffs' Motion to File Second Supplemental Complaints.  For similar reasons, the court also denies Plaintiffs' Motion to Modify the PI.

**SO ORDERED.**

*/s/   Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated:  <u>November 19, 2020</u>
         New York, New York