# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| INVENERGY RENEWABLES LLC, ) | |
| ) | |
| Plaintiff, ) | |
| and ) | |
| ) | |
| SOLAR ENERGY INDUSTRIES ) | |
| ASSOCIATION, CLEARWAY ENERGY ) | |
| GROUP LLC, EDF RENEWABLES, INC., and ) | |
| AES DISTRIBUTED ENERGY INC., ) | |
| ) | Before: Judge Gary S. Katzmann |
| Plaintiff-Intervenors, ) | Court No. 19-00192 |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, et al., ) | |
| ) | |
| Defendants. ) | |

## **PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

# TABLE OF CONTENTS

**Page(s)**

I. USTR Lacked Delegated Authority To Withdraw The Exclusion ................................... 1

II. USTR Lacked Statutory Authority To Withdraw The Exclusion..................................... 6

    A. The April Withdrawal Violates Section 204 of the Trade Act .............................. 6

    B. The April Withdrawal Violates Section 203 of the Trade Act .............................. 8

III. USTR Lacked Inherent Authority To Withdraw The Exclusion ................................... 10

Conclusion ................................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ...........................................................................................................1

*King v. Burwell*,
    576 U.S. 473 (2015) ...........................................................................................................3

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
    529 F.3d 1352 (Fed. Cir. 2008) ........................................................................................10

*United States. v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) .............................................................................................9

**Statutes**

5 U.S.C. § 553(b)(2), (c) .............................................................................................................2

5 U.S.C. § 553(b)(c) ...................................................................................................................2

19 U.S.C. § 2253 ................................................................................................................5, 8, 9

19 U.S.C. § 2254 ....................................................................................................................6, 7

**Regulations and Other Authorities**

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 32,181 (July 11, 2018) ................................................4

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,236 (Sept. 18, 2018) .............................................4

*Exclusion of Particular Products From the Solar Products Safeguard Measure*,
    83 Fed. Reg. 47,393 (Sept. 19, 2018) ................................................................................3

*Exclusion of Particular Products From the Solar Products Safeguard Measure*,
    84 Fed. Reg. 27,684 (June 13, 2019) .................................................................................3

*Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6,670 (Feb. 14, 2018) ....................................................................................................................3, 6

*Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4,756 (Jan. 27, 2020) ................................................................................................... 2-3

Proclamation 9693 of January 23, 2018, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3,541 (Jan. 23, 2018) ........................................................ *passim*

Proclamation 9704 of March 8, 2018, *Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619 (Mar. 15, 2018) ..................................................................5

Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ..............................................................................5

Proclamation 10101 of October 10, 2020, *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020) ........................................................................7

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Mar. 19, 2018) ........................................................4

Plaintiffs Invenergy Renewables LLC and Plaintiff-Intervenors Clearway Energy Group LLC, AES Distributed Energy Inc., EDF Renewables, Inc., and Solar Energy Industries Association ("Plaintiffs") respectfully submit this Supplemental Reply in support of their Motion for Judgment on the Administrative Record and Supporting Memorandum, ECF No. 302 ("Opening Br."), in order to address the new arguments raised in Defendants' Corrected Response to that Motion, ECF No. 316-1 ("Corrected Response").

In their Corrected Response, submitted two months after Plaintiffs pointed out that Defendants' original Response failed to address USTR's authority to issue the April Withdrawal, Defendants proffer several half-baked rebuttals to Plaintiffs' argument that the April Withdrawal violated both Proclamation 9693 and the safeguard statute. Defendants' arguments fail to show that the April Withdrawal is lawful. The Court should therefore set the April Withdrawal aside.

I. **USTR Lacked Delegated Authority to Withdraw the Exclusion.**

Plaintiffs explained in their opening brief that, in Proclamation 9693, President Trump did not delegate to USTR the authority to withdraw exclusions. Opening Br. at 61. In response, Defendants assert that Annex I, paragraph 18.d gives USTR the authority to "modify or terminate" exclusions. Corrected Response at 54. The Court should reject this argument.

Defendants' invocation of Annex I as the source of USTR's authority to withdraw the Exclusion is impermissible *post hoc* rationalization by litigation counsel. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The courts may not accept . . . counsel's *post hoc* rationalizations for agency action[.]"). As Plaintiffs noted in their original Reply, *see* ECF No. 312 at 5, neither the specific language cited by Defendants nor paragraph 18.d of Annex I more generally are referenced by USTR in the April Withdrawal, or even in the unpublished Gerrish Memo. *See* AR3458-59. The January Notice, which invited comments on whether to withdraw the Exclusion, also does not reference Annex I at all. *See* 85 Fed. Reg. 4,756 (Jan. 27,

2020). All of those documents refer only to the President's delegation of authority to *grant* exclusions in the main text of the Proclamation. The absence of any invocation of Annex I as authority to withdraw the Exclusion is glaring, given that (a) parties commented that USTR lacked authority to withdraw the Exclusion, (b) the Administrative Procedure Act ("APA") requires that proposed rules identify the legal authority for the proposed action, 5 U.S.C. § 553(b)(2), and (c) the APA mandates that final rules include a statement of basis and purpose, 5 U.S.C. § 553(c). Because USTR has *never* relied on Annex I as delegating it authority to withdraw an exclusion, the Court should not now find such broad authority in that unlikely source.

In any event, Defendants' interpretation of Annex I of Proclamation 9693 is unreasonable. Defendants rely on an altered fragment of a sentence from Annex I. *See* Corrected Response at 54 (quoting 83 Fed. Reg. 3,541, 3,547 (Jan. 23, 2018)). But the sentence as it actually appears in Annex I does not include the term "exclusion determination" as Defendants suggest. Furthermore, the full sentence provides that USTR is authorized "to specify, subsequent to the effective date specified in this note, that such CSPV cells and modules will be considered 'goods excluded from the application of relief' upon publication by the USTR of a notice in the Federal Register." 83 Fed. Reg. at 3,547. This language suggests an intent to give USTR the power to modify the HTSUS to reflect the *grant* of an exclusion, not the withdrawal. Similarly, the text of the Proclamation itself specifically authorizes USTR to grant product exclusions and to modify the HTSUS to reflect those exclusions, but does not even raise the possibility of USTR withdrawing such exclusions.

In contrast, Proclamation 9693 explicitly gives USTR the authority to revise the list of excluded developing countries, or to suspend the exclusion for developing countries entirely.[1] Thus, President Trump plainly knew how to delegate to USTR the authority to withdraw or modify an exclusion—but chose not to give USTR that authority over product-specific exclusions granted pursuant to Proclamation 9693.  To now interpret Annex I to allow USTR to withdraw product-specific exclusions is inconsistent with the text of the Proclamation and its overall architecture. *See* Reply at 6-7 (discussing text and structure of Proclamation).  It is also inconsistent with the broader statutory scheme that provides for safeguard measures to be progressively trade liberalizing.  *See* Opening Br. at 63, 65-67 (describing statutory scheme); *King v. Burwell*, 576 U.S. 473, 492-98 (2015) (declining to adopt interpretation of provision in statute that would undermine broader statutory scheme).

Furthermore, the procedures that USTR established pursuant to Proclamation 9693 to govern the exclusion request process did not even hint that USTR had authority to withdraw product exclusions, or that exclusions granted might be temporary.[2]  Nor did the notices granting product exclusions.[3]  The absence of any reference to exclusions being temporary is notable, given that USTR was explicit in this regard when granting exclusions from the Section 301 duties

---

[1] [1] 83 Fed. Reg. at 3,543 (providing that if certain criteria are met, "the USTR is authorized, upon publication of a notice in the Federal Register, to revise subdivision (b) of Note 18 in Annex I to this proclamation to remove the relevant country from the list [of excluded developing countries] or suspend operation of that subdivision [excluding developing countries], as appropriate").

[2] *See Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6,670 (Feb. 14, 2018).

[3] *See, e.g., Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 47,393 (Sept. 19, 2018); *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684 (June 13, 2019).

imposed on Chinese products.[4]  The procedures established by the Department of Commerce for exclusions from the Section 232 duties on steel and aluminum likewise were explicit in stating that the exclusions were only temporary.[5]  USTR's failure to state in the February 2018 Exclusion Procedures, or in the notices announcing exclusions thereunder, that such exclusions might later be withdrawn strongly indicates that USTR did not believe that it had been granted the authority to withdraw exclusions by Proclamation 9693.

Finally, even if Proclamation 9693 theoretically could be read as providing USTR authority to withdraw exclusions, USTR was still required to publish any procedures for doing so within 30 days of the date of Proclamation 9693, *see* 83 Fed. Reg. at 3,543, as opposed to almost two years later.  Defendants' assertion to the contrary (Corrected Response at 56) is inconsistent with the text of Proclamation 9693, which broadly directs USTR to publish procedures for "requests for exclusions"—meaning any exclusions that were not announced by President Trump in Proclamation 9693 itself.  In the Section 232 context, President Trump's proclamations similarly

---

[4] *Procedures To Consider Requests for Exclusion of Particular Products From the Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 32,181, 32,182 (July 11, 2018) ("Any exclusion will be effective starting from the July 6, 2018 effective date of the additional duties, and extend for one year after the publication of the exclusion determination in the Federal Register."); *Procedures To Consider Requests for Exclusion of Particular Products From the Additional Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,236 (Sept. 18, 2018) (providing for exclusions lasting one year from date exclusion is published).

[5] *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,111-12 (Mar. 19, 2018) ("Exclusions will generally be approved for one year.").

directed the Secretary to "issue procedures for the requests for exclusion."[6]  As noted above, those procedures not only covered the process for parties to request an exclusion, but provided details about how the entire exclusion process would be administered—and specifically stated that exclusions would be only temporary.  Thus, "procedures for requests for exclusion" was understood to mean the entirety of the exclusions process, not just initial requests for product exclusions.  Notably, USTR did not interpret the President's directive in Proclamation 9693 as being limited only to procedures for parties to make an initial exclusion request.  Rather, USTR also established a process for comments on the requests of other parties and indicated when exclusions, if granted, would take effect.  *See* 83 Fed. Reg. at 6,671-72.  Again, USTR's own behavior indicates that, at least initially, it understood its obligation to set up a complete process for any and all exclusions from the safeguard measure within 30 days of Proclamation 9693, as opposed to setting up one process to grant exclusions within that timeframe and constructing a separate process to consider withdrawing them two years later.

Defendants' interpretation of Proclamation 9693 is also inconsistent with the safeguard statute's directive that the President "shall by regulation provide for the efficient and fair administration of all actions taken for the purpose of providing import relief under this part." 19 U.S.C. § 2253(g)(1).  Requiring USTR to inform interested parties how exclusions would be administered—including whether product exclusions could be withdrawn—before parties requested and relied on exclusions is in keeping with that requirement.  Informing parties that an exclusion that they had relied upon is actually subject to withdrawal at USTR's discretion, based on an entirely new list of factors, is not.  Thus, USTR acted beyond both its delegated authority

---

[6] *See* Proclamation 9704 of March 8, 2018, *Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619, 11,621 (Mar. 15, 2018); Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, 11,627 (Mar. 15, 2018).

under Proclamation 9693 and in a manner inconsistent with the safeguard statute when it withdrew the bifacial panel Exclusion in April 2020.

## II.     USTR Lacked Statutory Authority to Withdraw the Exclusion.

In their Corrected Response, Defendants offer several arguments as to why the April Withdrawal is consistent with the safeguard statute. Defendants' arguments are unconvincing.

### A.     The April Withdrawal Violates Section 204 of the Trade Act.

Plaintiffs demonstrated in their opening brief that the April Withdrawal was issued in violation of the procedures for modifying a safeguard action set forth in Section 204 of the Trade Act, and that the withdrawal of the Exclusion is not a permissible modification under the statute. Opening Br. at 65-67. Defendants responded by asserting that Plaintiffs are wrong to suggest that the safeguard statute does not allow modifications of a safeguard measure outside of the Section 204 process because that would mean that the original Exclusion was unlawful. Corrected Response at 54. The legality of the original Exclusion has never been challenged, and thus the Court has no reason to address Defendants' contention.

Furthermore, Defendants ignore that Proclamation 9693 specifically authorized the issuance of product exclusions, and thus USTR's grant of the bifacial Exclusion was a matter of administration of the safeguard measure in its *original* form, not a modification of the measure. There is no question that the bifacial panel Exclusion is consistent with Proclamation 9693, as it was granted pursuant to the procedures issued directly thereunder, within the time specified by the President. The withdrawal of the Exclusion, however, was not authorized by Proclamation 9693, and thus is a modification of that action. Indeed, when President Trump issued Proclamation 10101, which withdrew the bifacial Exclusion, he described the withdrawal of the Exclusion as a

6

"modification" of the solar safeguard measure.[7] Had withdrawing the Exclusion been permitted by the original safeguard measure, there would have been no need to "modify" the measure. Because the April Withdrawal modified the safeguard measure, USTR was required to comply with the procedures for modifying safeguard measures set forth by Congress in Section 204.

As to the April Withdrawal's consistency with the requirements of Section 204, Defendants attack Plaintiffs' argument that modifications under Section 204 cannot increase trade restrictions. Corrected Response at 54-55. While, as discussed below, they fail to meaningfully rebut Plaintiffs' arguments on that point, Defendants face an even more fundamental problem: they do not even attempt to show that USTR followed the procedures set forth and made the findings required by Section 204. Plaintiffs noted in their Opening Brief that the findings required by Section 204(b) are absent from the April Withdrawal (and also from the Gerrish Memo), and that there was no evidence that the procedural prerequisites to modifying a safeguard action (*e.g.*, consultations with Secretaries of Commerce and Labor) were met. *See* Opening Br. at 65. One can only assume that Defendants did not address those arguments because they have no valid defense. Thus, regardless of the types of modification that may be allowed under Section 204, USTR failed to follow the procedures required to make *any* kind of modification, and the April Withdrawal should be vacated on that basis alone.

Turning to the issue that Defendants have at least tried to address—whether Section 204(b) allows an increase in trade restrictions—Defendants assert that "[w]ithdrawal of an exclusion is not an increase in the rate of duty for products subject to the safeguard measure" and that the April Withdrawal "does not represent an increase in the rate of duties." Corrected Response at 54.

---

[7] Proclamation 10101 of October 10, 2020, *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639, 65,640 (Oct. 16, 2020).

7

Defendants' argument misses the point. Plaintiffs did not argue that the safeguard statute prohibits only an "increase in the rate of duties." Plaintiffs argued that the statute does not allow an increase in trade restrictions, and that the safeguard statute requires safeguard measures to be progressively trade liberalizing. Opening Br. at 65-67. By expanding the scope of the products covered by the safeguard measure, USTR increased trade restrictions, even if the safeguard duty rate for covered products remained the same. Moreover, for bifacial panels, the April Withdrawal does result in an increase in the duty rate, because those panels were previously allowed to enter the United States free of safeguard duties.

Defendants quibble with Plaintiffs' view of Section 204(b)'s legislative history. *See* Corrected Response at 54 (citing Opening Br. 66 n.16, which discussed H.R. Rep. No. 100-576). But Defendants ignore Plaintiffs' core arguments that the text of the safeguard statute, read as a whole, and the Statement of Administrative Action to Accompany the Uruguay Round Agreements Act all indicate that Congress intended for all modifications of safeguard measures under Section 204(b) to be trade-liberalizing. *See* Opening Br. at 65-67. Given Defendants' failure to rebut those arguments in its Corrected Response, the Court should find that the April Withdrawal is unlawful because it increases restrictions on trade.

    **B.**  **The April Withdrawal Violates Section 203 of the Trade Act.**

Plaintiffs have explained that the April Withdrawal violates Section 203(e)(7) of the Trade Act by placing safeguard duties on bifacial panels less than two years after safeguard duties were lifted on bifacial panels. Opening Br. at 67-68. And to the extent that Defendants view Section 203(a) as a potential source of authority, the April Withdrawal also violates that provision because USTR failed to consider the factors enumerated in that provision and to conduct the overarching cost-benefit analysis that provision requires. Opening Br. at 68-69.

With respect to Section 203(e)(7), Defendants argue that the Exclusion did not involve termination of the safeguard action, because the President merely "excluded bifacial panels from application of the additional duties under the ongoing safeguard measure, explicitly subject to withdrawal of that exclusion." Corrected Response at 55. But, as explained above, the grant of the Exclusion was not "explicitly subject to withdrawal." Furthermore, Defendants' assertion is inconsistent with the fact that, prior to the Exclusion, safeguard duties were applied to bifacial panels, but no safeguard duties applied to those panels after the Exclusion. Defendants offer no explanation as to why the lifting of those safeguard duties does not constitute a "termination" of that action in regard to bifacial panels.[8]

Regarding Section 203(a), Defendants allege that "plaintiffs merely contend that their waived argument regarding social costs and benefits compels their preferred outcome," and that the President's delegation of authority to USTR "did not require the Trade Representative to revisit the President's weighing of numerous 'social' and 'economic' factors." Corrected Response at 55. Defendants nowhere explain the basis for their claim that Plaintiffs somehow waived their argument regarding economic and social costs and benefits, and the Court should reject that wholly undeveloped argument. *See United States. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). As detailed in Plaintiffs' prior briefs, Plaintiffs and many other commenters argued that withdrawing the Exclusion would result in major economic and social harms, which plainly outweigh the relatively minimal benefit of such action to domestic solar manufacturers. *See, e.g.*, Opening Br. at 40-48, 55-57. As to Defendants'

---

[8] In their Opening Brief (at 68 n.18), Plaintiffs noted that Defendants had previously claimed that bifacial panels are not an "article" for purposes of Section 203(e)(7) and explained why such an interpretation of Section 203(e)(7) would be unreasonable. Defendants have waived any rebuttal to this argument by not raising it in their Corrected Response.

9

argument that the President did not specifically require USTR to weigh costs and benefits in administering the exclusion process, the President cannot authorize USTR to ignore statutory requirements. *See* Reply at 15-17.

Defendants further assert that "even if the Court were to reweigh the evidence . . . the administrative record shows that the bifacial exclusion does, in fact, interfere with the domestic industry's ability to adjust to import competition." Corrected Response 55. But, Plaintiffs' argument is that USTR failed to perform the cost-benefit analysis required by the statute. Even if the administrative record supported Defendants' assertion that the Exclusion interferes with the domestic industry's ability to adjust to import competition, that is only one aspect of the required statutory analysis. Defendants repeatedly focus on only one of the two principle statutory criteria for safeguard measures, while ignoring the other: ensuring that the social and economic benefits of the action outweigh its costs. USTR conducted no such analysis and made no such finding in the April Withdrawal—and Defendants do not argue otherwise.

### III.    USTR Lacked Inherent Authority to Withdraw the Exclusion.

Having failed to rebut Plaintiffs' argument that USTR lacked delegated and statutory authority, Defendants argue that "agencies generally have inherent authority to reconsider decisions." Corrected Response at 55. Plaintiffs have explained, however, that there are important limitations on an agency's authority to reconsider prior decisions. Opening Br. at 73-75 (discussing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352 (Fed. Cir. 2008)). Defendants chose to attack a footnote in Plaintiffs' brief rather than respond to that core argument. *See* Corrected Response at 55-56. But even if the authority to reconsider is not limited to cases involving fraud, *see id.*, such authority cannot be exercised where doing so contravenes a statute; where a statute provides a specific mechanism for reconsidering decisions; or where the reconsideration is arbitrary and capricious. Opening Br. at 73-75. Those exceptions apply here.

10

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opening Brief and prior Reply, USTR lacked both statutory and delegated authority to issue the April Withdrawal, which should therefore be set aside as unlawful.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4046
mnicely@akingump.com

*Counsel to SEIA*

/s/ Amanda Shafer Berman
John Brew
Larry Eisenstat
Amanda Shafer Berman
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500
aberman@crowell.com

*Counsel to Invenergy Renewables LLC, Clearway Energy Group LLC, and AES Distributed Energy Inc.*

/s/ Kevin O'Brien
Kevin M. O'Brien
Christine M. Streatfeild
**BAKER & MCKENZIE LLP**
815 Connecticut Ave, NW
Washington, DC 20006
(202) 452-7000
kevin.obrien@bakermckenzie.com

*Counsel to EDF Renewables, Inc.*

11

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Akin Gump Strauss Hauer & Feld LLP hereby certifies that Plaintiffs' Supplemental Reply in Support of Motion for Judgment on the Administrative Record, dated June 22, 2021, complies with the word-count limitation set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court, as amended on October 3, 2016.  This submission contains 3,262 words according to the word-count function of the word-processing software used to prepare the motion.

/s/ Matthew R. Nicely
Matthew R. Nicely
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4046
mnicely@akingump.com

*Counsel to SEIA*

Dated: June 22, 2021